NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 21-5203

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

VALANCOURT BOOKS, LLC,
*Plaintiff - Appellant,*

V.

MERRICK B. GARLAND, ATTORNEY GENERAL AND SHIRA
PERLMUTTER, IN HER OFFICIAL CAPACITY AS THE REGISTER
OF COPYRIGHTS OF THE U.S. COPYRIGHT OFFICE,
*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

AMICUS BRIEF OF ZVI S. ROSEN AND BRIAN L. FRYE
SUPPORTING APPELLANT AND ARGUING FOR REVERSAL OF
THE DISTRICT COURT

Michael J. Mazzone
HAYNES AND BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010-2007
Telephone: (713) 547-2115
Facsimile: (713) 547-2600
michael.mazzone@haynesboone.com

**COUNSEL FOR AMICUS CURIAE**
**ZVI S. ROSEN AND BRIAN L. FRYE**

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Case Number and Style: No. 21-5203, In the matter of: Valancourt Books, LLC (Appellant) v. Merrick B. Garland, Attorney General and Shira Perlmutter, in her Official Capacity as the Register of Copyrights of the U.S. Copyright Office (Appellees)

The undersigned counsel for *amicus curiae*, Professors of Law, Zvi S. Rosen and Brian L. Frye, certifies that the following listed persons and entities as described in the D.C. Cir. Rule 28(a)(1) have an interest in the outcome of this case.  These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

**A.**   <u>**Parties and Amici**</u>.  Except for the following, all parties, intervenors, and amici appearing before the district court and in this court are listed in Appellant's Brief.

<u>Amicus Curiae</u>:

Zvi S. Rosen
Brian L. Frye

<u>Counsel for the Amicus Curiae</u>:

Michael J. Mazzone
HAYNES AND BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010

**B.**   <u>**Rulings Under Review**</u>.  References to the rulings at issue appear in Appellant's Brief.

i

C.    <u>**Related Cases**</u>. An accurate statement regarding related cases appears in Appellant's Brief.

Dated:  February 17, 2022.

Respectfully submitted,

*/s/ Michael J. Mazzone*
Michael J. Mazzone
HAYNES AND BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010-2007
Telephone: (713) 547-2115
Facsimile: (713) 547-2600
michael.mazzone@haynesboone.com

## CERTIFICATE OF CONSENT TO FILE AND NECESSITY OF SEPARATE AMICUS BRIEF

All parties have consented to the filing of this brief.  The *amici* filed their notice of intent to participate in this case as *amicus curiae* on February 7, 2022.

Pursuant to D.C. Circuit Rule 29(d), the undersigned counsel certifies that he is submitting a separate brief from other *amici curiae*, who may appear in this case in support of Appellant, due to the uniquely, specialized nature of each *amici*'s distinct interests and expertise.  This brief is submitted by Professors Rosen and Frye, who are copyright scholars, and therefore interested in the scope and limits of copyright law in the United States.  Further, they are concerned with ensuring that creators are not restricted by constitutional impediments, such as those present in this case.  As such, they believe it helpful to inform the Court of the broader history on these issues.

It is the understanding of the undersigned counsel that other *amicus curiae* briefs may be submitted by industry groups, with interests that are separate from those of Professors Rosen and Frye.  Given the different purposes and expertise of the *amici curiae*, the undersigned certifies that filing a joint brief would not be practicable.

No corporate disclosure statements are required by Fed. R. Civ. P. 26.1 because the *amici* are individuals filing in their individual capacities.

Dated: February 17, 2022.

Respectfully submitted,

*/s/ Michael J. Mazzone*
Michael J. Mazzone
HAYNES AND BOONE, LLP
1221 McKinney, Suite 4000
Houston, Texas 77010-2007
Telephone: (713) 547-2115
Facsimile: (713) 547-2600
michael.mazzone@haynesboone.com

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES.................................................................i

CERTIFICATE OF CONSENT TO FILE AND NECESSITY OF SEPARATE AMICUS BRIEF ................................... iii

TABLE OF AUTHORITIES ...........................................vii

GLOSSARY OF ABBREVIATIONS ..............................x

STATUTES AND REGULATIONS .............................xii

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE ...................................................................1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS.......................................................2

INTRODUCTION AND SUMMARY OF ARGUMENT............................3

ARGUMENT ..................................................................6

I.    The Origins of Mandatory Deposit. ...................................6

      A.    Early Copyright Laws in Europe were used to Control Speech and Grow Libraries. .......................7

      B.    Following Europe, Early America Used Copyright Deposit to Grow the Library of Congress...............................9

      C.    Except for America, the World Moves on from Copyright Deposit to Library Deposit, Separated from Copyright Law. .......................11

      D.    Congress Passes the 1909 Act, but Copyright Deposit Remains. ......................................12

      E.    Congress Divorced Copyright Deposit from Copyright Registration. ...........................13

F. The United States Embraces Library Deposit, but Vestiges of Copyright Deposit Remain. ................................15

II. Because Copyright is Now an Automatic Right, Mandatory Library Deposit Under § 407 Leads to Absurd Results. ..................................................................21

 A. With Copyrights Automatic and Most Things Now Published Electronically, § 407 Applies to Almost Everything. ...........................................................................23

 B. Mandatory Library Deposit can only Constitutionally Apply to Copyright Owners who Register. ...........................................................................24

  1. Deposit Under § 407 Provides no Relevant Benefits to the Copyright Owner. ................................25

  2. If Deposit Only Applies to Registration, there are no Constitutional Concerns. ..................................29

III. Abandoning a Copyright to Avoid Mandatory Library Deposit is not Possible. ....................................................31

CONCLUSION ........................................................................32

CERTIFICATE OF COMPLIANCE ..........................................35

CERTIFICATE OF SERVICE....................................................36

# TABLE OF AUTHORITIES

**Page(s)**

4 NIMMER ON COPYRIGHT § 14.04 (2021) .........................................27

ACQUISITIONS AND BIBLIOGRAPHIC ACCESS DIRECTORATE, ANNUAL REPORT FOR FISCAL YEAR 2016 (2016) ...........................................................5

Anne Latournerie, *Petite Histoire des Batailles du Droit D'auteur*, 5 ASSOCIATION MULTITUDES 37 (2001) ..................................................7

Benjamin Kaplan, *Study No. 17: The Registration of Copyright*, in COPYRIGHT LAW REVISION STUDIES PREPARED FOR THE SUBCOMM. ON PATENTS, TRADEMARKS, AND COPYRIGHTS OF THE COMM. ON THE JUDICIARY, 86th Cong., 2d Sess. (Comm. Print 1960)....................13

