**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 21-5203**

## IN THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

VALANCOURT BOOKS, LLC,

Plaintiff-Appellant,

v.

MERRICK B. GARLAND, *Attorney General*; SHIRA PERLMUTTER, *in her official capacity as the Register of Copyrights of the U.S. Copyright Office*,

Defendants-Appellees.

On Appeal from the United States District Court
for the District of Columbia

### BRIEF FOR APPELLEES

*Of Counsel:*

SUZANNE V. WILSON
*General Counsel*

MARK T. GRAY
JORDANA RUBEL
*Office of General Counsel
U.S. Copyright Office*

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

MATTHEW M. GRAVES
*United States Attorney*

DANIEL TENNY
LAURA E. MYRON
*Attorneys, Appellate Staff
Civil Division, Room 7228
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
(202) 514-4819*

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

## A.    Parties and Amici

In this case, plaintiff in district court, and appellant here, is Valancourt Books LLC. Defendants below and appellees here are the Merrick Garland, in his official capacity as Attorney General, and Shira Perlmutter, in her official capacity as Register of Copyrights of the U.S. Copyright Office.* There were no amici in the district court. Amici before this Court in support of plaintiff-appellant are Zvi S. Rosen and Brian L. Frye, the Association of American Publishers, and the Nikasen Center. The American Library Association, Association of College and Research Libraries, and Association of Research Libraries filed a notice of intention to participate as amicus curiae in support of defendants-appellees.

## B.    Rulings Under Review

The rulings under review are the opinion and order entered on July 23, 2021. *See Valancourt Books LLC v. Perlmutter, et al.*, No. 1:18-

---

* Prior holders of the office of Attorney General and of the Register of Copyrights were parties before the district court. Each public officer was substituted for their predecessor under Fed. R. Civ. P. 25(d).

cv-1922, 2021 WL 3129089 (D.D.C.) (Jackson, J.); *see also* JA 174; JA 175-200.

### C.     Related Cases

The case on review has not previously been before this Court or any other, save the district court from which they originated. The undersigned counsel is unaware of any related cases currently pending in any court.

/s/ Laura E. Myron
Laura E. Myron

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................... 1

STATEMENT OF JURISDICTION ..................................................... 2

STATEMENT OF THE ISSUE ........................................................... 3

PERTINENT STATUTES AND REGULATIONS .................................. 3

STATEMENT OF THE CASE ............................................................. 3

    A.   Statutory Background................................................... 3

    B.   Factual Background.................................................... 14

    C.   Prior Proceedings ...................................................... 16

SUMMARY OF ARGUMENT ............................................................ 19

STANDARD OF REVIEW................................................................. 25

ARGUMENT .................................................................................. 26

THE DEPOSIT REQUIREMENT IN 17 U.S.C. § 407
    IS CONSTITUTIONAL................................................................. 26

I.   Congress Permissibly Required The Deposit Of Copies Of
    Copyrighted Works In Exchange For The Statutory Benefit Of
    Copyright Protection. .................................................................. 26

II.   The Deposit Requirement In Section 407 Is Not A Taking........... 41

III.   The Deposit Requirement Does Not Violate The First
    Amendment................................................................................ 47

IV.      Plaintiff Identifies No Error In The District Court's Analysis
         Of Mootness ............................................................................ 56

CONCLUSION ........................................................................ 59

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Broadrick v. Oklahoma,*
  413 U.S. 601 (1973) ................................................................54

*Cedar Point Nursery v. Hassid,*
  141 S. Ct. 2063 (2021) .......................................................... 42

*Eldred v. Ashcroft,*
  537 U.S. 186 (2003) ..........................................................43-44

*Gaiman v. McFarlane,*
  360 F.3d 644 (7th Cir. 2004) ............................................... 37

*Harper & Row Publishers, Inc. v. Nation Enters.,*
  471 U.S. 539 (1985) ............................................................. 27

*Horne v. Department of Agriculture,*
  576 U.S. 350 (2015) ..........................................22, 23, 42, 43

*Hoye v. City of Oakland,*
  653 F.3d 835 (9th Cir. 2011) ...........................................48-49

*Ladd v. Law & Tech. Press,*
  762 F.2d 809 (9th Cir. 1985) ...........................8, 9, 31, 37, 51

*LeClair v. Saunders,*
  627 F.2d 606 (2d Cir. 1980)..................................................52

*Mahoney v. Babbitt,*
  105 F.3d 1452 (D.C. Cir. 1997) ........................................... 49

*McCullen v. Coakley,*
  573 U.S. 464 (2014) ............................................................. 48

*McIntyre v. Ohio Elections Comm'n,*
   514 U.S. 334 (1995) ............................................................... 48

*Micro Star v. Formgen Inc.,*
   154 F.3d 1107 (9th Cir. 1998) ............................................... 39

*National Comics Publ'n v. Fawcett Publ'ns, Inc.,*
   191 F.2d 594 (2d Cir. 1951) ................................................... 40

*Nollan v. California Coastal Comm'n,*
   483 U.S. 825 (1987) ............................................................... 43

*Reed v. Town of Gilbert,*
   576 U.S. 155 (2015) ............................................................... 48

*Ruckelshaus v. Monsanto Co.,*
   467 U.S. 986 (1984) .......................................................22, 42

*Sanjour v. EPA,*
   56 F.3d 85 (D.C. Cir. 1995) ................................................... 52

*Sony Corp. of Am. v. Universal City Studios, Inc.,*
   464 U.S. 417 (1984) ............................................................... 27

*Sorrell v. IMS Health Inc.,*
   564 U.S. 552 (2011) ............................................................... 50

*Talley v. California,*
   362 U.S. 60 (1960) ................................................................. 48

*Time Warner Entm't Co., L.P. v. FCC,*
   240 F.3d 1126 (D.C. Cir. 2001) ............................................ 49

*Town of Greece v. Galloway,*
   572 U.S. 565 (2014) ............................................................... 51

*Turner Broad. Sys., Inc. v. FCC,*
   520 U.S. 180 (1997) ............................................................... 48

*United States v. American Library Ass'n,*
  539 U.S. 194 (2003) ..............................................................53

*United States v. Playboy Entm't Grp., Inc.,*
  529 U.S. 803 (2000) ..............................................................48

*Washingtonian Publ'g Co. v. Pearson,*
  306 U.S. 30 (1939) .........................................6, 27-28, 30, 51

*Western Sur. Co. v. U.S. Eng'g Constr., LLC,*
  955 F.3d 100 (D.C. Cir. 2020)..............................................25

*Wheaton v. Peters,*
  33 U.S. (8 Pet.) 591 (1834) ..............................1, 4, 5, 19, 27, 43, 44, 45

**U.S. Constitution:**

Art. I, § 8, cl. 8.....................................................................3, 27

**Statutes:**

Act of Aug. 10, 1846, 9 Stat. 102........................................4, 26

Act of Mar. 3, 1865, 13 Stat. 540.........................................4, 5

Act of Mar. 3, 1891, 26 Stat. 1106......................................4, 26

Berne Convention Implementation Act,
  102 Stat. 2853 (1988)............................................................9

Copyright Act of 1790,
  1 Stat. 124 .........................................................................3, 26

Copyright Act of 1909,
  35 Stat. 1075 ...................................................................4, 6, 26

Copyright Act of 1976,
  Pub. L. No. 94-553, 90 Stat. 2541 (1976)...................7, 8, 32

14 Stat. 395 (1867) ......................................................................... 6

17 U.S.C. § 101 ...................................................................... 34, 35

17 U.S.C. § 102(a) ...................................................................... 10

17 U.S.C. § 106 ...................................................................... 23, 45

17 U.S.C. § 201(d) ....................................................................... 7

17 U.S.C. § 407 ................................................... 1, 6, 26, 30, 35

17 U.S.C. § 407(a) .................................................................. 20, 31

17 U.S.C. § 407(a)-(b) ............................................................... 10

17 U.S.C. § 407(c) ...................................................................... 11

17 U.S.C. § 407(d) ...................................................................... 11

17 U.S.C. § 408 ...................................................................... 12, 14

17 U.S.C. § 408(b)(3) ................................................................. 13

17 U.S.C. §§ 410-12 ................................................................... 13

17 U.S.C. § 412 .......................................................................... 46

17 U.S.C. § 506 .......................................................................... 47

17 U.S.C. § 512 .......................................................................... 47

17 U.S.C. § 1201 ........................................................................ 47

17 U.S.C. § 1505(a) .................................................................... 47

17 U.S.C. § 1505(b) .................................................................... 47

28 U.S.C. § 1291................................................................................2

28 U.S.C. § 1331................................................................................2

28 U.S.C. § 1346................................................................................2

28 U.S.C. § 2201................................................................................2

Copyright Act, 15 Geo. III, c. 53, § VI (1775) (Gr. Brit.)...........................5

Statute of Anne, 8 Ann., c. 19, § V (1710) (Gr. Brit.) ...........................4, 5

