**[ORAL ARGUMENT HELD OCTOBER 13, 2022]**
**[DECISION ISSUED AUGUST 29, 2023]**
**No. 21-5203**

───────────────────────────────────────

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

───────────────────

VALANCOURT BOOKS, LLC,

Plaintiff-Appellant,

v.

MERRICK B. GARLAND, *Attorney General*; SHIRA PERLMUTTER, *in her official capacity as the Register of Copyrights of the U.S. Copyright Office*,

Defendants-Appellees.

───────────────────

On Appeal from the United States District Court
for the District of Columbia

───────────────────

**PETITION FOR REHEARING OR REHEARING EN BANC**
───────────────────

*Of Counsel:*

SUZANNE V. WILSON
*General Counsel and Associate Register of Copyrights*

EMILY CHAPUIS
*Deputy General Counsel*

BRANDY KARL
*Assistant General Counsel*

DAVID WELKOWITZ
*Attorney-Advisor Office of General Counsel U.S. Copyright Office*

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MATTHEW M. GRAVES
*United States Attorney*

DANIEL TENNY
LAURA E. MYRON
*Attorneys, Appellate Staff Civil Division, Room 7228 U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, DC 20530 (202) 514-4819*

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND RULE 35(b) STATEMENT ................................ 1

STATEMENT ................................................................................ 3

I.     Statutory Framework ........................................................ 3

II.    Facts and Prior Proceedings ............................................ 7

REASONS FOR GRANTING REHEARING ............................................ 12

I.     The Panel's Constitutional Holding Overlooked An
       Argument Undermining Its Fundamental Premise ..................... 12

II.    En Banc Review Is Warranted ........................................ 19

CONCLUSION ................................................................................ 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM

# TABLE OF AUTHORITIES

**Cases:**                                                       **Page(s)**

*Georgia v. Public.Resource.Org., Inc.*,
   140 S. Ct. 1498 (2020) ........................................................... 2

*Tyler v. Hennepin County*,
   598 U.S. 631 (2023) ............................................................ 10

*Washingtonian Publ'g Co. v. Pearson*,
   306 U.S. 30 (1939) ............................................................... 4

*Wheaton v. Peters*,
   33 U.S. (8 Pet.) 591 (1834) .................................... 1, 3, 12, 13

**Statutes:**

Act of Aug. 10, 1846, § 10, 9 Stat. 102, 106 ........................................ 3, 12

Act of Mar. 3, 1865, § 3, 13 Stat. 540, 540 ............................................ 3

Act of Feb. 18, 1867, § 1, 14 Stat. 395, 395 ............................................ 4

Act of Mar. 3, 1891, § 3, 26 Stat. 1106, 1107 ..................................... 3, 12

Berne Convention Implementation Act,
   102 Stat. 2853 (1988) ........................................................ 5

Copyright Act of 1790, § 4, 1 Stat. 124, 125 ..................................... 3, 12

Copyright Act of 1909, 35 Stat. 1075:
   § 9, 35 Stat. at 1077 ........................................................ 12
   § 10, 35 Stat. at 1078 ...................................................... 12
   § 12, 35 Stat. at 1078 ..................................................... 3, 4
   § 13, 35 Stat. at 1078 ........................................................ 4

Copyright Act of 1976,
   Pub. L. No. 94-553, 90 Stat. 2541:
     § 407(a), 90 Stat. 2541, 2579 ......................................... 5
     § 407(a)(2), 90 Stat. 2541, 2579 ...................................... 5

17 U.S.C. § 101 .................................................................... 7, 13

17 U.S.C. § 102(a) ................................................................ 17

17 U.S.C. § 201(a) ................................................................ 6

17 U.S.C. § 201(b) ............................................................ 7, 13

17 U.S.C. § 204 ................................................................ 7, 13

17 U.S.C. § 407 ................................................................ 1, 15

17 U.S.C. § 407(a)-(b) ........................................................... 6

17 U.S.C. § 407(d) ................................................................ 6

17 U.S.C. § 408 ................................................................... 6

## Legislative Material:

H.R. Rep. No. 100-609 (1988) .................................................. 6

## INTRODUCTION AND RULE 35(b) STATEMENT

This case concerns a requirement that owners of the copyright, or of the exclusive right of publication, in published works deposit two copies of the work with the Copyright Office for the Library of Congress. 17 U.S.C. § 407. The requirement to deposit copies in exchange for copyright protection originated with the First Congress and was signed into law by President Washington. Though amended since 1790, a deposit requirement has formed part of American law for over two hundred years. As part of that extensive history, the Supreme Court long ago recognized its validity, observing that Congress had, through the copyright laws, vested rights in copyright owners that they did not possess at common law and concluding that "when the legislature are about to vest an exclusive right in an author . . . they have the power to prescribe the conditions on which such right shall be enjoyed." *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834).

This Court held that amendments in the provision enacted since 1976 transformed the deposit requirement for physical books, as applied to plaintiff, from a voluntary exchange for a government benefit into an uncompensated taking in violation of the Fifth Amendment. Op. 13.

That holding was premised on the assumption that copyright protection is "both instant and automatic" and that it "vests as soon as a work is captured in a tangible form." Op. 15 (quoting *Georgia v. Public.Resource.Org., Inc.*, 140 S. Ct. 1498, 1513 (2020)). As the government pointed out in its brief, while that assumption is accurate in some circumstances, such as for natural persons who create works, plaintiff here is an entity that took affirmative steps to obtain copyright protection or an exclusive right of publication. *See* Gov't Br. 34-36. The panel entirely failed to address this argument.

The panel's decision thus issued a ruling on the constitutionality of an Act of Congress without addressing an argument that fundamentally undermines the premise of its decision. This argument would apply in other cases involving publishers who intentionally obtain copyright protection through a voluntary contractual arrangement. The panel's opinion improperly casts a cloud over the application of an Act of Congress in this circumstance, presenting an issue of exceptional importance that warrants en banc review (or, at a minimum, reconsideration by the panel to consider the government's argument).

# STATEMENT

## I.    Statutory Framework

Since the first Copyright Act of 1790, except for a six-year period in the nineteenth century, Congress has included a requirement, in connection with copyright protection, that an author provide copies of most newly published works. *See, e.g.*, Copyright Act of 1790, § 4, 1 Stat. 124, 125; Act of Aug. 10, 1846, § 10, 9 Stat. 102, 106; Act of Mar. 3, 1891, § 3, 26 Stat. 1106, 1107; Copyright Act of 1909, § 12, 35 Stat. 1075, 1078. In 1834, the Supreme Court upheld the deposit requirement included in the Copyright Act of 1790 as constitutional. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663-64 (1834) ("No one can deny that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed; and that no one can avail himself of such right who does not substantially comply with the requisitions of the law.").

In 1865, Congress empowered the Librarian of Congress to demand copies of works not deposited within one month of publication; failure to deposit would result in forfeiture of copyright. Act of Mar. 3, 1865, § 3, 13 Stat. 540, 540. In 1867, a $25 fine was added as a penalty

for noncompliance. *See* Act of Feb. 18, 1867, § 1, 14 Stat. 395, 395. The Copyright Act of 1909 modified the deposit requirement slightly. Although deposit was not a prerequisite for copyright to come into existence, *see Washingtonian Publ'g Co. v. Pearson*, 306 U.S. 30, 37-38 (1939), the statute mandated that "after copyright has been secured by publication of the work with . . . notice . . ., there shall be promptly deposited in the copyright office" two copies of the work. Copyright Act of 1909, § 12, 35 Stat. at 1078. The revised statute also granted the Register of Copyrights the authority to formally demand a deposit; failure to comply within three months could result in the forfeiture of copyright and imposition of a fine. *See id.* § 13, 35 Stat. at 1078.

When Congress enacted the Copyright Act of 1976, it further liberalized the law, including the deposit requirement, to benefit authors. Congress retained the fine for failure to comply with the deposit requirement, increasing it to $250 per work. But Congress eliminated the forfeiture penalty, so the failure to deposit no longer resulted in the loss of copyright protection. In particular, the 1976 version of Section 407(a) of Title 17, like the present version, specified that the deposit requirement was not a "condition[] of copyright

protection." Copyright Act of 1976, Pub. L. No. 94-553, § 407(a)(2), 90

Stat. 2541, 2579.

