[ORAL ARGUMENT HELD OCTOBER 13, 2022]
[DECISION ISSUED AUGUST 29, 2023]

RECORD NO. 21-5203
_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

VALANCOURT BOOKS, LLC,

*Plaintiff - Appellant*,

v.

MERRICK B. GARLAND, Attorney General; SHIRA PERLMUTTER,
in her official capacity as the Register of Copyrights of the U.S.
Copyright Office,

*Defendants - Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA
————————

APPELLANT'S RESPONSE TO PETITION FOR REHEARING
OR REHEARING EN BANC
————————

James D. Jenkins
VALANCOURT BOOKS
Post Office Box 17642
Richmond, Virginia  23226
(804) 873-8528
jjenkins@valancourtbooks.com


*Counsel for Appellant*

Robert J. McNamara
Jeffrey H. Redfern
INSTITUTE FOR JUSTICE
901 North Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
rmcnamara@ij.org
jredfern@ij.org

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.......................................................................ii

INTRODUCTION.................................................................................1

STATEMENT ....................................................................................2

ARGUMENT .....................................................................................6

    I.    Licensing copyrighted materials from third parties is not an "exchange" with the government. .......................................9

    II.    The government still cannot identify a "known and costless" way of avoiding mandatory deposit. ....................................11

CONCLUSION ...............................................................................16

CERTIFICATE OF COMPLIANCE.......................................................17

CERTIFICATE OF SERVICE.............................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Horne v. Dep't of Ag.*,
 576 U.S. 350 (2015) ..................................................................... 4, 11

*Koontz v. St. Johns River Water Mgmt. Dist.*,
 570 U.S. 595 (2013) ...................................................................... 6, 11

*Ruckelshaus v. Monsanto Co.*,
 467 U.S. 986 (1984) .......................................................................... 3

*Tyler v. Hennepin County*,
 143 S. Ct. 1369 (2023) ..................................................................... 3

**STATUTES**

17 U.S.C. § 407 ................................................................... 2, 3, 4, 13, 14

17 U.S.C. § 407(a) ................................................................................ 4, 5

## INTRODUCTION

This case presents the question of whether the government may take private property without just compensation simply because that property takes the form of a book containing "copyrightable" material. The panel opinion says no. Government may only demand private property without just compensation when the demand is part of a voluntary exchange for a governmental benefit—and an unregistered copyright (which vests automatically in any new work the moment it is written down) is not an exchange of any kind.

The government now seeks rehearing, but it does not (at this stage) contend that the panel used the wrong legal standard. It does not contend that the panel opinion conflicts with any authority of this or any other court. Instead, it argues that on the specific facts of this case, that undisputed legal rule should apply differently because Valancourt is not a copyright owner but only a copyright licensee. But that argument is foreclosed by the plain text of the panel opinion, which the government's petition does not challenge. The opinion says the government's demand for books is a taking because copyright owners receive no benefit from the government in exchange for providing them. If that is true, then it makes

no constitutional difference if those owners then license their copyright to a publisher like Valancourt, which certainly receives no *additional* benefit from the government. The government provides no reason to think otherwise, and its petition should therefore be denied.

## STATEMENT

This case began when the government threatened Plaintiff/Appellant Valancourt Books with tens of thousands of dollars in fines unless it handed over free copies of hundreds of books it had published over the years. Slip op. 2; 6–7. The threat letter was grounded in the so-called "mandatory deposit" requirement of 17 U.S.C. § 407, which the government said entitled it to "two copies of the best edition of every copyrightable work published in the United States[.]" JA 115–16 ¶ 43. And Valancourt's books were copyrightable—or copyrightable enough. Even though most of them were new editions of older works, they all contained at least some new words (in footnotes or introductions) that were automatically copyrighted. JA 137. Those copyrightable words triggered the mandatory-deposit requirement, and the government aimed to collect. *Ibid.* Unwilling to part with its private property or to be fined for refusing to do so, Valancourt instead filed this lawsuit, seeking a declaration that

the government's demand violated both the First and Fifth Amendments to the Constitution. Slip op. 3.

The panel opinion holds that Valancourt is right, at least as to the Fifth Amendment (and it therefore declines to reach the First Amendment question, which seeks the same relief). *Ibid.* The opinion begins with the text of § 407 itself, which says "the owner of copyright or of the exclusive right of publication in a work published in the United States shall deposit, within three months after the date of such publication . . . two complete copies of the best edition" of the work. Slip op. 5. That, on its face, is a "classic physical taking in which the government directly appropriates private property for its own use." Slip op. 13 (quoting *Tyler v. Hennepin County*, 143 S. Ct. 1369, 1376 (2023)).