*Berne Convention Implementation Act of 1987, Hearings Before the H. Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the Comm. on the Judiciary*, 100th Cong. (1987) (statement of Barbara Ringer, former Register of Copyrights) .........................................18

CATHERINE SEVILLE, LITERARY COPYRIGHT REFORM IN EARLY VICTORIAN ENGLAND (1st ed. 1999) ....................................................................9

*Copyright Registration and Documentation Systems*, WORLD INTELLECTUAL PROPERTY ORGANIZATION, https://www.wipo.int/copyright/en/activities/copyright_registration/index.html (last accessed Feb. 10, 2022) ................................................11

Dave Fagundes & Aaron Perzanowski, *Abandoning Copyright*, 62 WM. & MARY L. REV. 487 (2020)..................................................................31

Deborah R. Gerhardt*, Copyright Publication: An Empirical Study*, 87 NOTRE DAME L. REV. 135 (2011)..................................................4, 23

Earle E. Coleman, Copyright Deposit at Harvard, Harvard Library Bulletin (Winter 1956) ....................................................................10

Elizabeth K. Dunne, *Study No. 20: Deposit of Copyrighted Works*, *in* COPYRIGHT LAW REVISION STUDIES PREPARED FOR THE SUBCOMM. ON PATENTS, TRADEMARKS, AND COPYRIGHTS OF THE COMM. ON THE JUDICIARY, 86th Cong., 2d Sess. (Comm. Print 1960) ................... 14

*FAQs: Mandatory Deposit*, U.S. COPYRIGHT OFFICE, https://www.copyright.gov/help/faq/mandatory_deposit.html (last accessed Feb. 11, 2022) ............................................................ 20, 21

*Fees*, U.S. COPYRIGHT OFFICE, https://www.copyright.gov/about/fees.html (last accessed Feb. 11, 2022) ......................................................... 32

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991) ............................................................................... 22

GENERAL GUIDE TO THE COPYRIGHT ACT OF 1976 (1977) ............... 29

*Hearing on the Implications, Both Domestic and International, of U.S. Adherence to the International Union For the Protection of Literary and Artistic Works Before the S. Subcomm. on Patents, Copyrights and Trademarks*, 99th Cong. (1985) (statement of Donald C. Curran, Associate Librarian of Congress) .................................................... 15

Keith Aoki, *Authors, Inventors and Trademark Owners: Private Intellectual Property and the Public Domain, Part I*, 18 COLUM.-VLA J.L. & ARTS 1 (1993) ................................................................ 8

*Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1986) ............. 16

R.C. BARRINGTON PARTRIDGE, THE HISTORY OF THE LEGAL DEPOSIT OF BOOKS THROUGHOUT THE BRITISH EMPIRE (1st ed. 1938) .................. ............................................................................. 7, 8, 9, 12

ROBERT WEDGEWORTH & BARBARA RINGER, ADVISORY COMMITTEE ON COPYRIGHT REGISTRATION AND DEPOSIT: REPORT OF THE CO-CHAIRS (1993) ............................................................... 16, 18, 19, 20, 32

SUPPLEMENTARY REPORT OF THE REGISTER OF COPYRIGHTS ON THE GENERAL REVISION OF THE U.S. COPYRIGHT LAW: 1965 REVISION BILL (1965) ........................................................................ 15, 28

U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 2311 (3d ed. 2017) ....................................................... 31

*Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 260 F.2d 637 (2d Cir. 1958) ............................................................. 12

*Wheaton v. Peters*, 33 U.S. 591 (1834) ........................................... 10

WORLD INTELLECTUAL PROPERTY ORGANIZATION, WIPO REGISTRATION QUESTIONNAIRE: RESPONSE OF THE UNITED STATES (June 30, 2010), https://www.wipo.int/export/sites/www/copyright/en/registration/replies/pdf/usa.pdf ................................................................................ 3, 21

Zvi S. Rosen & Richard Schwinn, *An Empirical Study of 225 Years of Copyright Registrations*, 94 TUL. L. REV. 1003 (2020) ................... 13

## GLOSSARY OF ABBREVIATIONS

**§ 407 or Section 407**: 11 U.S.C.A. § 407 (West), effective November 13, 1997.

**§ 408 or Section 408**: 11 U.S.C.A. § 408 (West), effective April 27, 2005.

**ACCORD**: Advisory Committee on Copyright Registration and Deposit.

**ACCORD Report**: Robert Wedgeworth & Barbara Ringer, Advisory Committee on Copyright Registration and Deposit: Report of the Co-Chairs (1993).

**Appellees**: Merrick B. Garland, Attorney General and Shira Perlmutter, in her Official Capacity as the Register of Copyrights of the U.S. Copyright Office, together as the Appellees in the appeal styled *Valancourt Books, LLC v. Garland, et al.*, Civ. A. No. 21-5203.

**Berne Convention**: The Berne Convention for the Protection of Literary and Artistic Works, established in 1886.

**Copyright Deposit**: *See infra* p. 3 (deposit as part of copyright registration).

**Copyright Office**: The U.S. Copyright Office.

**Library Deposit or 407 Deposit**: *See infra* p. 3 (deposit with the Library of Congress).

**Licensing Act**: The Licensing of the Press Act, 1662 (Eng.).

**LT Press**: Law & Technology Press, appellant in the case described in the opinion, *Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1985).

**Mem. Op.**: *Valancourt Books, LLC v. Perlmutter*, Civ. A. No. 18-1922 (ABJ) (D.D.C. Jul. 23, 2021), Doc. No. 30.

**Partridge**: R.C. Barrington Partridge, The History of The Legal Deposit of Books Throughout the British Empire 2 (1st ed. 1938).

**Statute of Anne**: The Copyright Act of 1710 (the Statute of Anne), 1710, 8 Ann. C. 19.

**Valancourt or Appellant**: Valancourt Books, LLC, the Appellant in the appeal styled, *Valancourt Books, LLC v. Garland, et al.*, Civ. A. No. 21-5203.

**The 1790 Act**: Act of May 31, 1790, 1st Cong., 2nd Sess., An Act for the encouragement of learning, by securing the copies of maps, Charts, and books, to the authors and proprietors of such copies, during the times therein mentioned, P.L. 1-15, 1 Stat. 124.

**The 1909 Act**: Act of March 4, 1909, An Act to Amend and Consolidate the Acts Respecting Copyright.

**The 1976 Act**: Act of October 19, 1976, An Act for the General Revision of the Copyright Law, Title 17 of the United States Code, and for Other Purposes.

**1988 Amendment:** Berne Convention Implementation Act of 1988, Pub. L. No. 100–568, 102 Stat. 2853 (codified as amended as 17 U.S.C. (1988)).