**Regulations:**

37 C.F.R. § 201.4(g) ........................................................................41

37 C.F.R. § 202.19(c)........................................................................11

37 C.F.R. § 202.19(c)(5)...............................................................11, 54

37 C.F.R. § 202.19(d)(2)(ix) .......................................................11, 54-55

37 C.F.R. § 202.19(e)........................................................................12

37 C.F.R. § 202.19(f)(1).....................................................................14

37 C.F.R. § 202.20(e)........................................................................14

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ..................................................................2

**Legislative Materials:**

H.R. Rep. No. 94-1476 (1976),
    *reprinted in* 1976 U.S.C.C.A.N. 5659 ..................7, 8, 13, 20, 30, 32, 46

H.R. Rep. No. 100-609 (1988).....................................................10, 21, 33

S. Rep. No. 100-352 (1988),
      *reprinted in* 1988 U.S.C.C.A.N. 3706 .............................................31-32

**Other Authorities:**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright*
      (2019)..............................................................................................39-40

United States Copyright Office, *Copyright Notice*, (Rev. March 2021)
      https://www.copyright.gov/circs/circ03.pdf............................................ 6

United States Copyright Office, *Compendium of U.S. Copyright Office
      Practices*, https://www.copyright.gov/comp3/chap600/ch600-
      examination-
      practices.pdf....................................................................................55-56

**INTRODUCTION**

This case concerns a requirement that the owners of copyrighted published works deposit two copies of the work with the Library of Congress. 17 U.S.C. § 407. The requirement to deposit copies in exchange for copyright protection originated with the First Congress and was signed into law by President Washington. Though amended since 1790, a deposit requirement has formed part of American law for over two hundred years. As part of that extensive history, the Supreme Court long ago recognized its validity. The Supreme Court noted in particular that Congress had, through the copyright laws, vested rights in copyright owners that they did not possess at common law, and concluded that "when the legislature are about to vest an exclusive right in an author . . . they have the power to prescribe the conditions on which such right shall be enjoyed." *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834).

The district court properly declined to strike down the requirement that the Supreme Court upheld. The premise of plaintiff's argument is that changes in copyright law since the founding, each of which eased the burdens associated with obtaining or maintaining a

copyright, had the unintended effect of transforming the permissible

exchange of a deposit obligation for the rights associated with copyright

protection into an unconstitutional mandate that publishers deposit

copies of their works. But plaintiff remains free to publish works

without incurring any requirement to deposit them. Congress did not

eliminate that choice by making it easier for publishers to maintain

copyright protection. And plaintiff, which obtained copyright protection

only through voluntary contractual arrangements with third parties

and then included notices of copyright in its publications, is particularly

poorly situated to argue that the system became unconstitutional

because copyright protection was involuntarily imposed on unwilling

publishers.

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C.

§§ 1331, 1346, and 2201. On July 23, 2021, the district court entered

final judgment in favor of defendants. JA 174. Plaintiff filed a timely

notice of appeal on September 17, 2021. JA 201; *see* Fed. R. App. P.

4(a)(1)(B) (60-day time limit). This Court has jurisdiction under 28

U.S.C. § 1291.

## STATEMENT OF THE ISSUE

The question presented is whether Congress violated the First and Fifth Amendments by requiring entities that receive the statutory benefits associated with copyright protection for a particular work to deposit two copies of the work with the Library of Congress.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

The Copyright Clause of the Constitution provides that "Congress shall have Power . . . To promote the Progress of Science . . . by securing [to Authors] for limited Times . . . the exclusive Right to their . . . Writings." U.S. Const. art. I, § 8, cl. 8. Congress has exercised this authority consistently since 1790, when it first established federal copyright protections for works of authorship. *See* Copyright Act of 1790, 1 Stat. 124, 125. Since the first Copyright Act of 1790, except for a six-year period in the nineteenth century, Congress has included a requirement, in connection with copyright protection, that an author provide copies of most newly published works. *See, e.g.*, 1 Stat. at 125;

3

Act of Aug. 10, 1846, § 10, 9 Stat. 102, 106; Act of Mar. 3, 1891, § 3, 26 Stat. 1106, 1107; Copyright Act of 1909, § 9, 35 Stat. 1075, 1077.[1]

There is a long history of deposit requirements associated with the protection of copyright dating back to the sixteenth century. The Statute of Anne, enacted in Great Britain in 1710, included a mandatory deposit scheme similar to that provided for in the current Copyright Act, directing book publishers to hold "nine copies of each book or books, upon the best paper" in reserve prior to publication "for the use of the royal library [and the libraries of universities throughout Great Britain]." Statute of Anne, 8 Ann., c. 19, § V (1710) (Gr. Brit.). If a publisher failed to deliver a copy of the book to the library in compliance with the Statute of Anne's requirements, copyright protection was not forfeited; instead, the publisher was required to pay a fine. *See id.* In

---

[1] The requirement was repealed in 1859, but reinstated in 1865. *See* Act of Mar. 3, 1865, 13 Stat. 540. Prior to 1846, deposits were made with the local district court and the Secretary of State. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 662 (1834) (noting that the 1790 Act required that deposits must be made "in the clerk's office" and a copyright holder must "deliver or cause to be delivered to the Secretary of State a copy."). The Library of Congress was not founded until several years after the 1790 Act, and it began receiving copyright deposits under the law establishing the Smithsonian in 1846. *See* 9 Stat. at 106.

1775, English copyright law was amended to make the registration and deposit of books a condition of instituting a copyright infringement suit. Copyright Act, 15 Geo. III, c. 53, § VI (1775) (Gr. Brit.).

As noted, the Copyright Act of 1790, enacted by the first Congress and signed into law by President George Washington, included a deposit requirement similar to the one before this Court. In 1834, the Supreme Court upheld the deposit requirement included in the Copyright Act of 1790 as constitutional. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834) ("No one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed; and that no one can avail himself of such right who does not substantially comply with the requisitions of the law.").

In 1865, the Librarian of Congress was empowered to demand copies of works not deposited within one month of publication; failure to deposit would result in forfeiture of copyright. Act of Mar. 3, 1865, § 3, 13 Stat. 540, 540. In 1867, a $25 fine was added as a penalty for noncompliance. *See* 14 Stat. 395 (1867). The Copyright Act of 1909 modified the deposit requirement slightly; although deposit was not

5

required for a copyright to come into existence, it was required before a copyright holder could institute an infringement suit. The 1909 statute required that "after copyright has been secured by publication of the work with [notice],[2] there shall be promptly deposited in the copyright office" two copies of the work, and gave the Register of Copyrights the authority to make a formal demand when deposit was not made, after which deposit would be required within three months, upon penalty of copyright forfeiture and a fine. §§ 12-13, 35 Stat. at 1078. *See Washingtonian Publ'g Co. v. Pearson*, 306 U.S. 30, 37 (1939).

When Congress enacted the Copyright Act of 1976, which included 17 U.S.C. § 407, it further liberalized the law to benefit authors. Congress retained the fine for failure to comply with the deposit requirement and increased it to $250 per work, but eliminated the forfeiture penalty, so the failure to deposit no longer resulted in the forfeiture of copyright protection. The 1976 Act provided that "the

---

[2] Copyright notice generally consists of three elements included in a work: the copyright symbol ©, the word "copyright" or the abbreviation "copr."; the year of first publication of the work; and the name of the copyright owner. *See* United States Copyright Office, *Copyright Notice* 1, (Rev. March 2021) https://www.copyright.gov/circs/circ03.pdf.

owner of copyright or of the exclusive right of publication in a work published with notice of copyright in the United States shall deposit, within three months after the date of such publication . . . two complete copies of the best edition." Copyright Act of 1976, Pub. L. No. 94-553, § 407(a), 90 Stat. 2541 (1976). To make clear that forfeiture of copyright protection was no longer a consequence of failure to deposit, the 1976 version of Section 407(a), like the present version, stated that the deposit requirement was not a "condition[] of copyright protection." *Id.*

The legislative history explained that the change was warranted because Congress determined that the sanction of forfeiture for failing to deposit the required copies was too severe. *See* H.R. Rep. No. 94-1476, at 150 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5766. That determination rested, in part, on the concern that because a separate provision of the 1976 law allowed the ownership of copyright to be divided among several parties, *see* 17 U.S.C. § 201(d), one copyright owner's rights could be destroyed by another owner's failure to deposit. H.R. Rep. No. 94-1476, at 150.

In the 1976 Copyright Act, Congress also made it more difficult for copyright owners to inadvertently forfeit their copyright benefits by

7

failing to include notice of copyright on their published work. Although

publication with notice was required by the statute, *see* 90 Stat. at 2576,

Congress also provided that the omission of a notice of copyright would

not "invalidate the copyright" if (1) it was only omitted from a small

number of copies; (2) registration of the work was made within five

years of publication, and a reasonable effort was made to add notice to

published copies after the omission was discovered; or (3) notice was

omitted in violation of an express requirement of the authorization to

publish the work, *id.* at 2578. This change was made in an effort to

address "unfair and unjustifiable forfeitures on technical grounds." H.R.

Rep. No. 94-1476, at 147.