In 1988, Congress amended Section 407 again. The 1988

amendments to the Copyright Act more generally formed part of

Congress's efforts to comply with international obligations under the

Berne Convention for the Protection of Literary and Artistic Works. *See*

Berne Convention Implementation Act, 102 Stat. 2853 (1988); JA 115,

¶ 42. Among those changes was the removal of a requirement that a

work be published with notice of copyright before copyright protection

would attach, to avoid the possibility that authors would inadvertently

lose copyright protection because of the failure to abide by these sorts of

formalities. JA 83. Congress made a corresponding change to Section

407, which had previously applied to "the owner of copyright or of the

exclusive right of publication in a work published with notice of

copyright in the United States." Pub. L. No. 94-553, § 407(a), 90 Stat. at

2579. In 1988, Congress removed the phrase "with notice of copyright."

The relevant House Report explained that "[i]t remains true that only

those works published in the United States in which copyright

[protection] is claimed are subject to mandatory deposit. The only

change is that the law will no longer require affirmative marking of the copies as a condition of maintaining copyright." H.R. Rep. No. 100-609, at 44 (1988).

Section 407 of the Copyright Act currently states that, except as exempted by the Register of Copyrights, "the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication . . . two complete copies of the best edition" of the work with the Copyright Office "for the use or disposition of the Library of Congress." 17 U.S.C. § 407(a)-(b). If a copyright owner or publisher fails to deposit copies of a work after publication (and if suitable copies have not otherwise been delivered to the Office, *cf. id.* § 408, the Copyright Office may make a written demand for the deposit to the publisher or the copyright owner. If a demand has been made, the copyright owner or publisher has three months to comply before it is subject to fines and costs for the Library to purchase the work. *Id.* § 407(d).

The Copyright Act prescribes who owns the copyright in an original work that is fixed in a tangible medium. Copyright protection "vests initially in the author or authors of the work." 17 U.S.C. § 201(a).

6

In the absence of any relevant contractual arrangement, the "author" is the natural person who created the work. But the statute provides that, in the case of a "work made for hire," the "employer or other person for whom the work was prepared is considered the author" and "owns all of the rights comprised in the copyright," unless "the parties have expressly agreed otherwise in a written instrument." *Id.* § 201(b). A work "prepared by an employee within the scope of his or her employment" automatically qualifies as a "work made for hire." *Id.* § 101. Certain works that are "specially ordered or commissioned" can also be considered "work[s] made for hire," but only "if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." *Id.* After copyright protection attaches by operation of statute, the rights can be transferred only by a signed written instrument. *Id.* § 204.

## II.    Facts and Prior Proceedings

**A.** Plaintiff Valancourt Books, LLC, is a book publisher in Richmond, Virginia, which publishes rare and out-of-print fiction. JA 109, ¶ 4. Many of the works plaintiff publishes are older works that are already in the public domain, published with editorial enhancements

7

including scholarly introductions and footnotes. JA 112, ¶ 24. The editorial enhancements are subject to U.S. copyright protection if they contain sufficiently original subject matter. *Id.* Plaintiff included a notice of copyright in its works, and in certain works included the following express reservation of rights: "All rights reserved. The use of any part of this publication reproduced, transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, or stored in a retrieval system, without prior written consent of the publisher, constitutes an infringement of the copyright law." JA 113.

The Copyright Office sent an email to plaintiff requesting deposit of certain published books, JA 122-23, ¶¶ 71-73; JA 126-32 (Exs. A-C), and, after some communication with plaintiff, narrowed its request, JA 123, ¶¶ 77-79; JA 136-43 (Exs. E-G). One week after the narrowed request, plaintiff filed suit in the U.S. District Court for the District of Columbia, alleging that the requirement to deposit copies of new copyrightable works is an unconstitutional taking of private property under the Fifth Amendment and a burden on freedom of speech in violation of the First Amendment.

8

**B.** The district court rejected plaintiff's arguments, granting summary judgment for the government defendants on the ground that the Copyright Act confers a statutory benefit that is conditioned on the receipt of two copies of the work and thus does not run afoul of the Constitution. *See* JA 185. The court explained that "[p]ublishers are not required to make the deposit in order to print books or to sell them; the obligation is a condition of the receipt of the governmental benefit of copyright protection." JA 187.

Noting that plaintiff publishes works with "notice of copyright," the court further concluded that plaintiff "is voluntarily engaging in the exchange of copies of its works for copyright protection" because it has "taken voluntary action to receive the benefits afforded under federal copyright law, and has declined to take action to opt out of receiving such benefits," JA 187 (quoting Dkt. No. 17-1, at 21), and because it "is receiving something beyond mere participation in the market in return," JA 187-88. Thus, "the deposit requirement does not constitute a physical taking without just compensation." JA 188.[1]

---

[1] The district court rejected plaintiff's First Amendment claim on similar grounds; because the panel did not reach that issue, it is not discussed further here. *See* JA 198-99; Op. 3.

**C.** This Court reversed, finding that the Copyright Office's demand for physical copies of the books published by plaintiff constituted an uncompensated taking as applied to plaintiff. The panel expressly noted that its decision did not reach the question of the constitutionality of Section 407 if "enforced through electronic copies," Op. 12, and noted that its holding was "tied to the particular circumstances" of this case "in which the Copyright Office enforced Section 407 by issuing a demand letter indicating no option other than surrendering the property at issue or paying a fine," Op. 27.

The panel concluded that, as applied to plaintiff, the mandatory deposit requirement, by asking for physical copies of the books, "effects a classic taking in which the government directly appropriates private property for its own use." Op. 13 (alteration and quotation marks omitted) (quoting *Tyler v. Hennepin County*, 598 U.S. 631, 639 (2023)). The panel rejected the government's argument that the deposit requirement was a "voluntary exchange for a governmental benefit." Op. 14. In addressing that argument, the panel considered only the possibility that deposit was voluntary because the copyright owner could have taken steps to abandon its copyright. The panel rejected that

argument on the ground that there was "no indication that an option of that sort generally exists," noting that "[i]f there were a simple, seamless, and transparent way to opt out of copyright protection, perhaps mandatory deposit would fall outside the realm of the Takings Clause because any forfeiture of property might arguably be voluntary." Op. 20-21.

But the panel did not address the government's argument (Br. 34-36) that copyright protection might be voluntary in this case because plaintiff—which is a limited liability company—had voluntarily obtained copyright protection through contract. The panel instead resolved the case as if plaintiff had received automatic copyright protection by operation of the statute without the need to engage in any voluntary act other than the authorship and publication of the work. The panel stated, in particular, that "legislative developments [since 1790 have] eroded the quid pro quo nature of mandatory deposit," and reasoned that because copyright automatically applies to a work upon fixation in a tangible medium, deposit is now "unnecessary to gain copyright." Op. 17.

## REASONS FOR GRANTING REHEARING

### I. The Panel's Constitutional Holding Overlooked An Argument Undermining Its Fundamental Premise.

**A.** Since the early Republic, Congress has provided the substantial benefit of copyright protection to authors of creative works, imposing in exchange a requirement to deposit copies of the work. *See, e.g.*, § 4, 1 Stat. at 125; § 10, 9 Stat. at 106; § 3, 26 Stat. at 1107; §§ 9, 10, 35 Stat. at 1077-78. In 1834, the Supreme Court upheld this arrangement. The Supreme Court observed that the right to copyright protection "does not exist at common law" but instead originated "under the acts of congress." *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663 (1834). "No one can deny," the Supreme Court explained, "that when the legislature are about to vest an exclusive right in an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed." *Id.* at 663-64. Accordingly, "no one can avail himself of such right who does not substantially comply with the requisitions of the law." *Id.* at 664. It has thus long been established that, if Congress chooses to make the benefits of copyright protection available, it can condition their availability on the deposit of two copies of the work with the Library of Congress.