But, the panel rightly cautions, "[a] demand for personal property would not be a taking [ ] if it involved a voluntary exchange for a governmental benefit." Slip op. 14. This principle stems from *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984), which held that the government does not effect a taking when it demands property in exchange for special permission to sell otherwise-illegal pesticides. Slip op. 14 (citing *Monsanto*, 467 U.S. at 1007).

3

The problem for the government is that here there is no such exchange. "[C]opyright owners receive no additional benefit for the works they forfeit pursuant to Section 407's deposit requirements." *Id.* at 15. That means this case is more like *Horne v. Department of Agriculture*, which held that a federal program appropriating a portion of farmers' annual raisin crop worked a taking. *Id.* at 15 (citing *Horne v. Dep't of Ag.*, 576 U.S. 350 (2015)). Just like in *Horne*, the government here offers nothing in exchange for the books it demands. *Ibid.* Mandatory deposit is not a requirement of acquiring or maintaining copyright. *Id.* at 17. Instead, copyright "subsists" in original works as soon as they are fixed in a tangible medium, *id.* at 4, which is why the government has consistently asserted that § 407 requires mandatory deposit of any "copyrightable" work. Slip op. at 23.

In other words, the mandatory-deposit requirement works a taking because fulfilling the mandatory-deposit obligation "provides no marginal benefit to copyright owners." *Id.* at 18. Indeed, the mandatory-deposit statute itself "declares that the deposit requirement is not a 'condition[ ] of copyright protection,' providing perhaps the clearest sign that mandatory deposit is unrelated to retaining copyright." *Id.* at 16 (quoting

§ 407(a)). Mandatory deposit therefore "cannot represent a voluntary exchange for a benefit [because] there is no benefit at all." *Ibid.*

The panel opinion also rejects the government's argument that the statute could somehow be saved by the fact that a copyright owner could (the government said) take steps to "abandon" its rights and thereby escape the mandatory-deposit requirement. *Id.* at 20. In rejecting this argument, the panel specifically declined to resolve whether the existence of a "known and costless" way for copyright holders to avoid the deposit requirement would save the statute from unconstitutionality because "there is no indication" that any such option exists. *Id.* at 21. Nothing suggests that the government's assertions about abandonment were true—"no statute, regulation, or guidance suggests that an author can readily disavow copyright protection and thereby avoid the associated mandatory deposit requirement." *Ibid.* And even if there were such a path, there is no way an author or publisher could be expected to know about it: None of the government's communications with Valancourt so much as implied that there was a way to escape its obligations. *Id.* at 22–23. At most, a publisher could "min[e] the filings in this case" to discover the government's abandonment theory, and requiring property owners to

spend time looking for ways to avoid the confiscation of their property "impermissibly burden[s] the right not to have property taken without just compensation." *Id.* at 21 (quoting *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 607 (2013)).

The government now seeks rehearing or rehearing en banc, which should be denied for the reasons that follow.

## ARGUMENT

The panel opinion correctly states the legal rule that controls this case: A governmental demand for private property is a taking unless it is part of "a voluntary exchange for a governmental benefit." Slip op. 14. And it correctly applies that rule: The mandatory-deposit requirement works a taking because (as the statute itself says) mandatory deposit is not "a condition[ ] of copyright protection[.]" *Id.* at 16 (quotation marks omitted, first alteration in original).

The government's petition for rehearing does not question either of these premises. Instead, it rehashes its argument (squarely rejected by the panel) that the mandatory-deposit requirement does not work a taking *as to Valancourt* because Valancourt could have undertaken some legal maneuvering to avoid it. One such maneuver, the government

reiterates in its petition, would be to restructure the way Valancourt obtains licenses to publish the material in its books. The government's theory is essentially that Valancourt (as a corporation) necessarily had to take "affirmative steps" to obtain the right to publish its books through "voluntary contractual arrangement[s]" with the people who wrote the material in them. Pet. for Rehearing 2. Had it structured those contracts differently to obtain only nonexclusive licenses to publish these materials, the government says, Valancourt could have avoided the mandatory-deposit requirement entirely.

This argument fails for at least two independent reasons.

***First***, the panel held that a governmental demand for property violates the Takings Clause unless it is part of a "voluntary exchange for a governmental benefit." Slip op. 14. The government's petition does not contend that this legal rule is wrong. Instead, it fails to apply it. The petition focuses exclusively on the fact that Valancourt *voluntarily* obtained the right to publish its books, but it is entirely silent on what Valancourt received from the government in *exchange*. If the initial grant of copyright is not a "voluntary exchange" that rescues mandatory deposit from the Takings Clause—and the government does not challenge the panel's

holding that it is not—it is unclear how the subsequent licensing of that copyright (a transaction to which the government is not even a party) could possibly be.