# STATUTES AND REGULATIONS

17 U.S.C. § 102.................................................................................22

17 U.S.C. § 402.................................................................................26

17 U.S.C. § 407.........................................................................3, 7, 21

17 U.S.C. § 407(a) (1976).............................................................23

17 U.S.C. § 407(a) (1982).........................................................14, 17

17 U.S.C. § 408.......................................................................15, 30

17 U.S.C. § 411.......................................................................12, 27

17 U.S.C. § 412.................................................................................27

17 U.S.C. § 504.................................................................................27

17 U.S.C. §§ 102–407......................................................................22

37 C.F.R. § 202.24 (2021) ...........................................................24

Act of Feb. 5, 1859, 35th Cong., 2d Sess., 11 Stat. 380.................10

Act of July 8, 1870, 41st Cong., 2d Sess., 16 Stat. 198 .................11

An Act to Establish the Smithsonian Institution, 29th Cong., 1st Sess., 9 Stat. 106 .......................................................................................10

Copyright Act of 1909, Pub. L. 60–349, 35 Stat. 1075.............12, 29

Berne Convention Implementation Act of 1988, H. Rep. 100–609 at 44 (codified as amended as 17 U.S.C. (1988)) ....................................25

Berne Convention Implementation Act of 1988, Pub. L. No. 100–568, 102 Stat. 2853 (codified as amended as 17 U.S.C. (1988)) ...........18

H.R. REP. NO. 94–1476, at 150–52 (1976), *as reprinted in* U.S.C.C.A.N. 5659, 5766–68 .................................................................................15

## STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE

Zvi S. Rosen is an Assistant Professor of Law at the Southern Illinois University School of Law.  He teaches courses in intellectual property law, among others.  Professor Rosen's research focuses on copyright law and its evolution through American history.  From 2015 to 2016, he served as the Abraham L. Kaminstein Scholar in Residence at the United States Copyright Office.

Brian L. Frye is the Spears-Gilbert Professor of Law at the University of Kentucky Rosenberg College of Law.  Professor Frye teaches intellectual property and copyright law.  His scholarship focuses on intellectual and copyright law in relation to artists and arts organizations.

As copyright scholars, Professors Rosen and Frye are interested in the scope and limits of copyright law in the United States.  Further, they are concerned with ensuring that creators are not restricted by constitutional impediments, such as those present in this case.  As such, they believe it helpful to inform the Court of the broader history than may be possible to be included in the party briefs.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Professors Rosen and Frye are the primary authors of this Brief. Undersigned counsel assisted with revisions and formatting for compliance with the Court's procedures. Other than the donation of time by their counsel, the *amicus curiae* have received no financial contributions in connection with this Brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

> *In a survey from the World Intellectual Property Organization, the Copyright Office was asked to answer, on behalf of the United States, "Is there any connection or interaction among [§ 407] and copyright protection?" In response, the Copyright Office simply said, "No."*[1]

Since 1790, inspired by England's Statute of Anne, federal copyright law in the United States has required deposit copies of a work following copyright registration ("Copyright Deposit"). This requirement is codified at § 408. This appeal, however, does not concern § 408; it concerns § 407.

Section 407 is not part of copyright law. Nonetheless, § 407 requires "the owner of copyright or of the exclusive right of publication in a work published in the United States" to deposit with the Library of Congress—for free—two copies of any work they publish ("407 Deposit" or "Library Deposit"). 17 U.S.C. § 407(a)(1). Moreover, § 407 explicitly states that "the deposit requirements of this subsection [are not] conditions of copyright protection." 17 U.S.C. § 407(a). But, since 1989, becoming a

---

[1] WORLD INTELLECTUAL PROPERTY ORGANIZATION, WIPO REGISTRATION QUESTIONNAIRE: RESPONSE OF THE UNITED STATES 16 (June 30, 2010), https://www.wipo.int/export/sites/www/copyright/en/registration/replies/pdf/usa.pdf (question 31).

copyright owner is automatic for any work that has been created, and almost everything is published, from books to blogs, from poems to Facebook posts, and from fabric swatches to Twitter feeds.[2]

It follows that, under § 407, millions of Americans, who are unwitting copyright owners, must deposit with the Library of Congress two copies of everything they have published—or face penalties. Such a restriction on publication is absurd and, as explained in Appellant's Brief [Doc. #1934872], violates the Constitution.

Although the Library of Congress understandably wants as many free books as possible, even without § 407, the Library of Congress obtains free books from: (i) registration deposits under § 408, (ii) the Cataloging in Publication program, and (iii) gifts. The Library of

---

[2] *See* Deborah R. Gerhardt, *Copyright Publication: An Empirical Study*, 87 NOTRE DAME L. REV. 135, 150–52 (2011). Professor Gerhardt explains that copyright is a complicated concept in that:

> Even in copyright doctrine the term [publication] does not have a singular meaning. . . . [I]f the Internet permits anyone to access copies or phonorecords of the work, the copyright owner who posts a work online is providing the public with access to copies, and therefore, the statutory definition indicates that the work has been published.

*Id.* Nonlawyers are likely not conversant with the technical meaning of publication or the centuries of caselaw regarding it.

Congress also purchases many items, and at least in 2016, the Library of Congress purchased more items than it received freely. ACQUISITIONS AND BIBLIOGRAPHIC ACCESS DIRECTORATE, ANNUAL REPORT FOR FISCAL YEAR 2016, at 5 (2016) (explaining that acquisitions by purchase in 2016 were 667,923, while deposit and the Cataloging in Publication Program provided the Library of Congress with 371,164 items).

Through the 1976 Act and the 1988 Amendment, Congress modernized most American copyright laws with a comprehensive revision and made copyright an automatic right, with registration and deposit optional under § 408 in exchange for certain benefits. Congress, however, carried over the mandatory Library Deposit language in § 407 from the 1909 Act in a new two-track deposit system, glossing over whether it was compatible with automatic copyright.[3] Congress' mistake was caused by its failure to acknowledge that Library Deposit no longer has *any* connection to copyright protection.

This brief explains the evolution of American copyright law from a system of exchange (deposits in exchange for legal rights) to copyright as an automatic right (such is the law today). Because the vestiges of the

---

[3] H.R. Rep. No. 100-609, 100th Cong. § 14(V)(c)(3) (1988).

1909 Act remain in present law, Congress has burdened many creators with mandatory 407 Deposit without providing them *anything* in return. The history of copyright law reveals that a system of automatic copyright is not compatible with 407 Deposit.  Mandatory deposit can only be constitutionally justified if it is made in exchange for the benefits that flow from copyright registration (§ 408) and not for unregistered publications such as Valancourt's.