In 1985, the Ninth Circuit rejected a book publisher's challenge to

the 1976 version of the provision under the Takings Clause and the

First Amendment. *See Ladd v. Law & Tech. Press*, 762 F.2d 809, 812

(9th Cir. 1985). The court of appeals observed that "Congress

indubitably can place conditions on the grant of a statutory benefit," *id.*

at 813, and noted that "publication with copyright notice" triggered the

deposit requirement, *id.* at 814. The court of appeals rejected the

argument that, in light of the statutory text, "the deposit requirement

8

by its own terms is no longer a condition of copyright," explaining that "deposit is indeed still required of one obtaining a copyright, although protection of copyright laws is not lost by failure to comply." *Id.*

In 1988, Congress amended Section 407 to bring the Copyright Act into compliance with international obligations under the Berne Convention for the Protection of Literary and Artistic Works. *See* Berne Convention Implementation Act, 102 Stat. 2853 (1988); JA 115, ¶ 42. One of the primary conflicts between U.S. copyright law and the requirements of the Berne Convention was U.S. imposition of formalities on the exercise of rights and thus, one of the primary goals of the 1988 amendments was to remove "administrative obligation[s] set forth by . . . national law which, if not fulfilled, would lead to a loss of copyright." JA 82. Congress thus removed the requirement that a work be published with notice of copyright before copyright protection would attach, to eliminate any prohibited formalities. JA 83. Congress correspondingly removed the phrase "with notice of copyright" from Section 407.

The relevant House Report explained that because "noncompliance with the mandatory deposit requirement does not

9

result in forfeiture of any copyright protection, mandatory deposit is [compatible] with Berne." H.R. Rep. No. 100-609, at 44 (1988). The Report further explained that "[i]t remains true that only those works published in the United States in which copyright [protection] is claimed are subject to mandatory deposit. The only change is that the law will no longer require affirmative marking of the copies as a condition of maintaining copyright." *Id.*

As amended in 1988, Section 407 of the Copyright Act currently states that except as exempted by the Register of Copyrights, "the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication . . . two complete copies of the best edition" of the work with the Copyright Office "for the use or disposition of the Library of Congress." 17 U.S.C. § 407(a)-(b). The law does not require deposit of the work before copyright protection vests; copyright protection attaches to copyrightable works automatically upon their fixation in a tangible medium of expression. *Id.* § 102(a).

If a copyright owner fails to affirmatively deposit copies of a work after publication (and if suitable copies have not otherwise been

10

delivered to the Office through registration, *see infra* pp. 12-14), the

Copyright Office may make a written demand for the deposit upon the

publisher or the copyright owner. If a demand has been made, the

copyright owner or publisher has three months to comply before it is

subject to fines and costs for the Library to purchase the work. 17

U.S.C. § 407(d). By regulation, the Copyright Office may exempt certain

categories of works from the deposit requirement entirely or limit the

requirement to only one copy. *See id.* § 407(c); *see also* 37 C.F.R.

§ 202.19(c). For example, the Copyright Office has generally exempted

most electronic works that are not published in physical formats (*i.e.*,

works "available only online"). 37 C.F.R. § 202.19(c)(5). In 2018, the

Copyright Office amended its regulations so that for most books, "the

deposit of one complete copy of the best edition of the work will suffice

in lieu of the two copies required . . . unless the Copyright Office issues

a demand for a second copy pursuant to 17 U.S.C. [§] 407(d)." *Id.*

§ 202.19(d)(2)(ix).

When faced with a written demand to deposit copies of a work, a

copyright owner that believes it would be overly burdensome to comply

may request a grant of "special relief" from the Copyright Office. Under

Copyright Office regulations, the Register of Copyrights may, after consultation with other appropriate officials of the Library, grant a request for special relief from Section 407 for a published work that is not otherwise exempt. 37 C.F.R. § 202.19(e). For example, special relief might permit deposit in a format that would not otherwise be considered the "best edition" of the work (*e.g.*, an electronic format). JA 118-19, ¶ 58. Consistent with its general practice, the Copyright Office has sometimes raised the option of special relief directly with copyright owners who express concerns regarding potential burdens. JA 119, ¶ 59. Currently, the Copyright Office has multiple ongoing special relief agreements that permit certain publishers to submit an electronic copy of a work rather than a physical deposit. The parties' joint stipulation of facts in this case reflects that in the two preceding calendar years, the Copyright Office had granted every such special relief request it received. *Id.* ¶ 59-60.

The Copyright Act, in 17 U.S.C. § 408, also provides a copyright owner who registers its copyright with the Copyright Office with additional statutory benefits, and includes a separate deposit requirement that is a condition of receiving those benefits. *See id.*; *see*

12

*also* H.R. Rep. No. 94-1476, at 150 (noting that "deposit and registration [are] separate though closely related").[3] In particular, timely registration constitutes *prima facie* evidence of the validity of the copyright, registration is generally a prerequisite to the filing of a civil action for copyright infringement, and certain enhanced remedies are conditioned on timely registration. If an unregistered copyright is infringed, however, the owner can register at that time and then institute a civil action, though attorney's fees and statutory damages are generally unavailable for infringement that pre-dates registration. *See* 17 U.S.C. §§ 410-12. As a condition of registration, the copyright owner must generally deposit two complete copies of the best edition of a published work, although the Copyright Office also has regulatory authority to permit the deposit of identifying material instead of a complete copy, or to require only one copy instead of two. *Id.* § 408(b)(3). Copies submitted for deposit under Section 407 may be used to also satisfy the registration deposit requirement, if accompanied by a

---

[3] As used herein, the term "deposit requirement" refers solely to the requirements of Section 407. Plaintiff has not challenged the constitutionality of Section 408 and thus, the requirements of that provision are not before this Court.

13

registration application and fee. *Id.* § 408; 37 C.F.R. §§ 202.19(f)(1), 202.20(e).

### B.    Factual Background

Plaintiff Valancourt Books is a book publisher in Richmond, Virginia, which publishes rare and out-of-print fiction. JA 109, ¶ 4. Many of the works plaintiff publishes are older works that are already in the public domain, published with editorial enhancements including scholarly introductions and footnotes. JA 112, ¶ 24. All of plaintiff's books, other than the first two, are published "on-demand," a method where each copy is printed in response to a specific order or request. JA 110, ¶ 12. The editorial enhancements are subject to U.S. copyright protection if they contain sufficiently creative subject matter. JA 112, ¶ 24.

Plaintiff—based on the asserted belief that all or nearly all of the books that it publishes contain copyrightable material—publishes all or nearly all of its works (including all of those at issue in this case) with a copyright notice. JA 112-13 ¶¶ 28-29. Some of the works at issue here also contain the following express reservation of rights: "All rights reserved. The use of any part of this publication reproduced,

14

transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, or stored in a retrieval system, without prior written consent of the publisher, constitutes an infringement of the copyright law." JA 113, ¶ 29.

In June 2018, the Office sent an email to plaintiff requesting deposit of 341 published books. JA 122-23, ¶¶ 71-73; JA 126-32 (Exs. A-C). The request included specific notices for deposit of each work, and stated that if plaintiff was unable to supply any individual book, it should return the relevant notice with a written explanation. JA 122-23, ¶¶ 71-73; JA 126-32 (Exs. A-C). Plaintiff responded to the demand stating that it did not keep excess physical copies of its books because it relied on a print-on-demand business model and that printing and shipping the books would be cost-prohibitive. JA 123, ¶ 76; JA 133-35 (Ex. D). Plaintiff also stated that it had provided some of the works to the Library in connection with a voluntary program known as the Cataloging in Publication program. JA 133-35 (Ex. D).

In response to plaintiff's email, the Copyright Office reviewed the demanded titles and determined that some of the original 341 requested titles appeared to be entirely composed of material reprinted from the

public domain (and thus were no longer requested) or had been previously provided to the Library,[4] but that 240 books contained additional copyrightable materials, such as new introductions, and remained subject to the deposit requirement. JA 123, ¶¶ 77-79; JA 136-43 (Exs. E-G). On August 9, 2018, the Copyright Office sent plaintiff a new letter with the revised demand and new dates for compliance. *See* JA 141.

### C.    Prior Proceedings

One week later, plaintiff filed this suit in the U.S. District Court for the District of Columbia. Plaintiff alleged that the requirement to deposit copies of new copyrightable works is an unconstitutional taking of private property under the Fifth Amendment and a burden on freedom of speech in violation of the First Amendment. In March 2019, the Copyright Office and the Library informed plaintiff that they are willing to accept electronic copies of the 240 titles listed in the more recent demand in lieu of physical copies. JA 119, ¶ 61. Plaintiff declined

---

[4] Books provided to the Library for purposes of Cataloging-in-Publication "do not count towards meeting a publisher's obligations under Section 407," but the Copyright Office "may take those copies into account when determining whether to issue a demand, and for how many copies." JA 120, ¶ 65.

this offer; the Copyright Office has clarified that the offer remains open to plaintiff regarding the 240 books in the demand letter and all future works. Dkt. No. 26, at 2.