12

At the time of *Wheaton*, copyright protection was obtained voluntarily by satisfying certain requirements. Today, although authors of works can obtain copyright protection automatically by operation of the statute, copyright protection can still be voluntarily obtained by others in a number of ways. Ownership of a copyright can be transferred by contract. *See* 17 U.S.C. § 204. Or, if parties enter into an express written contract, they can arrange for copyright to vest in the first instance in an entity or individual other than the author of a creative work, as specified in the Copyright Act. *Id.* §§ 101, 201(b). In either case, an entity that affirmatively arranges to receive copyright ownership or an exclusive right to publish a work has voluntarily obtained the benefits of copyright protection, aware that those benefits come with the burden of the deposit requirement. As in *Wheaton*, enforcement of the deposit requirement under these circumstances is fully consistent with the Constitution, as no entity is entitled to "avail [itself] of [copyright protection] who does not substantially comply with the requisitions of the law." 33 U.S. (8 Pet.) at 664.

Although in some circumstances copyright protection now vests automatically—such as to a natural person who fixes an original work

in a tangible medium—plaintiff here has engaged in various contractual arrangements to obtain copyright protection or the exclusive right of publication. Accordingly, the government argued in its brief that under the circumstances of this case copyright protection was voluntarily obtained and plaintiff's Takings Clause claim should fail for that reason. *See* Gov't Br. 34-36. The panel did not address that argument.

Plaintiff, however, responded in the reply brief, and that response highlights that plaintiff intentionally pursues copyright agreements with external authors. In describing "Valancourt's relationship to automatic copyright," plaintiff explained that Valancourt "exerts efforts to secure licenses to publish copyrightable material;" that it "secure[s] a license" when it "recruits someone else to write materials for a Valancourt book;" and that "when Valancourt wants to republish a book that is still protected by automatic copyright, it has to expend considerable effort to find the current rightsholder and license the work." Reply Br. 19.

Plaintiff pointed out that it needed to obtain these rights in order to publish the relevant materials. Reply Br. 20. But if all plaintiff wished to do was to avoid infringing copyrights held by others, it need

14

not have taken the further step of securing for itself express written agreements that plaintiff would receive the benefits of copyright protection. A nonexclusive license to publish the relevant works would have protected plaintiff from infringement liability but would not have triggered Section 407, as plaintiff would not have availed itself of the rights associated with copyright protection and thus would not have triggered the associated obligations. *See* 17 U.S.C. § 407 (applying only to the "owner of copyright or of the exclusive right of publication").

Plaintiff acknowledged the government's contention that it "could have avoided all this trouble had it simply negotiated nonexclusive licenses to publish the material contributed by outside scholars," but suggested that had it done so, the authors themselves would have had obligations under Section 407. Reply Br. 20-21. Whether or not that might have been true in any individual case—a point not developed in the record—the relevant question is whether Valancourt's actions were voluntary, not the effect of those actions on third parties not before the Court. Neither the copyright laws nor any other federal law precluded plaintiff from obtaining a nonexclusive license, and there is no plausible

basis for treating its decision to avail itself of the benefits of copyright protection as anything other than voluntary.

The voluntariness of the acquisition is further highlighted by the fact that plaintiff affixed notices of copyright to its works and included in a number of works a stronger express reservation of rights invoking the full weight of the Copyright Act. *See* JA 113. These notices constitute further evidence that plaintiff voluntarily availed itself of the significant benefits of copyright protection by discouraging others from copying its works without permission. The notice of copyright does not itself trigger the operation of Section 407 now that such notice is not necessary for a copyright to arise or be maintained. Yet, inclusion of the notice clearly signals that plaintiff was affirmatively invoking the protections of the copyright scheme. This is difficult to square with plaintiff's assertion that it is just a passive and involuntary recipient of copyright protections.

**B.** As noted, although the government's brief argued that plaintiff had voluntarily obtained copyright protection, *see* Br. 34-36, the panel failed to address it. Instead, the panel analyzed the statute as if copyright protection had vested automatically in plaintiff, and plaintiff

was required deposit two copies of the work unless it affirmatively divested itself of copyright protection.

Specifically, the Court's analysis was premised on its determination that the bargain that the Supreme Court approved in *Wheaton* was no longer voluntary because the copyright laws have been amended such that copyright "'subsists' when an author 'fix[es]' a work 'in any tangible medium of expression.'" Op. 15 (alteration in original) (quoting 17 U.S.C. § 102(a)). The Court noted that "when a writer puts words on a page, that work gains copyright; when an artist paints on a canvas, that work gains copyright," *id.* Because "[a]uthors need not take any affirmative step to obtain copyright," the Court reasoned that Section 407 can no longer be understood to comprise the bargain upheld in *Wheaton*. *Id.* According to the panel, the "key point" in distinguishing this case from *Wheaton* is that "changes to copyright law untethered the deposit requirement from the benefits of copyright protection, erasing copyright's status as the product of a voluntary exchange." Op. 19.

Whatever the relevance of these points to an author who creates a work and obtains copyright protection automatically, they are inapplicable to an entity that obtains copyright protection through

17

voluntary contractual means. Plaintiff "d[id] not dispute that prior versions of the statute suffered no infirmity under the Takings Clause . . . because mandatory deposit was long related either to gaining or to maintaining the benefits of copyright, making it part of the price of federal copyright protection." Op. 18. When an entity obtains the "benefits of copyright" through a voluntary contractual arrangement, the current version of the statute still makes mandatory deposit "part of the price of federal copyright protection." *Id.*

The panel did not adopt plaintiff's arguments, described above, that plaintiff's acquisition of copyright ownership or the exclusive right of publication should be considered to be involuntary. Nor did it provide any other reason that plaintiff's self-described affirmative steps to acquire the exclusive right to publish should not be deemed voluntary acts to obtain the benefits of copyright protection. Instead, without explanation, the panel treated plaintiff as if it had obtained copyright protection not through contractual arrangement but rather simply by affixing a work in a tangible medium.

Other aspects of the Court's opinion make clear that the perceived lack of voluntariness was the linchpin of its holding. The Court stated

that if there "were a simple, seamless, and transparent way to opt out of copyright protection," then perhaps Section 407's obligations would be sufficiently "voluntary" to "fall outside the realm of the Takings Clause." Op. 20. But the panel failed to grapple with the possibility that copyright protection was voluntary because plaintiff need not have acquired it in the first place.

## II.    En Banc Review Is Warranted.

As discussed above, the panel decision held an Act of Congress unconstitutional as applied to plaintiff without addressing an argument that undermines the fundamental premise of the panel's reasoning. The panel opinion casts doubt upon the operation of Section 407 as applied to other publishers who voluntarily obtain copyright protection or the exclusive right to publish by contractual arrangement, at least when physical (as opposed to electronic) copies are required and in the absence of additional notifications regarding the availability of abandonment of a copyright after the fact.

The statute should be upheld on much more straightforward grounds, for the reasons stated above. The panel's opinion places a cloud over a duly enacted Act of Congress and warrants review by the

full Court (or, at a minimum, reconsideration by the panel to address the government's arguments in this regard).

## CONCLUSION

The Court should grant rehearing, or in the alternative, rehearing en banc.

Respectfully submitted.

SUZANNE V. WILSON
*General Counsel and Associate*
*Register of Copyrights*

EMILY CHAPUIS
*Deputy General Counsel*

BRANDY KARL
*Assistant General Counsel*

DAVID WELKOWITZ
*Attorney-Advisor*
*U.S. Copyright Office*

BRIAN M. BOYNTON
*Principal Deputy Assistant*
*Attorney General*

MATTHEW M. GRAVES
*United States Attorney*

DANIEL TENNY
 */s/ Laura E. Myron*
LAURA E. MYRON
*Attorneys, Appellate Staff*
*Civil Division, Room 7228*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4819*
*Laura.e.myron@usdoj.gov*

November 2023

20

## CERTIFICATE OF COMPLIANCE

I certify that this petition complies with the requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font.

I further certify that this petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,852 words, excluding the parts of the brief exempted under Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1), according to the count of Microsoft Word.

*/s/ Laura E. Myron*
Laura E. Myron

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing petition with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  Service will be accomplished by the appellate CM/ECF system.

*/s/ Laura E. Myron*
Laura E. Myron

**ADDENDUM**

# TABLE OF CONTENTS

*Valancourt Books, LLC v. Garland, et al.*,
No. 21-5203 (D.C. Cir. Aug. 29, 2023) ............................................. Add. 1

Certificate as to Parties, Rulings, and Related Cases .................. Add. 29

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 13, 2022      Decided August 29, 2023

No. 21-5203

VALANCOURT BOOKS, LLC,
APPELLANT

v.