***Second***, the panel opinion makes clear that only a "known and cost-less" way of escaping mandatory deposit could potentially allow the government to avoid the Takings Clause here.  Slip op. 21. Again, the government's petition does not contend that this was legally wrong—that it could avoid Takings Clause liability *without* a "known and costless" alternative for Valancourt. But it declines to explain how its latest alternative was either "known" or "costless." It declines to do so because it cannot. For Valancourt, the proposition that it could have responded to the government's threat letter by renegotiating the licenses it holds to publish the materials in its books—which would, in any event, simply shift the mandatory-deposit burdens to the contributors who wrote those materials—was neither known nor costless.

In short, the government fails to argue that the panel was wrong when it articulated the governing legal test, and it fails to argue that it can survive that test. Its petition should therefore be denied.

## I.    Licensing copyrighted materials from third parties is not an "exchange" with the government.

Rehearing should be denied because the government fails to establish that Valancourt has engaged in a "voluntary exchange for a governmental benefit." Slip op. 14. To be sure, the government's petition repeatedly emphasizes that Valancourt's acquisition of a license to publish the material in its books was "voluntary." Pet. 11, 15, 18, 19. And so it was: Valancourt (as it must) obtained licenses to publish the new (and therefore automatically copyrighted) material in its books, sometimes formally and sometimes informally. JA 145–46 ¶ 5. Yes, that copyrightable material is often created by Valancourt publisher James Jenkins himself, but even that is voluntary—Jenkins could presumably refuse to allow his LLC to publish the footnotes he writes.

But none of that matters because the Takings Clause does not allow the government to demand property so long as the property owner has taken some "voluntary" act that subjects him to the law. Instead, demands for property are a taking unless they are part of a voluntary *exchange* for a valuable governmental benefit. Slip op. 14. The government's petition does not contend that the rule is otherwise.

But, despite accepting the rule, the government fails to apply it. Nowhere in its repeated invocations of the word "voluntary" does it explain how these voluntary actions were an *exchange*. The government accepts (or at least does not challenge in its petition) that it is *not* a voluntary exchange for a governmental benefit when the government demands books from an owner of copyright. *Cf.* slip op. 18 (holding that mandatory deposit works a taking because it provides "no marginal benefit to copyright owners"). But if that is true, the government's argument falls apart. If it is not an exchange for a governmental benefit when the copyright is bestowed on the original owner, how does it become one when that owner licenses or sells the copyright? The benefit—the copyright—is unchanged. The government itself plays no role at all in the licensing agreement. And Valancourt, as a licensee, is in exactly the same position as the original copyright holder: The mandatory-deposit requirement "provides no marginal benefit" and therefore works a taking. Slip op. 18.

The government's petition addresses none of this because it simply declines to explain how Valancourt has engaged in a voluntary *exchange* at all. In other words, the government does not claim that it has given something to Valancourt itself. Instead, it seems to assume (though it

cannot bring itself to say outright) that Valancourt can be subjected to the mandatory-deposit requirement so long as it took some voluntary steps that subjected it to the law. That is wrong. The property owners in all of the Takings Clause cases cited by the panel also took voluntary steps. The Hornes voluntarily grew raisins. Slip op. 14–15 (citing *Horne v. Dep't of Ag.*, 576 U.S. 350 (2015)). Coy Koontz voluntarily chose to develop property in Florida. Slip op. 19–20 (citing *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013)). Voluntariness in the abstract does not exempt government demands for property from the Takings Clause. The only thing that exempts government demands for property from the Takings Clause, as the panel held, is a "quid pro quo" exchange. Slip op. 18. The government does not point to any such exchange here, and it does not provide any reason to think the panel was wrong in holding that one is necessary. The petition for rehearing should therefore be denied.

## II.    The government still cannot identify a "known and costless" way of avoiding mandatory deposit.

Rehearing should be also be denied because the government's petition fails to engage with the panel's reasoning in a second, independent way. The government's argument here is simply a repetition of the kind

of argument thoroughly and correctly rejected by the panel—that there is no taking here because Valancourt could have avoided its mandatory-deposit obligations by deploying legal maneuvers invented by the government's counsel on appeal. *See, e.g.*, slip op. 20–26 (rejecting idea that Valancourt should have avoided mandatory deposit by "abandoning" its copyrights). The panel opinion rejects this argument entirely, suggesting that (at most) the government could potentially demand property without compensation if property owners had a "known and costless option . . . to avoid having their property unlawfully taken." Slip op. 18, 21.[1]

The government, again, does not argue that this is the wrong rule. Instead, it offers another option it says Valancourt *could have* taken to avoid the mandatory-deposit demand, ignoring the fact that this option (to the extent it exists) was neither "known" nor "costless." The government now says Valancourt could avoid turning over its property by going back to each of the authors it worked with for each of the 240 books at issue and renegotiating its license to make clear Valancourt has only a nonexclusive license rather than an exclusive license. But retroactively

---

[1] The panel opinion correctly does not hold that a known and costless way of escaping mandatory deposit would in fact satisfy the Takings Clause because no such way exists on this record. *Id.* at 21.

renegotiating some 240 licensing agreements was neither known nor costless.