## ARGUMENT

## I.  The Origins of Mandatory Deposit.

The mandatory deposit of printed works evolved along two different models: (i) Copyright Deposit, a model centered on deposit as part of copyright registration and (ii) Library Deposit, a model independent of copyright registration, focused on building a national library.  Until the twentieth century, American copyright law followed the Copyright Deposit model and required deposit in exchange for a copyright, with the increase to the collections of the Library of Congress treated as a collateral benefit.  By 1989, copyright became an automatic right decoupled from deposit, but in addition to Copyright Deposit (§ 408), Congress created a new mandatory deposit requirement, Library

Deposit, which requires deposit with the Copyright Office, *regardless of copyright registration*. 17 U.S.C. § 407. Congress' enactment of § 407 attempted to keep deposits flowing to the Library of Congress, ignoring that § 407 is an unconstitutional taking without compensation and a prior restraint on free speech.

### A.    Early Copyright Laws in Europe were used to Control Speech and Grow Libraries.

Copyright law originated in the fifteenth and sixteenth centuries with the invention of the printing press, through which the ability to rapidly reproduce texts was both a promise and, to some, a threat to European society. England and France were among the first to promulgate a mandatory deposit requirement—England through the "Worshipful Company of Stationers and Newspaper Makers of the City of London" and France through the 1537 Ordinance of Montpellier by the warrior-king (and bibliophile) King Francis I. R.C. BARRINGTON PARTRIDGE, THE HISTORY OF THE LEGAL DEPOSIT OF BOOKS THROUGHOUT THE BRITISH EMPIRE 2 (1938) (hereinafter, "PARTRIDGE"); Anne Latournerie, *Petite Histoire des Batailles du Droit D'auteur*, 5 ASSOCIATION MULTITUDES 37, 39 (2001). King Francis used mandatory Library Deposit of books to help build "[p]erhaps the richest library in

the Renaissance," which would become the foundation of the French national library. PARTRIDGE at 2. Other nations soon realized that mandatory Library Deposit could build a national library and be an "effective means of curbing the publication of blasphemous and seditious literature." PARTRIDGE at 3.

England tied the Library Deposit requirement to its nascent copyright law, ultimately creating Copyright Deposit. Believing that the "unlicensed state of the press had indirectly caused the late Revolution," King Charles II successfully urged passage of the Licensing Act of 1662 (the "Licensing Act"), which established a system of Library Deposit at the Royal Library, Oxford, and Cambridge. PARTRIDGE at 23–24. Although this measure was part of the maturing proto-copyright system of England, it was not linked to any copyright concerns, but instead was focused on press control and suppression of undesirable books and pamphlets. PARTRIDGE at 24. With the Glorious Revolution of 1688 and the rise of Parliament, the Licensing Act was out-of-date with a modernized England, and in 1710, Parliament responded with the Statute of Anne, which is generally considered the first modern copyright law. Keith Aoki, *Authors, Inventors and Trademark Owners: Private*

*Intellectual Property and the Public Domain, Part I*, 18 COLUM.-VLA J.L. & ARTS 1, 29 n.107 (1993).

The Statute of Anne directly connected copyright protection with deposit copies (i.e., Copyright Deposit), and required deposit of nine "best edition" copies with the Royal Library and educational institutions in England and Scotland. PARTRIDGE at 34. This onerous requirement proved to be excessive for the printers of the day, who generally chose to forego copyright registration. PARTRIDGE at 35–38. In 1836, the United Kingdom reduced the number of libraries receiving free deposit copies and gave a subsidy to those libraries for the purchase of books. PARTRIDGE at 77. Copyright Deposit would persist, although it was subject to constant "battles and controversies" due to the "extreme resistance" of published authors who did not appreciate having their work taken without compensation. CATHERINE SEVILLE, LITERARY COPYRIGHT REFORM IN EARLY VICTORIAN ENGLAND 232 (1st ed. 1999).

### B.  Following Europe, Early America Used Copyright Deposit to Grow the Library of Congress.

The Constitution provided Congress with the power to pass a copyright law, and the first Congress enacted the first federal copyright law—the 1790 Act. The 1790 Act required Copyright Deposit of a

complete work with the Secretary of State six months after publication to complete the copyright registration.  1790 Act § 4.[4]

At the time, deposit was focused on compliance with legal formalities and evidence in the event of litigation, and there was no broader plan for the deposits to enlighten the public sphere.

In 1846, Copyright Deposit was first used for a library purpose when the statute creating the Smithsonian Institution mandated that additional copies of works registered for copyright be deposited there and with the Library of Congress.  *See* An Act to Establish the Smithsonian Institution, 29th Cong., 1st Sess., 9 Stat. 106.  This measure was poorly followed and unpopular with the institutions it was meant to enrich, leading to its repeal in 1859.  Act of Feb. 5, 1859, 35th Cong., 2d Sess., 11 Stat. 380.  In 1864, Abraham Lincoln appointed Ainsworth Spofford as the Librarian of Congress, who was a staunch advocate of using

---

[4] The 1790 Act was modeled after the Statute of Anne.  *Wheaton v. Peters*, 33 U.S. 591, 608 (1834).  Prior to its enactment, only one state of the original twelve that enacted copyright laws included mandatory Copyright Deposit.  *See* Earle E. Coleman, Copyright Deposit at Harvard, Harvard Library Bulletin 135 (Winter 1956) (on file with the Harvard Library Office for Scholarly Communications) (only the Commonwealth of Massachusetts provided for mandatory Copyright Deposit).  The other states presumably either considered deposit unnecessary or were unaware of it.

Copyright Deposit to make the Library of Congress a national library. Soon thereafter, Copyright Deposit returned to the Library of Congress, and by 1870, all administration of copyright, including deposit, was moved to the Library of Congress, with the goal of creating a national library.  Act of July 8, 1870, §§ 85–111, 41st Cong., 2d Sess., 16 Stat. 198.

### C.    Except for America, the World Moves on from Copyright Deposit to Library Deposit, Separated from Copyright Law.

While America was embracing Copyright Deposit as a tool of library-building, the rest of the world was moving in the opposite direction because mandatory Copyright Deposit as a condition of copyright protection would prove incompatible with an international copyright regime.  In 1886, the first multinational copyright treaty, the Berne Convention, was signed, followed by a revision in 1908, under which copyright in any contracting member state could not be subject to any formality, such as the requirement of deposit copies.  *Copyright Registration and Documentation Systems*, WORLD INTELLECTUAL PROPERTY ORGANIZATION, https://www.wipo.int/copyright/en/activities/copyright_registration/index.html (last accessed Feb. 10, 2022).  To comply with its new treaty obligations, the United Kingdom abolished its system of copyright registration, and its system of Copyright Deposit

11

evolved to Library Deposit, divorced from copyright law.  PARTRIDGE at 114.