The district court rejected plaintiff's arguments, granting summary judgment for the government defendants on the ground that the Copyright Act confers a statutory benefit that is conditioned on the receipt of two copies of the work and thus does not run afoul of the Constitution. *See* JA 185. The court explained that "[p]ublishers are not required to make the deposit in order to print books or to sell them; the obligation is a condition of the receipt of the governmental benefit of copyright protection." JA 187.

As an initial matter, the court considered whether the offer to accept electronic copies in satisfaction of Section 407 would moot the case, but found that the dispute remained live because plaintiff had refused the offer. *See* JA 184. Noting that plaintiff publishes works with "notice of copyright," the court went on to conclude that plaintiff "is voluntarily engaging in the exchange of copies of its works for copyright protection," because it has "taken voluntary action to receive the benefits afforded under federal copyright law, and has declined to take

17

action to opt out of receiving such benefits," JA 187 (quoting Dkt. No.

17-1, at 21), and because it "is receiving something beyond mere

participation in the market in return," JA 187-88. Thus, "the deposit

requirement does not constitute a physical taking without just

compensation." JA 188.

The court further conclude that the deposit requirement does not

violate the First Amendment because it does not unduly burden any

speech. The court held that the requirement is not content-based and

reasoned that it is "part of a federal copyright scheme that encourages

and protects expression, rather than restricting or chilling the right to

speak." JA 198. Because the provision does not apply where a publisher

agrees to forgo copyright protection, it is "merely an incidental cost

associated with a government benefit." JA 199. In addition, the court

found that the deposit requirement also provides a "benefit to the public

. . . since any burden on expressive activity is designed to further the

interest underlying the Copyright Act—the advancement of the national

interest in the arts and sciences." *Id.* Finally, the court noted that here

in particular, "the burden of complying with the deposit requirement is

minimal given the offer to accept digital copies of plaintiff's works,"

18

since plaintiff is "free to choose between devoting the time needed to generate the digital copies at no financial cost, submitting hard copies of the works at a modest cost, or disavowing copyright protection altogether." *Id.*

## SUMMARY OF ARGUMENT

1. Section 407 is constitutional because Congress permissibly required the deposit of copies of copyrighted works in exchange for the statutory benefit of copyright protection. Since 1790, Congress has provided the substantial benefit of copyright protection to authors of creative works in exchange for the deposit of copies of the work. The Supreme Court upheld this arrangement in 1834. *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834) ("[W]hen the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed.").

In exchange for the valuable rights afforded to copyright owners, Congress requires two copies for the Library of Congress, which makes works available for use by the general public. This system has been extremely effective at promoting the dissemination of creative work and plaintiff does not contend otherwise. Instead, plaintiff argues that two

19

changes to the copyright laws since 1834, each intended to make it easier to secure and maintain copyright protection, have rendered Section 407's deposit requirement unconstitutional. But neither change had such an effect.

First, Congress modified the deposit requirement to relax the consequence associated with failure to deposit, imposing a financial penalty rather than loss of copyright. *See* H.R. Rep. No. 94-1476, at 150. But a change to the penalty does not alter the terms of the underlying bargain. The deposit requirement still applies only to those publishers and authors who want copyright protection for their works. And Congress's statement that deposit is no longer a "condition[] of copyright protection," 17 U.S.C. § 407(a), merely establishes that a copyright cannot be forfeited by failure to deposit the work, and does not alter the terms of the bargain.

Second, Congress did not fundamentally alter the bargain when it amended the law to ensure that copyright owners do not lose their copyright protection when they fail to observe certain formalities, like including a notice of copyright. The bargain upheld in *Wheaton* remained the same. It "remains true that only those works published in

20

the United States in which copyright is claimed are subject to mandatory deposit." H.R. Rep. No. 100-609, at 44.

Plaintiff is wrong to argue that, after this change in the statute, the deposit requirement is now involuntarily foisted upon authors and publishers. As an initial matter, such an argument would be relevant only to authors who would prefer to decline copyright protection because of the associated deposit requirement. Not only is plaintiff not in this category, but it has not established there are many others in this position either. Plaintiff's affirmative actions in obtaining copyright ownership or exclusive licenses to the works through written agreements have made it subject to Section 407. Moreover, it has published all of the works at issue in this case with notice of copyright. And plaintiff has steadfastly refused to disclaim copyright protection, even though doing so would eliminate its obligation to deposit copies of its works.

Even to the extent that some other entity might conclude that the burdens of the deposit requirement exceed the benefits of copyright protection, there would be no constitutional defect because the option remains to abandon copyright protection and thus escape the deposit

21

requirement. Contrary to plaintiff's suggestion, abandonment for purposes of avoiding the Section 407 requirement is not difficult or costly. If an entity were to take an overt act to renounce its copyright, the Copyright Office would no longer treat it as the owner of a copyright for purposes of Section 407, and the deposit requirement (and with it any potential constitutional concerns) would disappear. That is a reasonable interpretation of the statute, and at a minimum it should be accepted as a matter of constitutional avoidance.

2. For the reasons outlined above, Section 407's deposit requirement does not effect a taking. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007-08 (1984) (holding Congress does not effect a taking when it conditions the provision of a government benefit on the furnishing of certain private property provided the condition is rationally related to a legitimate government interest). Plaintiff is wrong to argue that this case is governed by *Horne v. Department of Agriculture*, 576 U.S. 350 (2015), rather than *Monsanto*. In *Horne*, the Supreme Court struck down a provision that required raisin growers to submit a percentage of their annual crop to the government, finding that the right to sell raisins was "not a special governmental benefit."

22

*Id.* at 366. The benefits associated with copyright are not analogous to a common-law right to sell raisins on the open market. The Supreme Court has made clear in *Wheaton* that the rights associated with copyright protection are statutory and may be conditioned on the deposit of copies to the Library of Congress.

Copyright protection is a valuable government benefit within the meaning of *Monsanto*. It provides the owner with the right to preclude others from reproducing, distributing, publicly performing, or displaying its works, or from preparing derivative works, without authorization. 17 U.S.C. § 106. And copyright protection is valuable even absent registration, especially in light of the significant deterrent effect that comes with the knowledge that a statutory framework exists to allow copyright owners to enforce their rights. Notably, plaintiff takes advantage of that framework and has consistently declined to forgo its copyright protection in order to avoid the deposit obligations.

3. The deposit requirement likewise does not violate the First Amendment because it is a cost associated with copyright protection rather than with the publication of expressive works. For the reasons discussed, authors remain free to publish works without any deposit

23

requirement so long as they forgo the statutory benefits of copyright protection. Section 407 does not burden speech; it does not limit the sorts of books that can be published or restrict the time, place, or manner of publishing them. Nor has plaintiff provided any evidence that Section 407 indirectly chills protected speech.

Plaintiff's novel argument urges that the government is not suppressing disfavored speech, but instead impermissibly targeting books the government likes. But plaintiff cites no cases in which the government has punished favored speech, and indeed, this is not such a case since the requirement has neither the purpose nor effect of suppressing speech.

The deposit requirement is facially neutral and the government's enforcement practices do not render it unconstitutional. Plaintiff has not brought a selective enforcement claim and such a claim would not support invalidation of the statute. Plaintiff's argument that Section 407 burdens more speech than necessary fares no better because, again, the deposit requirement does not ban or prohibit any speech, nor has plaintiff shown that it has indirectly chilled any speech. And the

Copyright Office has sought to exercise its statutory authority where possible to lessen the impact of the deposit requirement.

4. Finally, there is no error in the district court's analysis of mootness. The district court properly analyzed the case based on the undisputed facts that publishers may seek special relief if the burden of Section 407 poses a problem, that the Copyright Office regularly grants such requests, and that here the Copyright Office would accept electronic copies of plaintiff's works. Given that both of plaintiff's constitutional theories depend in part on the extent of the burden that it asserts is associated with compliance under Section 407, the district court rightly considered that if the plaintiff were to choose to submit electronic copies, it would significantly diminish the burden associated with the obligations of Section 407 as applied to plaintiff.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment de novo. *Western Sur. Co. v. U.S. Eng'g Constr., LLC*, 955 F.3d 100, 104 (D.C. Cir. 2020).

25

# ARGUMENT

## THE DEPOSIT REQUIREMENT IN 17 U.S.C. § 407 IS CONSTITUTIONAL

### I.    Congress Permissibly Required The Deposit Of Copies Of Copyrighted Works In Exchange For The Statutory Benefit Of Copyright Protection.

**A.** Since the dawn of the Republic, Congress has provided the substantial benefit of copyright protection to authors of creative works, but imposed in exchange a requirement to deposit copies of the work. *See, e.g.*, 1 Stat. at 125; § 10, 9 Stat. at 106; § 3, 26 Stat. at 1107; §§ 9, 10, 35 Stat. at 1077. In one form or another (with a six-year break around the time of the Civil War), this bargain has formed part of American law for over two hundred years.

In 1834, the Supreme Court upheld this arrangement. The Court explained that the right to copyright protection "does not exist at common law" but instead originated "under the acts of congress," and "[n]o one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed;" and "that no one can avail himself of such right who does not substantially comply

26

with the requisitions of the law." *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834).