MERRICK B. GARLAND, ATTORNEY GENERAL AND SHIRA
PERLMUTTER, IN HER OFFICIAL CAPACITY AS THE REGISTER OF
COPYRIGHTS OF THE U.S. COPYRIGHT OFFICE,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-01922)

*Robert J. McNamara* argued the cause for appellant. With
him on the briefs were *Jeffrey H. Redfern* and *James D.
Jenkins*.

*Michael J. Mazzone* was on the brief for *amici curiae* Zvi
S. Rosen and Brian L. Frye in support of appellant.

*Jacqueline C. Charlesworth* was on the brief for *amicus
curiae* Association of American Publishers, Inc. in support of
appellant.

2

*David Bookbinder* was on the brief for *amicus curiae* the Niskanen Center in support of appellant.

*Laura E. Myron*, Attorney, U.S. Department of Justice, argued the cause for appellees.  With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Daniel Tenny,* Attorney.

*Jonathan Band* and *Erik Stallman* were on the brief for *amici curiae* American Library Association, et al. in support of appellees.

Before: SRINIVASAN, *Chief Judge*, HENDERSON, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* SRINIVASAN.

SRINIVASAN, *Chief Judge*:  Under Section 407 of the Copyright Act, the owner of the copyright in a work must deposit two copies of the work with the Library of Congress within three months of its publication.  The Copyright Office enforces Section 407's deposit requirement by issuing demand letters informing noncomplying copyright owners that they must either deposit copies or pay a fine.

In June 2018, the Copyright Office sent a letter to Valancourt Books, LLC, an independent press based in Richmond, Virginia, demanding physical copies of Valancourt's published books on the pain of fines.  Valancourt protested that it could not afford to deposit physical copies and that much of what it published was in the public domain.  In response, the Office narrowed the list of demanded works but continued to demand that Valancourt deposit copies of its books with the Library of Congress or otherwise face a fine.

3

Valancourt then brought this action against the Register of Copyrights and the Attorney General. Valancourt challenges the application of Section 407's deposit requirement against it as an unconstitutional taking of its property in violation of the Fifth Amendment and an invalid burden on its speech in violation of the First Amendment. The district court granted summary judgment to the government on both claims.

We conclude that Section 407, as applied by the Copyright Office in this case, worked an unconstitutional taking of Valancourt's property. The Office demanded that Valancourt relinquish property (physical copies of copyrighted books) on the pain of fines. And because the requirement to turn over copies of the works is not a condition of attaining (or retaining) copyright protection in them, the demand to forfeit property cannot be justified as the conferral of a benefit—i.e., copyright protection—in exchange for property. Our holding relates solely to the Office's demand for physical copies of Valancourt's copyrighted works: we have no occasion to assess the Office's offer during the litigation to accept electronic copies in lieu of physical copies.

The Office now indicates that Valancourt could avoid relinquishing the property by disavowing copyright protection. But that ostensible option was never made known in any regulation, guidance, or communication, and instead was mentioned for the first time in this litigation. Whatever may be the legal significance of an option of that sort if it were costless and known to be available, it cannot save a demand for property containing no suggestion whatever of its existence.

Because we conclude that Valancourt prevails on its claim under the Takings Clause, we do not reach its claim under the First Amendment, which ultimately would afford the same scope of relief. We reverse the district court's grant of

4

summary judgment in the government's favor and remand for the entry of judgment to Valancourt and the award of relief consistent with our decision.

I.

A.

The Copyright Clause of the Constitution grants Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8.  Congress first exercised that power in 1790 by establishing a federal copyright regime.  *See* Copyright Act of 1790, ch. 15, 1 Stat. 124.  That regime has remained in place through the present day, even if some of its particulars have varied over time.

Under the copyright laws in their current formulation, creators of works such as literary works, musical works, and graphic works enjoy copyright protection for the fruits of their labor.  "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression . . . from which they can be perceived, reproduced, or otherwise communicated."  17 U.S.C. § 102(a).  Copyright thus accrues automatically upon creation of an original work in a tangible medium, and creators need not take any further action such as publication or registration to gain the protection.

Copyright owners possess "exclusive rights to do and to authorize" certain actions, including the rights to "reproduce the copyrighted work in copies," "prepare derivative works based upon the copyrighted work," and "distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." *Id.*

5

§ 106(1)–(3).  Those rights generally last through "the life of the author and 70 years after the author's death."  *Id.* § 302(a).

At issue here is the mandatory deposit requirement found in Section 407 of the Copyright Act.  *Id.* § 407.  That provision states that "the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication . . . two complete copies of the best edition" of the work.  *Id.* § 407(a)(1).  The "required copies . . . shall be deposited in the Copyright Office for the use or disposition of the Library of Congress."  *Id.* § 407(b).  Because the deposit requirement is triggered upon "publication," *id.* § 407(a), unpublished works are not subject to it.  For most literary works, the Copyright Office's regulations presently require deposit of only a single copy rather than two copies, although the Office reserves the right to request a second copy.  *See* 37 C.F.R. § 202.19(d)(2)(ix).

To enforce the mandatory deposit requirement, the Copyright Office "may make written demand for the required deposit on any of the persons obligated to make the deposit under [Section 407(a)]."  17 U.S.C. § 407(d).  If a copyright owner fails to make the "required deposit" within three months of a demand, she becomes liable for a "fine of not more than $250 for each work" in addition to "the total retail price of the copies or phonorecords demanded" (or, "if no retail price has been fixed, the reasonable cost to the Library of Congress of acquiring" those works).  *Id.* § 407(d)(1)–(2).  And if the copyright owner "willfully or repeatedly fails or refuses to comply with such a demand," she becomes liable for an additional $2,500 fine.  *Id.* § 407(d)(3).  As an indication of the scale of Section 407's operation, from fiscal year 2013 through the first quarter of fiscal year 2019, the Copyright Office

6

demanded 27,847 titles under the provision's mandatory deposit requirement.

Although the mandatory deposit requirement broadly applies to published works, the Copyright Office's regulations give copyright owners an avenue to ask the Office for "special relief" from the requirement. *See* 37 C.F.R. § 202.19(e). The Office can also raise the possibility of special relief directly with those who express concerns about compliance. Joint Stipulations of Fact ¶ 59, J.A. 119. If granted by the Copyright Office, special relief can exempt copyright owners from Section 407's requirements altogether or can authorize them to deposit a quantity or format of copies of a work different from the default statutory requirement of "two complete copies of the best edition." *See* 17 U.S.C. § 407(a)(1); 37 C.F.R. § 202.19(e)(1).

B.

Valancourt is an independent press that publishes rare and out-of-print fiction. Run out of the Richmond, Virginia, home of founder James Jenkins and his husband, Valancourt prints copies of its books "on-demand," i.e., in response to a specific order or request. Although Valancourt has never deposited its works under Section 407—nor registered them under Section 408, a separate provision of copyright law governing copyright registration, *see* 17 U.S.C. § 408—Valancourt places copyright notices in its books.

In June 2018, Valancourt received a letter from the Copyright Office setting forth a demand under Section 407 for "one complete copy" of 341 books published by Valancourt "for the use or disposition of the Library of Congress." Letter from Michael Lind, Copyright Off. Acquisitions Specialist, to James Jenkins (June 11, 2018), J.A. 130. True to the statute's

7

terms, the Office explained that failure to comply would make Valancourt liable for a fine of up to $250 per work and the total retail price of the copies demanded, as well as an additional fine of $2,500 for a willful and repeated failure to comply. The Office clarified that Valancourt's obligation to deposit works under Section 407 "exists regardless of whether copyright registration [pursuant to Section 408] is sought." *Id.*

Valancourt responded to the Copyright Office's demand the next day. It estimated that compliance with the demand would cost over $2,500, and advised that, as a "very small publisher," it could not afford that sum. E-mail from James Jenkins to Angela Coles, Copyright Off. Acquisitions Assistant (June 12, 2018), J.A. 134. Valancourt also observed that some of its books contained material in the public domain and that it had already deposited some works through the Cataloging-in-Publication program, a separate program run by the Library of Congress. Valancourt requested that the Copyright Office withdraw its demand and offered to sell copies of any of the listed titles to the government at cost with no markup.