Just as with the government's rejected theory about "abandoning" Valancourt's copyrights, there is no reason to believe that this gambit would have worked[2] and no sign Valancourt should have known about it based on the government's demand for books with "copyrightable" material. Slip op. 22–23. Property owners, as the panel opinion makes clear, are not required to undertake heroic legal investigations as the price of protecting their rights under the Takings Clause. Slip op. 21–22.

Neither is the government's proposal "costless." The government's argument, in essence, is that Valancourt is not free to engage in the sort of informal licensing arrangements it has with the outside scholars who contribute to its books. *See* JA 150 ¶ 7. It may not simply publish books without consequence: It needs carefully lawyered licensing arrangements with its volunteer scholars if it hopes to publish a new idea without incurring substantial fines. But surely not: The government can escape the

---

[2] By the plain terms of § 407, Valancourt's deposit obligations attached no later than three months after each book in question was published. Nothing in the statute suggests Valancourt could have retroactively eliminated those obligations by renegotiating its licenses to publish its books.

Takings Clause here if it provides a "costless" alternative to mandatory deposit, and nothing that is carefully lawyered is "costless." Slip op. 21.

Moreover, the government's proposal that Valancourt use non-exclusive licenses for its books does not eliminate the mandatory-deposit requirement. It simply shifts it up a level. If Valancourt does not have the exclusive right to publish the copyrightable material in its book, then the statute imposes the mandatory-deposit duties on "the owner of copyright" instead. 17 U.S.C. § 407.[3] In other words, once Valancourt publishes a book containing copyrightable material, someone (either Valancourt or the author of that material) must deposit that work or pay fines for failing to do so. The government says Valancourt should have no objection to this because it can in the future simply recruit people to write forewords for its books by negotiating a non-exclusive license for their work and warning them that they may be subject to fines after Valancourt publishes the book. However eager or reticent an author might be to accept those risks, requiring Valancourt to impose potential legal

---

[3] The government's petition complains that this point is "not developed in the record." Pet. 15. But the text of the statute is clear: either "the owner of copyright or of the exclusive right of publication in" a work must deposit it when copyrightable material is published. 17 U.S.C. § 407.

liability on a scholar who volunteers to write an introduction is not "cost-less." Slip op. 21.

And the problem is made worse when taking into account that much of the "copyrightable" work in a Valancourt book is frequently the work of publisher James Jenkins. *See* JA 112–13 ¶¶ 24–28. The government's silver-bullet argument, then, is that Valancourt has nothing to complain about because it could (with some legal maneuvering) shift the liability here from *the LLC* to *one of that LLC's members*. Again: Surely not. The panel was rightly unpersuaded by this argument, and the petition for rehearing should therefore be denied.

\*    \*    \*

Simply put, the government's argument for rehearing is the same argument the panel correctly rejected. The government believes that a demand for property can escape the Takings Clause so long as there is any plausible set of steps the property owner could have taken to avoid that demand, however costly or recently invented those steps may be. The panel rejected that argument because that is not the law. The government cites no case asserting otherwise. The petition for rehearing should therefore be denied.

# CONCLUSION

The petition for rehearing should be denied.

Dated: November 29, 2023.

Respectfully submitted,

**_/s/ Robert McNamara_**

James D. Jenkins
VALANCOURT BOOKS
Post Office Box 17642
Richmond, Virginia 23226
(804) 873-8528
jjenkins@valancourtbooks.com

Robert J. McNamara
Jeffrey H. Redfern
INSTITUTE FOR JUSTICE
901 N Glebe Road, Suite 900
Arlington, Virginia 22203
(703) 682-9320
rmcnamara@ij.org
jredfern@ij.org

*Counsel for Appellant Valancourt Books, LLC*

16

## CERTIFICATE OF COMPLIANCE

I certify that this response brief complies with Federal Rule of Appellate Procedure 35(b)(2)(A) because it contains 3,110 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 with a 14-point Century Schoolbook font.

Dated:  November 29, 2023.

*/s/ Robert McNamara*
Robert J. McNamara

17

## CERTIFICATE OF SERVICE

I certify that on November 29, 2023, I filed the foregoing **Response to Petition for Rehearing or Rehearing En Banc** with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will notify all participants in the case who are registered CM/ECF users.

*/s/ Robert McNamara*
Robert J. McNamara