### D. Congress Passes the 1909 Act, but Copyright Deposit Remains.

The 1909 Act promulgated significant revisions of copyright law in the United States, but Copyright Deposit remained.  Copyright Act of 1909, Pub. L. 60–349, 35 Stat. 1075.  Once copyright was secured by publication with notice, deposit was required, and the Librarian of Congress was empowered to demand copies.  *Id.* §§ 9, 12.  Failure to comply with a demand from the Librarian of Congress could lead to fines and forfeiture of the copyright.  *Id.* § 12.[5]

In practice, copyright registration remained firmly tied to mandatory Copyright Deposit.  *Vacheron & Constantin-Le Coultre Watches, Inc. v. Benrus Watch Co.*, 260 F.2d 637, 640–41 (2d Cir. 1958) (noting, "the owner must submit an application and pay the required fees in order to make a deposit," meaning that an application for copyright registration needed to be filed to make a deposit); Benjamin Kaplan*,*

---

[5] Technically, under the 1909 Act, registration was optional, although as a prerequisite for the filing of a suit to enforce a copyright, registration was required, which remains the law to this day.  *Compare* Copyright Act of 1909, Pub. L. No. 60–349, 35 Stat. 1075, § 12 *with* 17 U.S.C. § 411.

*Study No. 17: The Registration of Copyright*, in Copyright Law Revision Studies Prepared for the Subcomm. on Patents, Trademarks, and Copyrights of the Comm. on The Judiciary, 86th Cong., 2d Sess. 31-32 (Comm. Print 1960) (concluding that if a deposit was not accompanied by an application for registration and the requisite fee, "the register could refuse a naked deposit following a demand under section 14 and regard the copyright as forfeited."). Copyright registration and Copyright Deposit remained intertwined, and it is thus unsurprising that from 1920 to 1952, the number of copyright registrations of books and new books in print were essentially identical because deposit required registration. Zvi S. Rosen & Richard Schwinn, *An Empirical Study of 225 Years of Copyright Registrations*, 94 Tul. L. Rev. 1003, 1009 (2020).

**E.   Congress Divorced Copyright Deposit from Copyright Registration.**

In the late 1950s, as part of the rewriting of copyright law which would eventually become the 1976 Act, the drafters considered modifications of copyright law so the United States could finally become a member of the Berne Convention, such as modifying the mandatory Copyright Deposit requirement.

One of the Revision Studies from the Copyright Office noted that if America shifted to Library Deposit, "the deposit of works not under copyright would need to be considered… *since the deposit requirement for such works would not be based on the copyright clause of the Constitution*." Elizabeth K. Dunne, *Study No. 20: Deposit of Copyrighted Works*, *in* COPYRIGHT LAW REVISION STUDIES PREPARED FOR THE SUBCOMM. ON PATENTS, TRADEMARKS, AND COPYRIGHTS OF THE COMM. ON THE JUDICIARY, 86TH CONG., 2D SESS. 33 (Comm. Print 1960) (emphasis added). Instead of creating a potential constitutional problem, Ms. Dunne, a research analyst with the Copyright Office, recommended a continuation of the existing system and requiring deposit based on compliance with copyright formalities. *Id.* at 34–35. The resulting law was a half-measure, with § 407 modeled on Library Deposit systems from other nations party to the Berne Convention, but retaining vestiges of America's two-century old mandatory Copyright Deposit system in § 408.

Under the new law, 407 Deposit was only required if a work contained a notice of copyright. 17 U.S.C. § 407(a) (1982).[6]

---

[6] The House Report on the bill explained that under previous copyright laws of the United States "deposit of copies for the collections of the Library of Congress and deposit of copies for purposes of copyright

14

Deposit under § 408 would also constitute deposit under § 407, but not vice versa.  17 U.S.C. § 408(b) (A deposit made under § 407 only satisfies § 408 "if they are accompanied by the prescribed application and fee").  A deposit sent under § 407 "could not later be converted into a deposit for purposes of" § 408, and "additional deposit for purposes of registration would have to be made."  SUPPLEMENTARY REPORT OF THE REGISTER OF COPYRIGHTS ON THE GENERAL REVISION OF THE U.S. COPYRIGHT LAW: 1965 REVISION BILL 118–119 (1965).

## F.    The United States Embraces Library Deposit, but Vestiges of Copyright Deposit Remain.

The 1976 Act went into effect in 1978, establishing America's system for Library Deposit.  The new law was still dependent on the inclusion of a copyright notice in a published work, but Library Deposit under § 407 was infrequently used.  Instead, the Library of Congress primarily relied on Copyright Deposits through § 408.  *See Hearing on the Implications, Both Domestic and International, of U.S. Adherence to the International Union for the Protection of Literary and Artistic Works Before the S. Subcomm. on Patents, Copyrights and Trademarks*, 99th

---

registration have been treated as the same thing."  H.R. REP. NO. 94–1476, at 150–52 (1976), *as reprinted in* U.S.C.C.A.N. 5659, 5766–68.

Cong. 80 (1985) (statement of Donald C. Curran, Associate Librarian of Congress). In the 1990s, the Advisory Committee on Copyright Registration and Deposit (hereinafter, "ACCORD"), noted a "tendency on the part of some people in the Library of Congress to look on the section 407 type of mandatory deposit as fundamentally unworkable and to dismiss it as nothing more than a minor adjunct to [the Library of Congress'] acquisition resources." ROBERT WEDGEWORTH & BARBARA RINGER, ADVISORY COMMITTEE ON COPYRIGHT REGISTRATION AND DEPOSIT: REPORT OF THE CO-CHAIRS A/277–8 (1993) (hereinafter, "ACCORD Report").

In 1981, the constitutionality of Library Deposit under § 407 was litigated in *Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1986). Law & Technology Press ("LT Press") published *The Scott Report*, for which it also owned the copyright. *Id.* at 810. LT Press included a copyright notice in the newsletter but did not register or send copies of the newsletter to the Library of Congress. *Id.* at 810–11. Using § 407, the Library of Congress demanded copies of the newsletter, which LT Press declined to provide. *Id.* at 811. At the time, the law required a copyright notice on a published work to maintain the benefit of copyright protection

(copyright was not automatic then as it is today), and thus, § 407 was tied to copyright protection by only applying to works that contained a copyright notice. *Id.* at 811 n.1 (quoting 17 U.S.C. § 407(a) (1982)). Accordingly, the Ninth Circuit Court of Appeals justified the constitutionality of § 407 by finding that the required nexus of the mandatory deposit requirement to copyright protection remained. *Id.* ("[A] complete reading of section 407 reveals that deposit is indeed still required of one obtaining a copyright. . . .").