This bargain has been successful in fulfilling the goal set out in the Copyright Clause to "promote the Progress of Science and useful Arts." U.S. Const. art. I, § 8, cl. 8. As the Supreme Court has explained, "the Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 558 (1985). In particular, the statutory copyright framework is "intended to motivate the creative activity of authors and inventors by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984); *see also Washingtonian Publ'g Co. v. Pearson*, 306 U.S. 30, 36 (1939) (The Copyright Act "was intended definitely to grant valuable, enforceable rights to authors, publishers, etc., without burdensome requirements; 'to afford greater

27

encouragement to the production of literary works of lasting benefit to the world.'").

The Library of Congress acts as a physical manifestation of that exchange by making works available for use by the general public. The Library of Congress is the largest library in the world, with collections comprising over 168 million items. JA 113, ¶ 31. In Fiscal Year 2018, the Library responded to over a million reference requests from Congress, federal agencies, and the public. JA 114, ¶ 31. The quid pro quo inherent in the Copyright Act—wherein copyright owners get exclusive rights for a period of time, in exchange for which they must provide two copies of the work to the Library for public use—thus arises naturally from the Copyright Clause.

There is no indication that this system has not functioned as intended. To the contrary, the amicus brief of the Association of American Publishers illustrates the effectiveness of the Copyright Act in promoting expression by emphasizing that its "members depend upon the protections of the Copyright Act to recoup their costs of production and distribution and invest in new works." Association of American Publishers Br. 15. Plaintiff's arguments in this case are therefore not

premised on any contention that authors have found copyright insufficiently valuable to make the bargain worthwhile. There is no such suggestion in the record, and to the contrary, as noted below, plaintiff itself has steadfastly declined to sacrifice copyright protection in order to escape the deposit requirement.

Plaintiff's argument is instead premised on the counterintuitive view that two changes to the copyright laws, each of which had the purpose and effect of easing the burdens on copyright owners by making it easier to secure and maintain copyright protection, have rendered the deposit requirement unconstitutional. The first change eliminated the possibility that a copyright owner could lose copyright protection by failing to satisfy the deposit requirement, replacing that draconian sanction with a financial penalty. The second eased the rules for acquisition of copyright protection, eliminating the prospect that a failure to observe certain formalities would cause publishers to inadvertently sacrifice copyright protection at the time they published their works. Neither change fundamentally altered the bargain upheld in *Wheaton*, much less rendered the deposit requirement unconstitutional.

**B.** The deposit requirement in Section 407 applies only to "the owner of copyright or of the exclusive right of publication of a work published in the United States." 17 U.S.C. § 407. Accordingly, the bargain established at the founding and upheld in *Wheaton* remains in place: only those who receive the benefits of copyright protection bear the burden of depositing copies of the relevant works.

**1.** The first change on which plaintiff relies did nothing to alter the terms of that bargain but rather modified the consequences associated with a failure to satisfy the copyright owner's obligation. In particular, concerned that the loss of copyright protection was too draconian a sanction for failure to comply with the deposit requirement, Congress replaced it with a financial penalty. *See* H.R. Rep. No. 94-1476, at 150. As the Supreme Court explained, "[u]nder the old Act deposit of the work was essential to the existence of copyright," but "[t]his requirement caused serious difficulties and unfortunate losses." *Washingtonian Publ'g Co.*, 306 U.S. at 37. And Congress considered the financial penalty "adequate for punishment of delinquents and to enforce contributions of desirable books to the Library." *Id.* at 41.

A change to the penalty for noncompliance does not alter the terms of the underlying bargain. A contract, for example, constitutes an exchange of a promise for valuable consideration whether or not a breach of the contract leads to repudiation of the contract, as opposed to a damages remedy. The Ninth Circuit thus properly recognized that the alteration in the penalty associated with noncompliance did not render the deposit requirement unconstitutional. *See Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1985). As the Ninth Circuit explained, the deposit requirement continues to form part of a broader exchange for a statutory benefit. *Id.* at 814. Congress's statement that deposit is no longer a "condition[] of copyright protection," 17 U.S.C. § 407(a), merely establishes that a copyright cannot be forfeited by failure to deposit the work and does not alter the nature of the bargain, *Ladd*, 762 F.2d at 814 (holding the statutory language reflects a change in "the method by which the deposit requirement is enforced," and "a complete reading of section 407 reveals that deposit is indeed still required of one obtaining a copyright"); *see also* S. Rep. No. 100-352, at 45 (1988) ("[A]lthough deposit is not a condition of copyright protection, it is[] . . . an element of the 'quid pro quo' paid by authors and copyright owners for the benefits

they enjoy as copyright proprietors."), *reprinted in* 1988 U.S.C.C.A.N. 3706, 3742.

**2.** Similarly, Congress did not fundamentally alter the bargain upheld in *Wheaton* when it ensured that authors are not deprived of copyright protection merely because they failed to observe certain formalities. Congress began that process in 1976 by relaxing some of the rules under which copyright protection would be lost because of improprieties or delay in the notice of copyright. *See* Pub. L. No. 94-553, 90 Stat. at 2576-78; *see also* H.R. Rep. No. 94-1476, at 143 ("One of the strongest arguments for revision of the present statute has been the need to avoid the arbitrary and unjust forfeitures now resulting from unintentional or relatively unimportant omissions or errors in the copyright notice."). Congress was concerned that "the disadvantages of the notice requirement outweigh[ed] its values and that it should therefore be eliminated or substantially liberalized." H.R. Rep. No. 94-1476, at 143. In 1988, Congress further amended the Copyright Act in light of the international obligations of the Berne Convention, which were designed to make it easier for copyright to attach to creative works and more difficult for copyright owners to lose protection based on

32

technicalities. In particular, Congress changed the law so that
publication with notice of copyright is not required to secure copyright
protection. Accordingly, statutory copyright protection is secured
automatically when a work is created, and is not lost even if the work is
published with no copyright notice. H.R. Rep. No. 100-609, at 45 ("The
proposed legislation abolishes mandatory notice of copyright for works
first published after the law comes into effect[] . . . ."). Congress made a
conforming change to Section 407 so that the obligation to deposit
copies runs with the acquisition of copyright protection, rather than
with publication with notice of copyright. *Id.* at 44.

Once again, the bargain upheld in *Wheaton* remained the same.
As the House Report explained, it "remains true that only those works
published in the United States in which copyright is claimed are subject
to mandatory deposit." H.R. Rep. No. 100-609, at 44. The amendments
simply made it less likely that authors would lose the opportunity to
benefit from copyright protection inadvertently by failing to include a
notice of copyright when they published their works. This ameliorative
change did not transform a lawful bargain into unconstitutional
coercion.

Plaintiff's contrary argument is premised on the notion that while authors previously made a voluntary choice to obtain copyright protection, under the statute as amended the benefit of copyright protection—and the associated burden of the deposit requirement—is being involuntarily foisted upon them. This argument fails at multiple levels. As an initial matter, it would be relevant only to authors who would prefer to decline the benefits of copyright protection because they come with the burden of the deposit requirement. As noted, plaintiff has not established that there are many authors in this category, which is unsurprising given the substantial benefits of copyright protection.

Most significantly, plaintiff itself is not in this category. To the contrary, plaintiff has voluntarily acquired the rights that trigger the deposit requirement. Plaintiff is not similarly situated to authors who publish their own works and receive copyright protection based on that action alone or entities whose employees prepare "work[s] made for hire" in which copyright protection runs to the employer without any further affirmative action. *See* 17 U.S.C. § 101. Rather, plaintiff has no employees, JA 112, ¶ 23, and thus as an entity does not prepare its own works. Instead, plaintiff secures copyright protection or the exclusive

34

right to publish only by entering into contracts involving either (1) the transfer of the exclusive right to publish an already-existing work or (2) an agreement with another person or entity to produce a supplementary work in which "the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. § 101; *see also* JA 112 (noting that plaintiff has recruited "editors and commentators" to contribute to works and has spent time "tracking down the rightsholder or the rightsholder's heir in order to secure permission to republish the book").

Plaintiff repeatedly suggests that it is subject to the deposit requirement merely because it publishes books. *See, e.g.*, Br. 31, 38. But publishing books in which plaintiff does not own the copyright—such as, for example, works that are already in the public domain or works published under a nonexclusive license—would not cause plaintiff to have any obligation under Section 407, which, as noted, applies only to "the owner of copyright or of the exclusive right of publication in a work published in the United States," 17 U.S.C. § 407. Plaintiff is subject to Section 407 only to the extent that it obtained the exclusive rights to publish pre-existing works or entered into an express agreement to

35

acquire and publish supplementary materials in which plaintiff would own the copyright. Plaintiff's complaint that it "does not own the copyright in much of what it publishes but only licenses it (formally or informally)," Br. 37, thus misses the point: plaintiff would be free to argue that it is not subject to Section 407 on statutory grounds, but it has not advanced that argument, which would in any event provide no basis for striking down the statute as unconstitutional.