The Copyright Office responded in August 2018, maintaining its position that Valancourt was obligated to deposit books pursuant to Section 407. The Office explained that deposits for Cataloging-in-Publication did not fulfill Section 407's requirements. After further research, however, the Office had determined that some of Valancourt's books contained material exclusively in the public domain, and it thus narrowed the list of demanded works to 240 books. The Office enclosed an updated demand letter that reiterated the fines for failure to deposit.

8

C.

In August 2018, Valancourt brought this action against the Attorney General and the Register of Copyrights. Valancourt sought a declaration that the application of Section 407 is unconstitutional under the First and Fifth Amendments, as well as an injunction against the provision's enforcement. Valancourt contended that Section 407's application violates the First Amendment because it unlawfully burdens speech and is overbroad, and that it also violates the Fifth Amendment because it represents an uncompensated taking of property.

In March 2019, the Copyright Office reached out to Valancourt's counsel in an e-mail containing the header "CONFIDENTIAL SETTLEMENT COMMUNICATION." E-mail from Daniel Riess, Trial Attorney, Fed. Programs Branch, Dep't of Just., to Robert McNamara, Counsel for Valancourt (Mar. 11, 2019), J.A. 173. The communication included an "offer, in full settlement for all of Valancourt's claims, [of] permission for Valancourt to deposit the 240 requested titles in electronic format." *Id.* Invoking its regulatory authority to grant special relief when mandatory deposit would be an "unsustainable economic burden," the Office explained that its grant of special relief would also "extend to any request by the Copyright Office for future publications by Valancourt." *Id.*; *see* 17 U.S.C. § 407(c); 37 C.F.R. § 202.19(e).

Valancourt rejected the Copyright Office's offer. In its subsequent briefing to the district court, it gave two reasons for its rejection. First, Valancourt objected to the idea that it would receive special treatment while other small publishers would continue to be subject to Section 407's mandatory deposit requirement. Second, it did not believe it could comply with the offer because it likely lost electronic copies of at least some

9

of its works in part due to a home burglary. *See* Pl.'s Suppl. Br. 2–3, *Valancourt Books, LLC v. Perlmutter*, 554 F. Supp. 3d 26 (D.D.C. 2021), No. 18-cv-1922.

The parties cross-moved for summary judgment. The government represented that its settlement offer to accept electronic copies stood regardless of whether Valancourt agreed to settle its claims. Defs.' Combined Memorandum in Supp. of Their Mot. for Summ. J. & in Opp'n to Pl.'s Cross-Mot. for Summ. J. at 20–21 n.8., *Valancourt Books*, 554 F. Supp. 3d 26, No. 18-cv-1922. In December 2020, the district court ordered supplemental briefing on whether the Copyright Office's offer to accept electronic copies had mooted the dispute. *See* Order at 3, *Valancourt Books*, 554 F. Supp. 3d 26, No. 18-cv-1922. Both parties agreed that Valancourt's potential rejection of the offer would not moot the dispute.

In July 2021, the district court granted summary judgment in favor of the government. *Valancourt Books, LLC v. Perlmutter*, 554 F. Supp. 3d 26 (D.D.C. 2021). The court first concluded that the Copyright Office's offer to accept electronic copies of Valancourt's works had not mooted the dispute but instead had "narrowed" it to one about electronic copies. *Id.* at 32–33. The court then rejected both of Valancourt's constitutional claims.

On Valancourt's Fifth Amendment claim, the court held that Section 407 does not run afoul of the Takings Clause because it represents a voluntary exchange for federal copyright protection. *Id.* at 33–36. The court viewed Section 407 as a condition on the receipt of the governmental benefit of copyright protection, and it characterized Valancourt as having accepted that condition by voluntarily placing notices of copyright on its books. *Id.* at 35. The court also pointed to Valancourt's refusal to disavow copyright protection despite

10

the Copyright Office's representation that, if Valancourt did so, the Office would withdraw its deposit requirement. *Id.* at 38. The court further mentioned that it is "not at all clear" how principles developed in the context of real or personal property would apply to the Copyright Office's alternative demand of electronic copies. *Id.* at 36.

The court next rejected Valancourt's First Amendment claim. It concluded that Section 407 does not burden speech at all, and that, even if it were subject to First Amendment scrutiny, it would survive because it does not burden more speech than necessary. *Id.* at 40–41.

Valancourt now appeals. It challenges the district court's conclusion that the dispute has been narrowed to one about electronic copies, as well as the court's grant of summary judgment to the government on Valancourt's First and Fifth Amendment claims.

II.

Because the scope of the dispute before us necessarily affects our analysis of the merits of the challenge, we first determine whether the dispute encompasses only the Copyright Office's offer to accept electronic copies of the copyrighted works or also reaches the Office's original demand for physical copies. We agree with Valancourt that the dispute has not been narrowed to encompass only electronic copies.

After Valancourt filed its complaint challenging the Copyright Office's demand for physical copies of copyrighted works, the Office offered to accept electronic copies in lieu of physical copies. That offer did not moot Valancourt's challenge to the demand for physical copies. A party's voluntary cessation of challenged conduct does not moot the

11

challenge unless it is "absolutely clear" that the challenged conduct will not recur after the litigation. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017) (quoting *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S 167, 189 (2000)); *see, e.g.*, *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221–25 (2000). No one argues that standard is satisfied here, as the Office can continue to demand physical copies from copyright holders (including Valancourt) and has indicated no intention to cease doing so. Indeed, the Office has not withdrawn its demand for physical copies in this case itself—rather, it has only offered to accept electronic copies as an alternative way to satisfy its continuing demand for physical copies. We thus will address the Office's demand for physical copies, consistent with our general obligation to decide cases within our jurisdiction. *See, e.g.*, *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014).

As for the Office's offer to accept electronic copies as an alternative, Valancourt advised the district court that the court "need not address" whether electronic copies constitute property subject to the Takings Clause because, regardless of the Office's offer, Valancourt would still need to deposit physical copies of certain books for which it cannot produce electronic copies. Pl.'s Suppl. Br. 7–8 & n.3, *Valancourt Books*, 554 F. Supp. 3d 26, No. 18-cv-1922; *see* Jenkins Suppl. Decl. ¶¶ 7, 9, J.A. 169–70. Valancourt does not ask our court to assess the Office's alternative demand for electronic copies, either, instead requesting that we assess its "original constitutional claims." Valancourt Br. 20. The government likewise does not ask us to go on to evaluate the Office's alternative demand for electronic copies if we invalidate the baseline demand for physical copies. Rather, the government generally defends its interpretation of Section 407 without

12

eschewing its ability to enforce that provision through physical copies.

Because neither party appears to ask us to reach the question, and because the presentation of the case does not require us to do so, we will not proceed to evaluate the constitutionality of Section 407 as enforced through electronic copies.  "[I]n the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)). The parties' focus on physical copies explains why they, and the district court, largely did not discuss how Section 407 would fare if enforced through only electronic copies.  As the district court recognized, that analysis might raise unique questions.  For example, the court observed, it "is not at all clear" how the principles of the Takings Clause "developed in the context of 'real property' . . . would apply to a requirement that can be fulfilled by the transmission of digital copies." 554 F. Supp. 3d at 36.

The parties' understanding of the Copyright Office's offer as an alternative way to fulfill Section 407's requirements reinforces that this dispute is ultimately about physical copies. Both parties stipulated that the Office's offer was to accept electronic copies "in lieu of physical copies."  Joint Stipulations of Fact ¶ 61, J.A. 119.  If the demand for physical books is unconstitutional, as we conclude it is, the predicate for the Office's alternative offer then falls away, and we have no need to assess its constitutionality.  Accordingly, we will evaluate only the Office's demand for physical copies.

13

III.

Valancourt contends that Section 407's mandatory deposit requirement, as enforced by the government, violates both the Takings Clause of the Fifth Amendment and the First Amendment. We review the district court's grant of summary judgment to the government de novo. *Stoe v. Barr*, 960 F.3d 627, 638 (D.C. Cir. 2020). We agree with Valancourt that Section 407's demand for physical copies of works, as applied by the Copyright Office here, represents an uncompensated taking of private property under the Takings Clause. We need not reach Valancourt's First Amendment claim, as it seeks the same relief through that challenge.