Through the 1988 Amendment, however, that justification disappeared, and the requirement of copyright notice in exchange for copyright, which had existed since 1802, ***was made optional***.

The Court below asserted that "Congress did not change the deposit requirement." Mem. Op. at 3–4. This is wrong. When Congress amended the deposit requirement of § 407 by "striking out 'with notice of copyright,'" this change necessarily removed any limitation of Library Deposit to works containing copyright notice, and now, Library Deposit applied to all published works. Berne Convention Implementation Act of

1988, Pub. L. No. 100–568, 102 Stat. 2853 (codified as amended as 17 U.S.C. (1988)).[7]

Given this, it was unsurprising that there was "some uneasiness that the sweeping change in 1988 weaken[ed]" the constitutional justifications for § 407, especially following the *Ladd* decision. ACCORD Report at 19.

Shortly thereafter, the Library of Congress convened a blue-ribbon commission of copyright and library experts—ACCORD—to consider copyright registration and deposit, and the constitutionality of Library Deposit under § 407 was considered as directly related to these concerns. Staffed by Copyright Office personnel, the work of ACCORD provides an important perspective of the Copyright Office on the issues presently before the Court.[8]

---

[7] At a hearing on the 1988 Act, Barbara Ringer stated, "after this bill comes into effect [the Library of Congress] will be able to demand anything published, whether with notice or not…." *Berne Convention Implementation Act of 1987, Hearings Before the H. Subcomm. on Courts, Civil Liberties, and the Administration of Justice of the Comm. on the Judiciary*, 100th Cong. (1987) (statement of Barbara Ringer, former Register of Copyrights).

[8] ACCORD represented leading figures in copyright, libraries, and the content industries, along with numerous distinguished academics. ACCORD was co-chaired by Barbara Ringer, the author of much of the

ACCORD was frank about the constitutional infirmities of the revised § 407. For example, in Working Paper 11, ACCORD summarized the problem before this Court:

> [The Berne Convention Implementation Act] seems to have created a Catch-22 situation. …[T]he statute provided a quid pro quo and kept the demand from being an unconstitutional taking without just compensation or a violation of the First Amendment. ***By removing the reference to notice the 1988 amendment may again raise the specter of unconstitutionality.***
>
> Since March 1, 1989, every "original work of authorship" in the world is protected by U.S. federal statutory copyright, whether unpublished or published, and, if published, whether published with notice or not, [unless public domain]. There are now millions of owners of United States copyrights, but among them there must be a large proportion who know nothing of copyright law and have no interest in asserting their rights. Yet if their works are published in the United States they are subject to demand for mandatory deposit under section 407.

ACCORD Report at A/282–83 (emphasis added). ACCORD noted that to salvage the constitutionality of § 407, the Copyright Office adopted a practice of only requesting works that included a copyright notice, but various problems arise from this unpublished policy. For example, the Copyright Office indicates that Library Deposit under § 407 is required

_____

1976 Copyright Act, and Robert Wedgewood, the President of the International Federation of Library Associations and Institutions.

for works regardless of the inclusion of copyright notice. *FAQs: Mandatory Deposit*, U.S. COPYRIGHT OFFICE, https://www.copyright.gov/help/faq/mandatory_deposit.html (last accessed Feb. 11, 2022) (Answering "yes" to the question "[i]f my publication does not have a copyright notice, do I still have to deposit?"). To the extent the Copyright Office only sues depositors under § 407 who included copyright notice, this discretionary choice does not save the statute. The statute provides the Library of Congress a legal right to request copies but no means to enforce that right (ACCORD Report at A/290–291) regardless of whether copyright notice is provided, and the Copyright Office's own public statements repeat this assertion. Mentions of a policy of non-enforcement which are directly contradicted by public statements cannot be taken as legally significant.

In 2010, the Copyright Office made clear that it considers § 407 a measure for Library Deposit disconnected from the copyright system, no matter where it is administered. In a survey from the World Intellectual Property Organization, the Copyright Office was asked to answer, on behalf of the United States, "Is there any connection or interaction among

[Section 407] and copyright protection?"  In response, the Copyright Office simply said, "No."[9]

Although § 407 confers **no benefit** on those who are forced to send the Library of Congress free books, the lower court found that Valancourt chose to print "a notice of copyright in its books," and as such, Valancourt "is voluntarily engaging in the exchange of copies of its works for copyright protection."  Mem. Op. at 30.  This finding is contrary to the literal text of § 407, which states that "[n]either the deposit requirements of this subsection nor the acquisition provisions of subsection (e) are **conditions of copyright protection**."  17 U.S.C. § 407(a) (emphasis added). Moreover, regardless of whether Valancourt included the notice, the Copyright Office explicitly states on its website that 407 Deposit is required anyway.[10]

## II. Because Copyright is Now an Automatic Right, Mandatory Library Deposit Under § 407 Leads to Absurd Results.

The 1976 Act transformed the subject matter of copyright by automatically extending copyright protection to all copyrightable works

---

[9] *See supra* note 1.

[10] *FAQs: Mandatory Deposit*, U.S. COPYRIGHT OFFICE, https://www.copyright.gov/help/faq/mandatory_deposit.html (last accessed Feb. 11, 2022).

of authorship, rather than limiting copyright protection to works published with a copyright notice. 17 U.S.C. §§ 102(a)–407. Congress expanded the subject matter of copyright to include "original works of authorship fixed in any tangible medium of expression." *See* 17 U.S.C. § 102(a). According to the Supreme Court, copyright cannot protect works with no real creativity (for instance an alphabetical telephone directory), but "the requisite level of creativity is extremely low," and it can and does protect just about everything else, including, for example, every email, voicemail, snapshot, or home video. 17 U.S.C. § 102(a)(1)–(8); *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("[E]ven a slight amount [of creativity] will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, no matter how crude, humble or obvious it might be.") (internal quotations omitted).

Because copyright is now automatic, creators may not realize they are copyright owners. As previewed by ACCORD, the ramifications of the expansion of publishing as it relates to automatic copyright leads to absurd results for mandatory deposits required by § 407.

**A.    With Copyrights Automatic and Most Things Now Published Electronically, § 407 Applies to Almost Everything.**

When Congress enacted § 407, mandatory Library Deposit only applied to a fraction of copyrighted works because its application was limited to published works.   17 U.S.C. § 407(a) (1976).   In 1976, most works were never published because it was expensive, and therefore, people only published works with the potential for commercial or social value.   Consequently, the mandatory Library Deposit requirement was not burdensome.   If many copies were published, sending two copies to the Copyright Office did not require a substantial additional expense or burden on the copyright owner.