In addition, plaintiff affirmatively placed a notice of copyright in its publications, including all of the works at issue in this case. *See* JA 113. And many of the books contain an express reservation of rights: "All rights reserved. The use of any part of this publication reproduced, transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, or stored in a retrieval system, without prior written consent of the publisher, constitutes an infringement of the copyright law." *Id.*

Although notice no longer affects the scope of copyright protection—and in any event could not cause copyright protection to attach to the portions of the works that were already in the public domain—the district court properly recognized that the publication of a

36

work with notice of copyright demonstrates that plaintiff "has taken voluntary action to receive the benefits afforded under federal copyright law." JA 187 (quoting Dkt. No. 17-1, at 21). In particular, by providing this notice, plaintiff voluntarily avails itself of significant benefits of copyright protection by discouraging others from copying its works without permission. *See Gaiman v. McFarlane*, 360 F.3d 644, 653 (7th Cir. 2004) (explaining that the "function of copyright notice is to warn off copiers"). Thus, while the notice of copyright does not itself trigger the operation of Section 407, the inclusion of that notice in the published works is difficult to square with plaintiff's assertion that it may not own the relevant copyrights and with its suggestion that it has no interest in the benefits of copyright protection.

For all these reasons, at least so far as plaintiff is concerned, the automatic attachment of copyright protection to those who compose and publish their own works has had no material effect on the application of the statute. Plaintiff's case is thus on all fours with *Wheaton* in this respect. *See also Ladd*, 762 F.2d at 813-14.

But in any event, there is no constitutional problem even insofar as the statute might hypothetically be applied to an entity that did not

37

take affirmative action to avail itself of copyright protection. Entities that wish to decline the bargain discussed in *Wheaton* are at liberty to do so. An author or publisher who makes clear that a work is published without the benefit of copyright is not subject to the deposit requirement, nor is a copyright holder who responds to a demand letter by indicating that it intends to forgo copyright protection. Plaintiff itself has been offered, on several occasions, the opportunity to forswear copyright protection and thus escape the deposit requirement, and has declined to do so. *See* JA 161.

Contrary to plaintiff's suggestion, the reason the Section 407 deposit requirement seems so universal is not because copyright owners cannot escape it but rather because the bargain is so obviously beneficial to the vast majority of copyright owners. For example, the Association of American Publishers protests in its amicus brief that its members should not be required "to relinquish their copyright interests should they wish to avoid mandatory deposit," which would "be completely anathema to their business models" because "their works could then be freely copied and disseminated by anyone in the world." Association of American Publishers Br. 14-15. That policy argument,

38

which could just as easily have been leveled against the copyright laws in place at the time of *Wheaton*, undermines any claim that the statutory scheme now operates to impose the bargain of copyright protection in exchange for the mandatory deposit of copyrighted works on those who would prefer to avoid the burden by publishing without copyright protection. And the Association notably does not argue that the deposit requirement threatens its members' business model or, indeed, has had any effect on which works are published.

There is no constitutional right to retain the benefits of copyright protection without being subject to the attendant condition to deposit two copies of the work with the Copyright Office. But even as to the rare publisher that wishes to forgo copyright protection, plaintiff is wrong insofar as it suggests that because copyright protection is automatic, a publisher has no real choice but to accept it and thus is required, as a practical matter, to comply with the deposit requirement.

It is "well settled that rights gained under the Copyright Act may be abandoned" by means of "some overt act indicating an intention to abandon that right." *Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1114 (9th Cir. 1998); *see also* 4 Melville B. Nimmer & David Nimmer,

*Nimmer on Copyright* § 13.06 (2019) (analyzing cases discussing

abandonment through overt acts manifesting "an intent by the

copyright proprietor to surrender rights in his work"). A work may be

published with notice that the author does not seek copyright protection

or a copyright may be abandoned after publication. *See National Comics*

*Publ'n v. Fawcett Publ'ns, Inc.*, 191 F.2d 594, 597-98 (2d Cir. 1951)

(Hand, J.) ("[W]e do not doubt that the author or proprietor of any work

made the subject of copyright by the Copyright Law may abandon his

literary property in the work before he has published it, or his copyright

in it after he has done so; but he must abandon it by some overt act

which manifests his purpose to surrender his rights in the work, and to

allow the public to copy it." (footnote and quotation marks omitted)).

Plaintiff protests that those pursuing the latter course may incur

a fee associated with recordation of a notice of abandonment with the

Copyright Office, and that such a recorded notice may not be effective.

*See* Br. 37; *see also* Frye & Rosen Br. 31-32; Nikasen Center Br. 16. But

recordation of a notice with the Copyright Office is by no means

required; as noted, any overt act is sufficient to abandon copyright

protection. Nor does the Copyright Office disclaim the effectiveness of

40

abandonment notices specifically; it has a general rule that it does not determine the validity of any documents filed by the public with the Office for purposes of enforcement litigation, as that is generally for a court to decide. 37 C.F.R. § 201.4(g).

In any event, the relevant question here is not whether an abandonment of copyright would be effective for all purposes, such as in future hypothetical infringement litigation. The relevant question is whether abandonment of copyright is effective to avoid the deposit requirement in Section 407. If plaintiff were to take an overt act to renounce its copyright, the Copyright Office would no longer treat it as the owner of a copyright for purposes of Section 407, and the deposit requirement (and with it any potential constitutional concerns) would disappear. That is a reasonable interpretation of the statute and at a minimum it should be accepted as a matter of constitutional avoidance if an alternative reading were thought to create a constitutional concern.

## II.   The Deposit Requirement In Section 407 Is Not A Taking.

The constitutionality of the deposit requirement under the Takings Clause follows directly from the Supreme Court's longstanding

recognition that Congress does not effect a taking when it conditions the provision of a government benefit on the furnishing of certain private property as long as the condition is rationally related to a legitimate government interest. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007-08 (1984); *see also Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) (reaffirming *Monsanto*). As outlined above, the deposit requirement in Section 407 is constitutional under the framework outlined in *Monsanto*.

Plaintiff's primary argument is that this case is governed not by *Monsanto* but by *Horne v. Department of Agriculture*, 576 U.S. 350 (2015). The district court correctly rejected this argument, finding that *Monsanto*, not *Horne*, provides the appropriate framework under which to consider this constitutional challenge. *See* JA 187.

In *Horne*, the Supreme Court considered a program in which raisin growers were required to submit a percentage of their annual crop to the federal government, which would sell, allocate, or otherwise dispose of the raisins in order to maintain an orderly market. *See* 576 U.S. at 354-55. The court of appeals in that case had held that the raisin growers submitted a percentage of their crop to the government

42

"in exchange for a [g]overnment benefit (an orderly raisin market)." *Id.*
at 357. The Supreme Court reversed, rejecting "the idea that *Monsanto*
may be extended by regarding basic and familiar uses of property as a
'[g]overnment benefit.'" *Id.* at 366. "Selling produce in interstate
commerce, although certainly subject to reasonable government
regulation, is . . . not a special governmental benefit . . . ." *Id.*; *see also*
*Nollan v. California Coastal Comm'n*, 483 U.S. 825, 834 n.2 (1987)
(explaining that *Monsanto* was not applicable because the "right to
build on one's own property" was not a "governmental benefit").

 This case bears no resemblance to *Horne*. The benefits associated
with copyright protection are not analogous to the right to sell raisins
on the open market. While the owner of raisins would, at common law,
have had a right to sell those raisins, the Supreme Court made clear in
*Wheaton* that the rights associated with copyright protection were not
available at common law, and were instead special rights created by
statute. 33 U.S. at 663-64; *see also Eldred v. Ashcroft*, 537 U.S. 186, 212
(2003) ("The constitutional command, we have recognized, is that
Congress, *to the extent it enacts copyright laws at all*, create a system
that promotes the Progress of Science." (emphasis added) (alteration

43

and quotation marks omitted)). The Court also made clear that Congress was entitled to condition the availability of those statutory rights on the deposit of the work. *Wheaton*, 33 U.S. at 663-64.

Plaintiff's response largely reduces to the argument discussed above: that it has not voluntarily availed itself of copyright protection but that the deposit requirement should instead be treated as a condition of publishing a copyrightable work. It is a simple matter to publish a book without being required to deposit a copy, however; all that is needed is to disclaim copyright protection (or, in plaintiff's case, to decline to acquire it in the first instance). The plaintiffs in *Horne* had no similar option. Because a publisher that wished to sacrifice the benefits of copyright protection in order to avoid the deposit requirement could freely do so—and plaintiff itself could freely do so even now—there is no taking. In short, plaintiff is free "to publish books without paying the government for the privilege," Br. 38; it just cannot insist on retaining its right to copyright protection without making the required deposit.

Plaintiff is mistaken to suggest that copyright protection is insufficiently valuable to constitute a government benefit within the

44

meaning of *Monsanto*. Copyright protection provides the owner with the right to preclude others from reproducing, distributing, publicly performing, or displaying its works, or from preparing derivative works, without authorization. 17 U.S.C. § 106; *see also* Association of American Publishers Br. 14-15. These rights arise entirely from the federal copyright statute, as the Supreme Court observed in 1834. *Wheaton*, 33 U.S. at 657, 663-64. They cannot plausibly be compared to the right to sell raisins on the open market.