A.

Under the Takings Clause of the Fifth Amendment, the government has a "clear and categorical obligation" to provide just compensation if it "physically acquires private property for a public use." *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021). A physical appropriation of property presents the "clearest sort of taking," *id.* (quoting *Palazzolo v. Rhode Island*, 553 U.S. 606, 617 (2001)), which we assess "using a simple, *per se* rule: The government must pay for what it takes," *id.* Although the Takings Clause often arises in the context of real property, its requirements apply to personal property as well: "The Government has a categorical duty to pay just compensation when it takes your car, just as when it takes your home." *Horne v. Dep't of Agric.*, 576 U.S. 350, 358 (2015).

By requiring copyright owners to provide physical copies of books, the mandatory deposit provision "effect[s] a 'classic taking in which the government directly appropriates private property for its own use.'" *Tyler v. Hennepin Cnty.*, 143 S. Ct.

14

1369, 1376 (2023) (quoting *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 324 (2002)). When copyright owners deposit copies of works with the Library of Congress, they "lose the entire 'bundle' of property rights" in the relinquished copies, including "the rights to possess, use and dispose of" them. *Horne*, 576 U.S. at 361–62 (quoting *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). A government demand to turn over personal property is "of such a unique character that it is a taking without regard to other factors that a court might ordinarily examine." *See id.* at 362 (quoting *Loretto*, 458 U.S. at 432).

A demand for personal property would not be a taking, however, if it involved a voluntary exchange for a governmental benefit. If the property owner is "aware of the conditions" of an exchange, and if the conditions are "rationally related to a legitimate Government interest," presenting the exchange poses no takings problem. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1007 (1984). In *Monsanto*, accordingly, the Court held that the Environmental Protection Agency could validly condition registration of pesticides on the disclosure of relevant trade secrets (a form of property) because the disclosure requirement could be justified as a condition on a "valuable Government benefit." *See id.* By consenting to the agency's requirements for a license, Monsanto demonstrated that it was "willing to bear [the] burden" of disclosing trade secrets "in exchange for the ability to market pesticides." *Id.*

A voluntary exchange for a benefit like the one in *Monsanto* does not exist, however, if the purported "benefit" is illusory. In *Horne v. Department of Agriculture*, the Supreme Court considered a regulation that required raisin growers to give a percentage of their crop to the government as part of the government's efforts to maintain an orderly raisin market. 576

15

U.S. at 354–55.  Distinguishing *Monsanto*, the Court concluded that the raisin provision effected a taking because the raisin growers received no "special governmental benefit" in exchange for forfeiting their raisins.  *Id.* at 366.  True, the growers received the right to "[s]ell[] produce in interstate commerce."  *Id.*  But unlike the "license to sell dangerous chemicals" granted in *Monsanto*, the right to sell produce was a "basic and familiar use[] of property" that the growers already enjoyed and were entitled to exercise.  *Id.*

Here, as in *Horne*, copyright owners receive no additional benefit for the works they forfeit pursuant to Section 407's deposit requirement.  Mandatory deposit is not required to secure the benefits of copyright.  Copyright first "subsists" when an author "fix[es]" a work "in any tangible medium of expression."  17 U.S.C. § 102(a).  So, when a writer puts words on a page, that work gains copyright; when an artist paints on a canvas, that work gains copyright.  Copyright thus is "both instant and automatic," in that it "vests as soon as a work is captured in a tangible form, triggering a panoply of exclusive rights that can last over a century."  *Georgia v. Public.Resource.Org, Inc.*, 140 S. Ct. 1498, 1513 (2020).  Authors need not take any affirmative step to obtain copyright: it attaches immediately upon fixation of the work.

Nor is mandatory deposit required to continue retaining copyright and its benefits.  The mandatory deposit statute authorizes the Copyright Office to make a demand for copies in writing.  If a copyright owner fails to make the required deposit within three months of such a demand, the statute stipulates that the owner will be liable for a range of fines:  "a fine of not more than $250 for each work," a payment equal to the "total retail price" of the demanded works, and an additional fine of $2,500 if the copyright owner "willfully or repeatedly fails or refuses to comply with" a demand.   17

16

U.S.C. § 407(d). While copyright owners are subject to a series of fines for failure to deposit, they retain copyright regardless of whether they pay the fines. Indeed, the statute itself declares that the deposit requirement is not a "condition[] of copyright protection," providing perhaps the clearest sign that mandatory deposit is unrelated to retaining copyright. *Id.* § 407(a).

In urging us to view mandatory deposit as part of a voluntary exchange, the government cites the many benefits that copyright confers upon authors. But authors obtain those benefits upon fixation, and mandatory deposit grants no additional benefits. Tellingly, the government cannot point to a single incremental benefit that copyright owners receive for depositing works pursuant to Section 407. That provision then cannot represent a voluntary exchange for a benefit—there is no benefit at all.

In that respect, the difference between Sections 407 and 408 is illuminating. Unlike with Section 407, authors receive additional benefits if they deposit their works along with an application and filing fee pursuant to Section 408, the statutory provision governing copyright registration. *See id.* § 408. Notably, registration is a precondition to bringing an infringement action. *Id.* § 411(a). Registration can also provide copyright owners with prima facie evidence of the validity of their copyright, *id.* § 410(c), and access to additional remedies if they prevail in an infringement suit, *id.* § 412.

The government does not get any further by asserting that copyright is a governmental benefit. We agree that copyright is not a natural right. Rather, it is a uniquely governmental benefit whose conferral the Copyright Office can validly condition on meeting various requirements. *See Wheaton v. Peters*, 33 U.S. (8 Pet.) 591, 663–64 (1834) ("No one can deny that when the legislature are about to vest an exclusive right in

17

an author or an inventor, they have the power to prescribe the conditions on which such right shall be enjoyed . . . .").  But mandatory deposit under Section 407 bears no relationship to that benefit, and the governmental nature of the benefit does not change that fact.

A review of the mandatory deposit provision's history shows how Section 407 became a burden untethered to any benefit.  For many years, the benefits of copyright were intimately tied to mandatory deposit, and authors had to deposit works to either obtain or maintain copyright and its related benefits.  The first copyright legislation required authors to "deposit a printed copy" of their work to gain the benefit of copyright.  Copyright Act of 1790, ch. 15, § 3, 1 Stat. 124, 125.  The Copyright Act of 1909 then eliminated mandatory deposit as a requirement to gain copyright protection, instead conferring copyright upon publication of a work with a copyright notice.  *See* Copyright Act of 1909, Pub. L. No. 60-349, § 9, 35 Stat. 1075, 1077.  But mandatory deposit remained necessary to maintain copyright:  if the author failed to "promptly" deposit two copies of the work after receiving a demand from the Copyright Office, the copyright would "become void" and the author would incur a fine.  *Id.* §§ 12–13, 35 Stat. at 1078.

Subsequent legislative developments eroded the quid pro quo nature of mandatory deposit.  The Copyright Act of 1976 made copyright automatic upon fixation of a work in a tangible medium, and that regime persists today, meaning mandatory deposit remains unnecessary to gain copyright.  *See* Copyright Act of 1976, Pub. L. No. 94-553, § 102(a), 90 Stat. 2541, 2544–45.  The Act also removed loss of copyright as a sanction for failure to deposit, meaning mandatory deposit also became unnecessary to maintain copyright.  *See id.* § 407(d), 90 Stat. at 2579.

18

In 1988, Congress again amended the copyright regime, this time to comply with the Berne Convention for the Protection of Literary and Artistic Works, which prohibits its members from conditioning copyright on "any formality." Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, as revised at Stockholm on July 14, 1967, art. 6(2), 828 U.N.T.S. 221, 233. Congress complied by eliminating an author's obligation to include a copyright notice when publishing his works to retain copyright, further disentangling copyright protection from the actions an author takes after obtaining it. *See* Berne Convention Implementation Act of 1988, Pub L. No. 100-568, § 7, 102 Stat. 2853, 2857. While the government relies on a Ninth Circuit decision that upheld the mandatory deposit requirement against constitutional challenges, that decision considered a prior version of the statute, before the 1988 amendments. *See Ladd v. Law & Tech. Press*, 762 F.2d 809 (9th Cir. 1985).