The internet changed the impact of mandatory Library Deposit because anyone and everyone could publish for free on the internet.[11] Under § 407, if copyright protects everything automatically and everything on the internet is published, then everything on the internet must be deposited with the Copyright Office, or the Copyright Office can issue penalties.   In fact, the Copyright Office has specific regulations for demand of copies of electronic books and serials.   *See* 37 C.F.R. § 202.24

---

[11] *See* Gerhardt, *supra* note 2, at 150–52 (explaining that sharing a work online is publication).

(2021) (explaining deposit of published electronic works available only online).

The Library Deposit provision of § 407 is incompatible with automatic copyright protection. The Copyright Office argues that mandatory Library Deposit is a valid and enforceable requirement because deposit copies are *quid pro quo* for copyright ownership. If the Copyright Office is correct, then it can require people to either deposit their works or face penalties, even if they do not want to be copyright owners (or even realize they are copyright owners), simply because their work is available for free on the internet. Application of § 407 in this manner is absurd.

**B.** **Mandatory Library Deposit can only Constitutionally Apply to Copyright Owners who Register.**

The Copyright Office's discretionary authority not to require the deposit of certain copyrighted works while demanding deposit of others (and issuing penalties for failure to do so) does not and cannot make § 407 constitutional. If § 407 means what it says, it is unconstitutional on its face because, as described more fully in Appellant's Brief, it amounts to: (i) a Fifth Amendment taking if it requires people to give the government valuable copies of their works without any benefit in return and (ii) a

First Amendment violation to require people to comply with government demands if they want to speak.

> **1.    Deposit Under § 407 Provides no Relevant Benefits to the Copyright Owner.**

It is not seriously argued that 407 Deposit provides any benefits to the copyright owner. Indeed, the Copyright Office's own circular on the subject does not state it provides a benefit to the copyright owner, and solely focuses on the benefit to the Library of Congress. *Mandatory Deposit of Copies or Phonorecords*, U.S. COPYRIGHT OFFICE https://www.copyright.gov/circs/circ07d.pdf (last accessed Feb. 14, 2022). Further, as discussed herein, the Copyright Office specifically states that 407 Deposit is required ***regardless*** of whether the work includes a copyright notice, and that a major purpose of the 1988 Amendment to § 407 was so the Library of Congress could demand copies of works that do not include a copyright notice.[12]

---

[12] The court below included a quote from the House Report for the 1988 Amendment, stating that "'[t]he elimination of copyright notice as a factor in subjecting works to mandatory deposit does not have constitutional significance' because 'only those works published in the United States in which copyright is claimed are subject to mandatory deposit.'" Mem. Op. at 18 (quoting the Berne Convention Implementation Act of 1988, H. Rep. 100–609 at 44 (codified as amended as 17 U.S.C. (1988)). The court ignored that the same paragraph from

Nonetheless, it has been argued that Valancourt's inclusion of copyright notice (even though the application of § 407 does not require notice), provides Valancourt with a benefit, so § 407 does not constitute a taking.  To be clear, under § 407, *the Copyright Office could have demanded these books if no copyright notice had been included, so notice is in fact irrelevant*.  Copyright owners cannot receive any meaningful benefit from copyright notice with 407 Deposit without copyright registration and Copyright Deposit under § 408 (which also counts as deposit under § 407).  The only relevant benefit of copyright notice arises in litigation, in that an alleged infringer cannot raise the innocent infringer defense if a copyright notice was given.  17 U.S.C. § 402(d).  But a copyright owner cannot commence an infringement suit without registration and Copyright Deposit under § 408.

---

the House Report acknowledged that the new law will "no longer require affirmative" steps such as copyright notice to claim copyright.  *Id.*  This language seems discordant, but the final paragraph of the section makes clear that the Committee is merely explaining how Congress "is well within its authority under the Copyright Clause."  *Id.* at 45.  This section is only arguing that the revised § 407 is within the enumerated powers of Congress, because it is still related to automatic copyright protection.  Constitutional questions under the First and Fifth Amendments are not addressed.

The benefits of copyright notice are trivial.  Copyright law provides various legal remedies, including actual and statutory damages.  Actual damages are calculated based on the infringer's gross revenue, subject to adjustment for revenue not attributable to the infringement.  17 U.S.C. § 504(b).  Alternatively, the copyright holder may elect statutory damages, which can be as low as $200 if the infringement was innocent. *Id.* § 504(c).  Including copyright notice eliminates the innocent infringer defense and keeps the minimum statutory damages at $750 or more.  Thus, the innocent infringer defense merely reduces the statutory damages available to the copyright holder and is not actually a defense to a claim for liability.  4 NIMMER ON COPYRIGHT § 14.04 (2021).

So, copyright notice has some value when combined with copyright registration and mandatory deposit under § 408, but then 407 Deposit becomes moot.  The innocent infringer defense is only relevant if an action has been filed by the copyright owner against the alleged infringer, and that can only be done if the copyright owner registers (and deposits the work under § 408) because statutory damages are only available for infringement occurring ***after*** registration.  17 U.S.C. §§ 408, 411(a), 412.  Because copyright notice can only provide a legal benefit if the copyright

owner registers and deposits under § 408 (*not § 407*), it follows that there is no benefit for providing copyright notice accompanied only by deposit under § 407.  If a copyright owner (like Valancourt) wishes to take advantage of the legal effects of copyright notice, they must register and deposit under *§ 408*.  What's more, if a copyright owner deposits under § 407 (perhaps to avoid penalties), and later the copyright owner wants the benefits of copyright registration, they must *re-deposit* under § 408.[13]

So, copyright notice is irrelevant to 407 Deposit, and Valancourt's decision to include copyright notice provides it no benefit.  Copyright notice may only be relevant if Valancourt (i) subsequently registers the copyright in its books, (ii) sends a second set of deposit copies, and (iii) commences a suit for infringement, at which point the minimum damages will be $550 higher for any infringement which occurs following registration.  The inclusion of copyright notice in its books provides absolutely no legal benefit to Valancourt and sending copies under § 407 would not even meet the deposit requirement for registration.

---

[13] SUPPLEMENTARY REPORT OF THE REGISTER OF COPYRIGHTS ON THE GENERAL REVISION OF THE U.S. COPYRIGHT LAW: 1965 REVISION BILL 118–119 (1965).

### 2. If Deposit Only Applies to Registration, there are no Constitutional Concerns.

These constitutional problems addressed in Appellant's Brief arise because § 407 blithely pretends that copyright law has not changed in the past hundred years. The 1909 Act granted copyright protection only if a work was published with a copyright notice and the author deposited thereafter. Copyright Act of 1909, Pub. L. No. 60–349, 35 Stat. 1075, § 9. Under the 1909 Act, authors could easily opt in or out of copyright ownership by publishing their work without a copyright notice. If an author opted for copyright notice, the author deposited two copies with the Copyright Office in exchange for copyright ownership and protection. If an author did not want to be a copyright owner, they published the work without a copyright notice, and no deposit requirement applied.