Plaintiff does not advance its argument by suggesting that only copyright registration, and not copyright protection for unregistered works, affords any benefit sufficient to bring this case within the rubric of *Monsanto* rather than *Horne*. *See* Br. 9, 34; *see also* Association of American Publishers Br. 12 (stating that copyright notices are "of [n]o [u]se" without registration and provide "no benefit at all"). A copyright owner enjoys the exclusive rights described above whether or not the copyright has been registered. If the copyright is infringed, the copyright owner can register the copyright at that time and then institute an action for infringement; the failure to obtain registration earlier merely limits the available remedies by precluding in certain

45

instances an award of statutory damages or attorney's fees. *See* 17
U.S.C. § 412.

Accordingly, much of the benefit of copyright protection is the
deterrent effect that comes with the knowledge that a statutory
framework exists to allow the copyright owner to enforce its rights.
Even if potential infringers are aware that the work was unregistered,
they cannot infringe with impunity because the copyright owner could
register the work and then institute litigation (even though the
available remedies may be somewhat limited).

As noted above, plaintiff takes advantage of the benefits of
copyright protection, including the significant deterrent effect, by
publishing most, if not all, of its works with notice of copyright.
Providing copyright notice—even absent registration—serves several
purposes, most notably "inform[ing] the public as to whether a
particular work is copyrighted" and thus giving rise to the deterrent
effects discussed above. H.R. Rep. 94-1476, at 143. Plaintiff's statement
that it did not "intend[] to sue anyone over [its] copyright," JA 149, ¶ 6,
merely illustrates that plaintiff, like many copyright owners, expected
to rely on the deterrent benefit of those notices. Even crediting

46

plaintiff's statement that it "include[s] copyright statements for the simple reason that they are true," *id.*, the relevant point is that conveying accurate information about the existence of copyright protection carries significant practical benefits.[5]

## III. The Deposit Requirement Does Not Violate The First Amendment.

Plaintiff's First Amendment claim is likewise largely premised on the mistaken view that the deposit requirement imposes a cost on the publication of expressive works, rather than a cost associated with the benefits of copyright protection. For the reasons discussed above, that is mistaken. Because authors remain free to publish works without any deposit requirement, so long as they forgo the statutory benefits

---

[5] Additional statutory benefits are available to copyright owners even absent registration, including the "notice-and-takedown" provisions in 17 U.S.C. § 512, which allow copyright owners to demand removal of infringing material from online services, and the anti-circumvention protection measures in 17 U.S.C. § 1201, as well as criminal copyright protection, *see* 17 U.S.C. § 506. Copyright owners of unregistered works may also initiate proceedings before the Copyright Claims Board and receive statutory damages if they belatedly register. *See id.* § 1505(a), (b) (stating that cases can be initiated as long as registration "has not been refused," and copyright owners can seek full remedies as long as they register while case is pending).

associated with copyright protection, the deposit requirement does not impermissibly burden First Amendment activity.

Unlike the cases on which plaintiff relies, Section 407 does not regulate speech. It does not in any way limit the sorts of books that can be published, or even the time, place, or manner of publishing them. *Cf. Reed v. Town of Gilbert*, 576 U.S. 155 (2015) (content-based restrictions on posting of signs); *McCullen v. Coakley*, 573 U.S. 464 (2014) (prohibition on standing near entrance to place where abortions are performed, thus limiting ability to talk to women near entrances to such facilities); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803 (2000) (requirement that cable television programmers block or scramble certain programming); *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 185 (1997) (requirement that cable television systems devote "some of their channels to local broadcast television stations"); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334 (1995) (prohibition on distribution of anonymous campaign literature); *Talley v. California*, 362 U.S. 60 (1960) (prohibition on distribution of handbills without name and address of those who created and distributed them); *Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) (prohibition on

48

approaching individual near reproductive health clinic to engage in various speech activities); *Time Warner Entm't Co., L.P. v. FCC*, 240 F.3d 1126 (D.C. Cir. 2001) (limitations on number of subscribers a cable operator can reach and the number of cable channels occupied by a programmer in which the cable operator has an interest); *Mahoney v. Babbitt*, 105 F.3d 1452 (D.C. Cir. 1997) (denial of permit to demonstrate).

Plaintiff has provided no evidence that Section 407 even indirectly burdens speech. As discussed above, an author or publisher need not refrain from publishing to avoid the obligations of Section 407, as even those who deem the requirement too onerous may either expressly disclaim copyright protection when the work is published or abandon copyright protection at any point, including at the time of the demand. It is therefore unsurprising that the record does not reflect any example of any putative publisher being discouraged from publishing a work, or changing the work's content, because of the deposit requirement. And as noted, plaintiff itself plainly does not fall in that category.

Plaintiff's argument has another novel feature: plaintiff does not urge that the government is suppressing disfavored speech but rather

contends that because the government only wants to "acquire certain desirable books," Br. 46, plaintiff "was threatened with fines because the government *likes* its books," Br. 49. According to plaintiff, "[a] law that punishes speech for being good is not constitutionally distinct from a law that punishes speech for being bad," Br. 50.

Plaintiff cites no case that adopted this unlikely proposition and indeed identifies no case in which the government has chosen to take the self-defeating measure of punishing favored speech. *See* Br. 50 (citing cases that involved burdens on disfavored speech). And neither is this such a case; as noted, the deposit requirement has neither the purpose nor effect of suppressing speech but rather operates to preserve and help to disseminate creative works. Thus, both because the government is not suppressing speech and because the government is not targeting disfavored content, plaintiff's allusions to content discrimination miss the mark. As the Supreme Court has explained, classifications based on content are subject to heightened scrutiny to ensure "that the law does not seek to suppress a disfavored message." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). Section 407 plainly does not do so.

50

In any event, as plaintiff concedes, Section 407 is "facially neutral." Br. 46. Plaintiff nonetheless urges that it impermissibly discriminates on the basis of content because its purpose is only to obtain "desirable books." *Id.* Plaintiff presumably does not mean to impugn the motives of the First Congress that originally enacted the deposit requirement. *See Town of Greece v. Galloway*, 572 U.S. 565, 602 (2014) (Alito, J., concurring) (observing that the Supreme Court "has often noted that actions taken by the First Congress are presumptively consistent with the Bill of Rights"). But as discussed above, the only changes to the statute have been the loosening of various rules to make it easier for authors and publishers to maintain copyrights. There is no hint of content discrimination in those actions. And "the Supreme Court, albeit in passing, has recognized without questioning its constitutionality that the deposit requirement's purpose is to enforce contributions of desirable books to the Library of Congress." *Ladd*, 762 F.2d at 812 (citing *Washingtonian Publ'g Co.*, 306 U.S. at 41).

Plaintiff fares no better in urging that, even if the statute were not itself content-based, the government would violate the Constitution by enforcing it only as to books the government actually wants. As an

51

initial matter, "'[s]elective enforcement' is not, of course, a First Amendment cause of action" but rather "lies in 'a murky corner of equal protection law.'" *Sanjour v. EPA*, 56 F.3d 85, 92 n.9 (D.C. Cir. 1995) (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). Plaintiff has brought no equal protection claim here, and such a claim would not support the relief requested in the complaint: invalidation of a facially neutral statute.

Plaintiff in any event cannot establish that the Constitution requires the Copyright Office to enforce Section 407 against everyone who has not voluntarily complied, not enforce it against anyone, or enforce it at random. Although "a plaintiff may prevail on a 'selective enforcement' claim by showing that the government's motive in selectively prosecuting him was to prevent or paralyze the exercise of his constitutional rights," *Sanjour*, 56 F.3d at 92 n.9 (cleaned up), plaintiff could not plausibly make such a showing here, where the government seeks neither to burden speech nor to discriminate against disfavored expression.

In addition, the Supreme Court has made clear that libraries may treat speech they wish to include in their collections differently from

52

other speech: "To fulfill their traditional missions, public libraries must have broad discretion to decide what material to provide to their patrons." *United States v. American Library Ass'n*, 539 U.S. 194, 204 (2003) (plurality opinion). In *American Library Ass'n*, the Supreme Court considered a challenge to a statute that required libraries, as a condition of certain federal assistance to provide Internet access, to use software that blocked their patrons from accessing certain content. *Id.* at 199. The Court upheld the statute, concluding that use of the blocking software would not violate the First Amendment rights of the library's patrons and noting that public libraries have "broad discretion to make content-based judgments in deciding what private speech to make available to the public." *Id.* at 204; *see also id.* at 226 (Stevens, J., dissenting) (agreeing with the plurality "that libraries have discretion when making decisions regarding what to include in, and exclude from, their collections"); *id.* at 236 (Souter, J., dissenting) (recognizing that public libraries may be "selective in what they acquire to place in their stacks").

Plaintiff's contention that the Section 407 deposit requirement should be struck down because it burdens more speech than necessary

to further the government's legitimate interests, in addition to being in significant tension with plaintiff's argument that selective enforcement is problematic, fails on its own terms. Any balance of the benefits and burdens of Section 407 would need to begin with an assessment of the degree to which the statute burdens protected speech. But as explained above, the deposit provision neither bans nor prohibits any speech, nor has plaintiff shown that it has indirectly chilled any protected speech. Plaintiff certainly cannot meet the Supreme Court's standard that "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973).