Those statutory changes brought us to the present-day version of Section 407, whose obligations are triggered upon publication but whose fulfillment provides no marginal benefit to copyright owners. Valancourt does not dispute that prior versions of the statute suffered no infirmity under the Takings Clause. That is because mandatory deposit was long related either to gaining or to maintaining the benefits of copyright, making it part of the price of federal copyright protection. While works copyrighted before the Copyright Act of 1976 went into effect are still governed by the preexisting regime, no such copyrights are at issue in this case. *See* Copyright Act of 1976, Transitional and Supplementary Provisions § 110, 90 Stat. at 2600. Valancourt's copyrights all fall under the current copyright regime, which lacks the quid pro quo that characterized previous versions of the statute.

19

The government suggests it is counterintuitive to determine that statutory changes making it easier to secure and maintain copyright protection had the effect of rendering mandatory deposit unconstitutional.  But the relevant issue is not the magnitude of the burden placed on authors to obtain copyright.  Rather, the key point is that the changes to copyright law untethered the deposit requirement from the benefits of copyright protection, erasing copyright's status as the product of a voluntary exchange akin to the one blessed in *Monsanto*.

It is true that copyright owners can satisfy Section 407 by paying a fine instead of forfeiting their property.  But the government understandably does not contend that the "option" of paying a fine affects the analysis.  A statute can effect a taking even if the property owner never actually forfeits property and is instead subject to a fine.  In *Horne*, the government assessed a fine of $480,000 and an additional civil penalty of over $200,000 when the Hornes refused to give up their raisins, and the Hornes brought suit when the government tried to enforce the fine.  576 U.S. at 356.  In that sense, the Hornes were able to avoid giving over their raisins if they instead chose to incur a fine.  But the Court held that the raisin reserve requirement effected a taking even though the only action the government took was to impose a "fine and associated civil penalty . . . when [the Hornes] resisted the Government's effort to take their raisins."  *Id.* at 370.

Just as the alternative of a fine in *Horne* did not save the statute from constituting a taking, Section 407's scheme of fines does not save the statute here, either.  A "demand for money" that "operate[s] upon . . . an identified property interest" can violate the Takings Clause because a "monetary obligation burden[s]" ownership of property.  *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 613 (2013)

20

(quoting *E. Enters. v. Apfel*, 524 U.S. 498, 540 (1998)
(Kennedy, J., concurring in the judgment and dissenting in
part)).  Were we to find otherwise, the government could avoid
the strictures of the Takings Clause by purporting to "simply
give the owner a choice of either surrendering [property] or
making a payment equal to the [property's] value."  *Id.* at 612.
Thus, "when the government commands the relinquishment of
funds linked to a specific, identifiable property interest" such
as a piece of personal property, the "'*per se* [takings] approach'
is the proper mode of analysis."  *See id.* at 614 (alteration in
original) (quoting *Brown v. Legal Found. of Wash.*, 538 U.S.
216, 235 (2003)).

B.

Seeking to characterize Section 407 as part of a voluntary
exchange, the government contends that a copyright owner can
readily disavow copyright protection and thereby avoid the
deposit requirement.  By refraining from disavowing copyright
protection, the government argues, copyright owners like
Valancourt effectively consent to mandatory deposit.  *See*
Gov't Br. 39–41.  We disagree.

If there were a simple, seamless, and transparent way to
opt out of copyright protection, perhaps mandatory deposit
would fall outside the realm of the Takings Clause because any
forfeiture of property might arguably be voluntary.  For
example, the Supreme Court recently explained that even when
the government keeps excess proceeds from a foreclosure sale
beyond the amount a property owner owes the government, no
Takings Clause violation occurs if the government provides a
"process through which the owner [can] claim the surplus."
*Tyler*, 143 S. Ct. at 1379 (citing and discussing *Nelson v. City
of New York*, 352 U.S. 103 (1956)).  The availability of such a
process means the government has not "absolutely preclud[ed]

21

an owner from obtaining" the surplus.  *Id.* (quoting *Nelson*, 352 U.S. at 110).  Here, then, a known and costless option by which to abandon a copyright could be argued to provide copyright owners with a comparable way to avoid having their property unlawfully taken.  While the copyright laws have evolved to make it much easier for people to gain copyright in their works, nothing in the current statutes appears to preclude optional abandonment of that right.

We need not resolve whether a known and costless abandonment option would make Section 407 constitutional, however, because there is no indication that an option of that sort generally exists.  For an abandonment option to render deposit under Section 407 a voluntary choice, the option would have to at least be cognizable to copyright owners.  *Cf. Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994) ("Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly . . . ."); *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 773 (D.C. Cir. 2022) (the government must "make the requirements of the law public and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply" (internal quotation marks and citation omitted)).  As it stands, however, no statute, regulation, or guidance suggests that an author can readily disavow copyright protection and thereby avoid the associated mandatory deposit requirement.

Expecting copyright owners to somehow glean the existence of an unadvertised abandonment option and subjecting them to demands on their property when they unsurprisingly do not exercise the option "impermissibly burden[s] the right not to have property taken without just compensation."  *See Koontz*, 570 U.S. at 607.  Short of mining the filings in this case—and somehow knowing of the need to

22

do so—copyright owners would have no way to learn about the
ostensibly seamless abandonment option the government now
posits. And Valancourt, which of course did not have the
filings in this case when it brought its action, had no way of
knowing about that option before it sued.

The statute itself gives no indication of any abandonment
option or how to effectuate it. Nothing in Section 407's terms
would suggest to a copyright owner that she can avoid its
requirements by informing the Copyright Office that she would
prefer to abandon her copyright rather than deposit copies of
copyrighted works. Rather, the statute states that a copyright
owner "shall" make a deposit and prescribes fines for failing to
comply with a deposit demand from the Copyright Office. 17
U.S.C. § 407(a), (d). The statute then makes clear that
mandatory deposit is not a "condition[] of copyright
protection." *Id.* § 407(a). To deduce that one could avoid
mandatory deposit by disavowing copyright protection would
require a copyright owner to infer essentially the opposite of
what the statute states. Nothing elsewhere in the copyright
statute suggests that owners can abandon their copyright to
avoid deposit, either. Copyright "subsists" as soon as one
"fixe[s]" a work "in any tangible medium," and it generally
lasts from the creation of the work through "the life of the
author and 70 years after the author's death." *Id.*
§§ 102(a), 302(a).

Nor is there any indication that, in practice, the Copyright
Office informs copyright owners of an abandonment option
when issuing demands to enforce Section 407. To the contrary,
in its first communication to Valancourt, the Office explained
that Valancourt had to deposit one copy of each of the 341
listed works on the pain of fines. It did not suggest at any point
that Valancourt could avoid the deposit requirement by simply
disavowing its copyrights, much less explain how Valancourt

23

could exercise that option in a way that would lead the Office to withdraw its demand for copies of Valancourt's copyrighted works.

If anything, the Copyright Office's demand letter implied that Valancourt was obligated to deposit regardless of any voluntary action it took, as the letter stated that the "obligation to deposit published works under copyright protection exists regardless of whether copyright registration is sought." Letter from Michael Lind, Copyright Off. Acquisitions Specialist, to James Jenkins (June 11, 2018), J.A. 130. The Office also did not mention what the government now says is a readily realizable abandonment option even when Valancourt expressed that it could not afford the costs of mandatory deposit. Instead, the Office renewed its demand and explained that the 240 works it had identified at that point were "copyrightable materials subject to Copyright Mandatory request/demand." E-mail from Angela Coles, Copyright Off. Acquisitions Assistant, to James Jenkins (Aug. 9, 2018), J.A. 137.