Under the 1976 Act, if a work includes one original element, it is automatically protected by copyright as soon as a record is created. However, in 1976, copyright protection for a published work remained dependent on either inclusion of copyright notice or copyright registration within five years of publication. GENERAL GUIDE TO THE COPYRIGHT ACT OF 1976 10:1 (1977). The 1988 Amendment removed these limitations, and now, creators are granted copyright protection

29

even if the creator does not want to be a copyright owner. Often, creators do not know they are copyright owners. If the Copyright Office's interpretation of § 407 is correct, then no one can publish a work without triggering the mandatory Library Deposit requirement, even if they have no interest in being a copyright owner. As explained below, there is no easy way to opt out from the Library Deposit requirement.

Constitutional concerns are ameliorated if copyright deposit is limited to copyright registration. Section 408 authorizes copyright owners to register their work with the Copyright Office and requires deposit if copyright owners want to assert an infringement claim, among other things. 17 U.S.C. § 408.

Unfortunately, Congress left § 407 tangled with the mandatory Library Deposit requirement originally promulgated under the 1909 Act, which required Library Deposit of published works intentionally claiming copyright protection. Today, the only purposeful act regarding copyright protection is to register (§ 408), and the deposit requirements should only apply to copyright owners in exchange for registration.

**III.    Abandoning a Copyright to Avoid Mandatory Library Deposit is not Possible.**

The lower court states that Valancourt "could avoid the deposit obligation by filing a notice of abandonment." Mem. Op. at 19. In theory, abandonment seems like a simple solution, but "[i]n practice . . . it remains far from clear how an author can actually relinquish rights in a work." Dave Fagundes & Aaron Perzanowski, *Abandoning Copyright*, 62 WM. & MARY L. REV. 487, 490 (2020) (explaining that the Copyright Act does not mention abandonment and there is no standard form to file with the Copyright Office, which causes courts to be conflicted about what acts reflect an intent to abandon). Moreover, the Copyright Office does not guarantee that abandonment is an effective relinquishment of a copyright. *See* U.S. COPYRIGHT OFFICE, COMPENDIUM OF U.S. COPYRIGHT OFFICE PRACTICES § 2311 (3d ed. 2017).

Section 2311 of the Compendium of Copyright Office Practices (a publication non-specialists rarely consult) provides a procedure for filing a document "purporting to abandon a claim to copyright," but the Copyright Office does not offer "any opinion as to the legal effect of the document." *Id.* This abandonment procedure requires a filing fee, currently $95 for electronic submissions and $125 for paper submissions,

31

which increases when multiple works are included.    *Fees*, U.S. COPYRIGHT OFFICE, https://www.copyright.gov/about/fees.html (last accessed Feb. 11, 2022). And, the Copyright Office cannot guarantee that this costly procedure is legally effective.

ACCORD stated that "[i]f, in effect, a person is forced to abandon a copyright in order to avoid depositing, then, conversely, that person is forced to deposit in order to avoid abandoning." ACCORD Report at A/290–91. Section 407 gives authors a Hobson's choice—they can deposit two copies of their work with the Copyright Office (and face penalties if they do not), or they can try to abandon the copyright in their work, at considerable expense and with no guarantee of success. Either way, there are constitutional issues, whether taking private property or limiting speech, and ultimately, the author pays. Abandonment offers no real solution.

## CONCLUSION

History pervades this case, as this Court is called upon to evaluate the constitutionality of a provision that it is told originated in 1790. While the Copyright Deposit requirement now found at § 408 does have that vintage, the requirement of 407 Deposit does not. The requirement

32

that all works published in the United States need to be deposited with the Library of Congress originates in 1988, and the lack of controversy surrounding it is mainly because it is relatively underenforced. The Copyright Office and Library of Congress knew the breadth of § 407 was illegitimate and that applying it as written would create unconstitutional—and indeed absurd—results.

Section 407 is a straightforward taking of published works from creators and publishers. It has no connection to copyright law beyond the historical accident of the Copyright Office being inside the Library of Congress. It is not limited to works that bear a copyright notice, and, since 1988, copyright notice has been irrelevant to § 407 anyway. Mandatory Library Deposit under § 407 is essentially impossible to avoid because abandonment of copyright is mostly theoretical, and even if possible, is more expensive than printing and depositing. As such, the only way to avoid § 407 is not to publish, which is an obvious prior restraint on free speech, in violation of the First Amendment.

The Library of Congress became the greatest library in the world through deposits from authors and publishers who affirmatively sought the benefits of the copyright system and by purchasing material from

33

those who did not.  Moreover, the Library of Congress continues to receive material from those who affirmatively seek the benefits of copyright registration.   To the extent publishers like Valancourt do not seek copyright registration and protection, the Library of Congress, if it wants copies of their books, can do what it has always done: It can pay for them.[*]

Dated: February 17, 2022.

Respectfully submitted,

*/s/ Michael J. Mazzone*
Michael J. Mazzone
**HAYNES AND BOONE, LLP**
1221 McKinney, Suite 4000
Houston, Texas 77010-2007
Telephone: (713) 547-2115
Facsimile: (713) 547-2600
Michael.Mazzone@haynesboone.com

*Counsel for Amicus Curiae, Zvi S. Rosen and Brian L. Frye*

---

[*] The undersigned counsel and *amici* offer their thanks to Martha Wyrick, an associate with Haynes and Boone, for her help preparing this Brief.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of FED. R. APP. P. 29(b)(4) because, according to the count function of Microsoft Word 2022, it contains 6,362 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5)(A) because it has been prepared in a proportionally spaced typeface using Microsoft Word with a 14-point Century font.

Dated:  February 17, 2022.

 */s/ Michael J. Mazzone*
Michael J. Mazzone

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of February, 2022, a true and correct copy of the AMICUS BRIEF OF ZVI S. ROSEN AND BRIAN L. FRYE SUPPORTING APPELLANT IN SUPPORT OF REVERSAL was electronically filed using the court's ECF system and sent via the ECF electronic notification system to:

Robert McNamara
Jeffrey Redfern
Institute for Justice
901 North Glebe Road, Suite 900
Arlington, VA 22203
*Attorneys for Appellant*

Laura E. Myron
Daniel Tenny
U.S. Department of Justice
950 Pennsylvania Ave. NW, Room 7228
Washington, D.C. 20530-0001
*Attorneys for Appellees*

*/s/ Michael J. Mazzone*
Michael J. Mazzone