In addition, the Copyright Office has sought to exercise its statutory authority to lessen the obligation where possible. The statutory requirement involves a one-time deposit of two copies of a work, and the Copyright Office only issues demands for deposit for a fraction of works potentially eligible for deposit under Section 407. *See* JA 117-18, ¶¶ 51-57. For many works, the Copyright Office has, by regulation, deemed that either an electronic copy or only a single copy will suffice to satisfy Section 407. *See* 37 C.F.R. § 202.19(c)(5); *id.*

54

§ 202.19(d)(2)(ix). Moreover, a publisher that believes it would be excessively burdensome to comply with a demand can request a grant of special relief from the Copyright Office, and the Copyright Office often "raise[s] the option of special relief directly with copyright owners who express concerns regarding potential burdens." JA 119, ¶ 59. Although such requests are relatively infrequent—presumably because the burdens of the deposit requirement are minimal for most publishers— they are routinely granted. *See* JA 119 (noting that in the two most recent calendar years preceding the filing of the joint stipulation of facts, the Copyright Office had "granted every special relief request it received").

Finally, plaintiff provides no support for its view that the deposit requirement threatens anonymity. There is no requirement that a deposit be associated with a real name and the Copyright Office explicitly permits registration solely under a pseudonym. *See* United States Copyright Office, *Compendium of U.S. Copyright Office Practices* § 615.1(B), https://www.copyright.gov/comp3/chap600/ch600-examination-practices.pdf ("If the author's name does not appear on the copies or phonorecords of the work, the applicant is not required to

55

provide the author's name in the application. Instead, the applicant may leave the Name of the Author field/space blank and check the box marked "Anonymous."").

### IV.    Plaintiff Identifies No Error In The District Court's Analysis Of Mootness.

Plaintiff misunderstands the district court's analysis when it suggests that the district court held that its "original claims [were] moot in light of the government's settlement offer." Br. 19 (formatting omitted). The district court properly concluded that "[t]he dispute between the parties has been narrowed, but not rendered moot." JA 182 (bolding omitted). As the court explained, although the complaint alleged that plaintiff was compelled to provide physical copies of the works at issue, it became clear during the course of litigation that electronic copies would suffice. But "because plaintiff has rejected the Copyright[] Office's offer to accept electronic copies of its works, . . . the dispute is live." JA 184.

Plaintiff is mistaken to suggest that the district court should have resolved this case as if plaintiff were compelled to provide physical copies, rather than electronic ones. The parties' joint stipulations of fact note that publishers are entitled to request special relief from the

56

deposit requirement, such as by requesting deposits in electronic

format, and that in the two most recent calendar years (2017 and 2018)

the Copyright Office had granted every such request it had received. JA

118-19, ¶¶ 58-59. And the government has made clear that plaintiff in

particular can provide electronic, rather than physical copies, of the

works at issue here. The district court thus properly analyzed plaintiff's

claims based on the undisputed facts, rather than based on the

incomplete version of the facts set forth in the complaint, which had

suggested that physical copies would necessarily be required.

Plaintiff is correct that the government has not changed its

policies in response to this case. But that simply renders plaintiff's

arguments about voluntary cessation beside the point. The relevant

point is that plaintiff was at no time required to provide physical copies

because it could make a request to provide electronic copies instead, and

such requests are routinely granted. Plaintiff filed this suit rather than

requesting special relief, but there is no indication that a request from

plaintiff would have been denied if submitted before this litigation

began (unlike all of the requests referred to in the stipulated facts). And

before the district court, the Library expressly clarified that plaintiff

may satisfy its Section 407 obligations (for both the works at issue in this appeal and for all future works) by providing electronic copies of the published works. *See* Dkt. No. 26, at 2.

Thus, it was not error for the district court to consider the fact that plaintiff's burden would be considerably lessened by the opportunity to satisfy its obligation under Section 407 by submitting copies of the works in electronic form. *See* JA 119, ¶ 61. And the parties stipulated that plaintiff already "has copies in electronic format of all or nearly all of the 240 books at issue in this case." JA 112, ¶ 22. Given that both of plaintiff's constitutional theories depend in part on the extent of the burden that it asserts is associated with compliance under Section 407, the district court rightly considered that if plaintiff were to choose to submit electronic copies of the relevant works, that would significantly diminish the burden associated with the obligations of Section 407 as applied to plaintiff.

# CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

SUZANNE V. WILSON
   *General Counsel*

MARK T. GRAY
JORDANA RUBEL
   *Office of General Counsel*
   *U.S. Copyright Office*

BRIAN M. BOYNTON
   *Principal Deputy Assistant*
    *Attorney General*

MATTHEW M. GRAVES
   *United States Attorney*

DANIEL TENNY
   */s/ Laura E. Myron*
LAURA E. MYRON
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7228*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-4819*
   *Laura.e.myron@usdoj.gov*

May 2022

59

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 11,674 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Laura E. Myron*
Laura E. Myron

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2022, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system.

*/s/ Laura E. Myron*
Laura E. Myron

**ADDENDUM**

# TABLE OF CONTENTS

17 U.S.C. § 407..............................................................................A1

**17 U.S.C. § 407**

**§ 407. Deposit of copies or phonorecords for Library of Congress**

(a) Except as provided by subsection (c), and subject to the provisions of subsection (e), the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication—

(1) two complete copies of the best edition; or

(2) if the work is a sound recording, two complete phonorecords of the best edition, together with any printed or other visually perceptible material published with such phonorecords.

Neither the deposit requirements of this subsection nor the acquisition provisions of subsection (e) are conditions of copyright protection.

(b) The required copies or phonorecords shall be deposited in the Copyright Office for the use or disposition of the Library of Congress. The Register of Copyrights shall, when requested by the depositor and upon payment of the fee prescribed by section 708, issue a receipt for the deposit.

(c) The Register of Copyrights may by regulation exempt any categories of material from the deposit requirements of this section, or require deposit of only one copy or phonorecord with respect to any categories. Such regulations shall provide either for complete exemption from the deposit requirements of this section, or for alternative forms of deposit aimed at providing a satisfactory archival record of a work without imposing practical or financial hardships on the depositor, where the individual author is the owner of copyright in a pictorial, graphic, or sculptural work and (i) less than five copies of the work have been published, or (ii) the work has been published in a limited edition consisting of numbered copies, the monetary value of which would make the mandatory deposit of two copies of the best edition of the work burdensome, unfair, or unreasonable.

(d) At any time after publication of a work as provided by subsection (a), the Register of Copyrights may make written demand for the required deposit on any of the persons obligated to make the deposit under subsection (a). Unless deposit is made within three months after the

A1

demand is received, the person or persons on whom the demand was made are liable—

> (1) to a fine of not more than $250 for each work; and

> (2) to pay into a specially designated fund in the Library of Congress the total retail price of the copies or phonorecords demanded, or, if no retail price has been fixed, the reasonable cost to the Library of Congress of acquiring them; and

> (3) to pay a fine of $2,500, in addition to any fine or liability imposed under clauses (1) and (2), if such person willfully or repeatedly fails or refuses to comply with such a demand.

(e) With respect to transmission programs that have been fixed and transmitted to the public in the United States but have not been published, the Register of Copyrights shall, after consulting with the Librarian of Congress and other interested organizations and officials, establish regulations governing the acquisition, through deposit or otherwise, of copies or phonorecords of such programs for the collections of the Library of Congress.

> (1) The Librarian of Congress shall be permitted, under the standards and conditions set forth in such regulations, to make a fixation of a transmission program directly from a transmission to the public, and to reproduce one copy or phonorecord from such fixation for archival purposes.

> (2) Such regulations shall also provide standards and procedures by which the Register of Copyrights may make written demand, upon the owner of the right of transmission in the United States, for the deposit of a copy or phonorecord of a specific transmission program. Such deposit may, at the option of the owner of the right of transmission in the United States, be accomplished by gift, by loan for purposes of reproduction, or by sale at a price not to exceed the cost of reproducing and supplying the copy or phonorecord. The regulations established under this clause shall provide reasonable periods of not less than three months for compliance with a demand, and shall allow for extensions of such periods and adjustments in the scope of the demand or the methods for fulfilling it, as reasonably warranted by the circumstances. Willful failure or refusal to comply with the conditions prescribed by such regulations

A2

shall subject the owner of the right of transmission in the United States to liability for an amount, not to exceed the cost of reproducing and supplying the copy or phonorecord in question, to be paid into a specially designated fund in the Library of Congress.

(3) Nothing in this subsection shall be construed to require the making or retention, for purposes of deposit, of any copy or phonorecord of an unpublished transmission program, the transmission of which occurs before the receipt of a specific written demand as provided by clause (2).

(4) No activity undertaken in compliance with regulations prescribed under clauses (1) or (2) of this subsection shall result in liability if intended solely to assist in the acquisition of copies or phonorecords under this subsection..

A3