The Copyright Office's own guidance requires copyright owners to pay a $125 fee to register a notice of abandonment. That guidance further diminishes any possibility of an owner's gaining the impression that there might be some costless abandonment option readily realizable through—as the Office now suggests—a simple communication to the Office. The Office's Compendium, an administrative manual it publishes, states that copyright owners must mail a document and the "appropriate filing fee" to the Office to record an abandonment. U.S. Copyright Off., Compendium of U.S. Copyright Office Practices § 2311 (3d ed. 2021), https://copyright.gov/comp3/chap2300/ch2300-recordation.pdf [https://perma.cc/669W-5KUR] (last visited Aug. 12, 2023). The Office's table of fees then stipulates that

24

the base fee for recording a paper document, including a notice of termination, is $125. *Fees*, U.S. Copyright Off., https://www.copyright.gov/about/fees.html [https://perma.cc/7DNH-UEYH] (last visited Aug. 12, 2023). It would appear to someone reviewing the Office's Compendium, then, that the only way to officially abandon copyright entails the payment of a significant fee. While the government now represents that the fee applies to recordation of abandonment and not abandonment itself, there is no indication in the Compendium or any other available source that a costless abandonment option exists. When the only reference to an abandonment option is one carrying a $125 fee, copyright owners are unlikely to think they could easily abandon copyright (and its attendant obligations like Section 407's deposit obligation) without cost.

The government represents that copyright owners in fact can abandon copyright simply by taking any overt action indicating an intent to surrender copyright protection, regardless of whether they pay $125 to record a notice of abandonment. The government points to a line of decisions in which courts have recognized abandonment through an overt action as an affirmative defense to claims of copyright infringement. *See* 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.06 (Matthew Bender rev. ed.) (describing the defense of abandonment of copyright). But the government does not explain why copyright owners would know of such a judicially created doctrine developed in the context of infringement litigation, much less why even knowledgeable copyright owners would think that abandonment in that context would be effective to avoid Section 407's deposit requirement. Indeed, the government itself suggested at oral argument that abandonment for one purpose would not necessarily work for another, as it represented that the version of copyright abandonment it now

25

posits would suffice to avoid Section 407's demand requirement might not be effective to defend against infringement claims.  Oral Arg. 29:11–29:59.

In the end, the only affirmative indication of a costless abandonment option is in the government's statements in this litigation.  The government first referenced such an option in its summary judgment briefing, in which it represented that Valancourt and other copyright owners could escape their Section 407 deposit obligation by informing the Copyright Office of their wish to abandon copyright.  *See* Mem. in Supp. of Defs.' Mot. for Summ. J. at 22, *Valancourt Books*, 554 F. Supp. 3d 26, No. 18-cv-1922.  It repeated that representation in our court.  *See* Gov't Br. 39–41.  But representations made only in the course of litigation—and appearing in no statute, regulation, or guidance—do not demonstrate that an abandonment option was in fact cognizable to copyright owners like Valancourt.  *Cf. Rhea Lana, Inc. v. Dep't of Lab.*, 824 F.3d 1023, 1030–31 (D.C. Cir. 2016) (explaining that deference to an agency's interpretation of its own regulation is unwarranted "when it appears that the interpretation is nothing more than a convenient litigating position, or a *post hoc* rationalization advanced by an agency seeking to defend past agency action against attack" (quoting *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012)); *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012) (concluding in the Section 1983 context that "[a] mere legal position, without anything more, is insufficient to constitute an official policy").

The government also asserted at oral argument that Valancourt should have recognized that copyright (and its attendant obligations), like any other property right, can be waived.  *See* Oral Arg. 21:51–22:21.  But it is telling that even the government did not frame its argument that way in its

26

briefing in the district court or our court. Instead, it characterized abandonment of copyright as a principle specific to copyright law rather than a broad truism of property law, suggesting that such a principle is not so obviously applicable in this context. And Section 407's language and the Copyright Office's public materials would indicate to a copyright owner that such a principle does not apply here. Multiple amici accordingly contend that a costless and seamless abandonment option is unapparent to the public, as they characterize the abandonment option as illusory. *See* Ass'n of Am. Publishers Amicus Br. 12–14; Niskanen Ctr. Amicus Br. 6–13; Rosen & Frye Amicus Br. 31–32.

Had the government wanted to make clear that copyright owners could avoid readily mandatory deposit by abandoning their copyright, it knew how to do so, as evidenced by other provisions in the Copyright Act and their corresponding regulations. For example, the Act subjects copyrighted works imported in violation of certain provisions to seizure and forfeiture. *See* 17 U.S.C. §§ 602(a)(1)–(3), 603(c). One can avoid forfeiting the relevant works, however, by providing evidence that "a statement of abandonment has been filed and recorded in the Copyright Office by the copyright owner in accordance with the procedures of the Copyright Office," among other requirements. 19 C.F.R. § 133.51(b)(3)(i). As one court recognized, that regulation exempts "work[s] for which copyright protection is not claimed" from certain importation restrictions. *Authors League of Am., Inc. v. Oman*, 790 F.2d 220, 221 (2d Cir. 1986). By codifying formal abandonment of copyright as a mechanism to render certain legal obligations inapplicable, the import regulation illustrates how the government could communicate the availability of a copyright abandonment option along with the option's implications for the mandatory deposit requirement. The government, though, has not issued any such guidance.

27

The government lastly argues that Valancourt consented to the burdens of Section 407 by choosing to place copyright notices on its works.  But just as Valancourt did not consent to mandatory deposit by refusing to disavow its copyrights, it did not consent by including copyright notices in its works.  Nothing in the statute or the accompanying regulations suggests that a copyright owner agrees to deposit two copies of a work by using copyright notices.  Although inclusion of a copyright notice bore legal relevance in prior versions of the statute, the statute now states that the mandatory deposit requirement is triggered by mere "publication" of a work.  17 U.S.C. § 407(a).

The government thus cannot infer consent from Valancourt's actions—either from its refraining from exercising an ostensibly costless abandonment option of which there is no evidence of Valancourt's knowledge, or from its affixing a notice of copyright to its works without any indication that doing so somehow amounted to consenting to relinquish its property.  Rather, in the circumstances, the Copyright Office's enforcement of Section 407 against Valancourt worked an unconstitutional taking of property.

Our decision, as we have explained, is tied to the particular circumstances:  circumstances in which the Copyright Office enforced Section 407 by issuing a demand letter indicating no option other than surrendering the property at issue or paying a fine, and in which Valancourt had no indication from any other source of the existence of a costless option to disavow copyright protection and thereby avoid complying with the sole options described in the demand letter.  We leave it to the district court and the parties to fashion relief commensurate with the parameters of our resolution.

28

Because we conclude that the way the Copyright Office enforced Section 407 against Valancourt works a taking, we need not reach Valancourt's challenge under the First Amendment. Valancourt has not argued that the scope of relief it seeks differs with respect to its First and Fifth Amendment claims, and we are unaware of any reason to think that would be the case. Were we to consider Valancourt's First Amendment claim, our analysis would proceed in much the same fashion, as we would determine whether, on the facts of this case, the Copyright Office's enforcement of Section 407 against Valancourt runs afoul of the First Amendment. Indeed, Valancourt acknowledged at oral argument that, as it relates to physical copies, its claims under the Fifth and First Amendments work in the same manner. *See* Oral Arg. 13:58–15:50.

\*    \*    \*    \*    \*

For the foregoing reasons, we reverse the judgment of the district court and remand with instructions to grant summary judgment to Valancourt consistent with our opinion.

*So ordered.*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), undersigned counsel certifies as follows:

### A.  Parties and Amici

In this case, plaintiff in district court, and appellant here, is Valancourt Books LLC. Defendants below and appellees here are Merrick Garland, in his official capacity as Attorney General, and Shira Perlmutter, in her official capacity as Register of Copyrights of the U.S. Copyright Office.[2] Appearing as amici curiae before this Court are Zvi S. Rosen, American Library Association, Brian L. Frye, Association of College and Research Libraries, Association of American Publishers, Inc., Association of Research Libraries, and the Niskanen Center.

### B.  Rulings Under Review

The rulings under review are the opinion and order entered on July 23, 2021. *See Valancourt Books LLC v. Perlmutter*, No. 1:18-cv-

---

[2] Prior holders of the office of Attorney General and of the Register of Copyrights were parties before the district court. Each public officer was substituted for their predecessor under Federal Rule of Civil Procedure 25(d).

Add.29

1922, 2021 WL 3129089 (D.D.C. July 23, 2021) (Jackson, J.). Appellees

seek en banc review of the panel's decision.

### C.    Related Cases

This case has not previously been before this Court or any other

court, and there are no related cases pending in this Court or any other

court. *See* D.C. Cir. R. 28(a)(1)(C) (defining "any other court" to mean a

U.S. Court of Appeals or a court in the District of Columbia).

*/s/ Laura E. Myron*
Laura E. Myron
